# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JUAN BARRERA, JOSÉ CABRERA, DANIEL CHAVEZ, JOSÉ DUMA, JOSÉ LLIBISUPA, ISAAC MALDONADO, EDGAR REDROVAN, NICHOLAS SEGUNDO SANCHEZ, JUAN CARLOS SIMBAÑA, and DANILO BRITO VARGAS, :   Plaintiffs, v. MARK BOUGHTON, ALAN BAKER, JOSÉ AGOSTO, RICHARD DEJUSUS, JAMES A. FISHER, JAMES LALLI, CRAIG MARTIN, JOSEPH NORKUS, JOHN DOES, CITY OF DANBURY, JAMES BROWN, RICHARD MCCAFFREY, RONALD PREBLE, JOHN DOES and the UNITED STATES, :   Defendants. | CIVIL ACTION NO. 3:07-cv-01436-RNC<br><br>MARCH 7, 2008 |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' CROSS-MOTION TO EXCLUDE THE WOLFRAM DECLARATION

The undersigned Plaintiffs submit this memorandum of law in support of their cross-motion, pursuant to Rules 702 and 402 of the Federal Rules of Evidence for an order excluding the Declaration of Charles W. Wolfram ["Wolfram Decl."] and striking all references to it in Defendant Mark Boughton's Motion for Disqualification and Memorandum in Support thereof. The Declaration is inadmissible because it impermissibly argues for a particular legal conclusion and is unreliable, unhelpful, irrelevant, and misleading.[1]

---

[1] Note that Plaintiffs, as a protective matter in the event that the Court denies this Cross-Motion to Exclude, have retained their own expert, Professor William H. Simon, to submit an opinion on the propriety of LSO's concurrent representation of the Plaintiffs in the instant case and CCJEF.  Professor Simon's opinion – unlike that of Professor

**STATEMENT OF FACTS**

On September 26, 2007, Plaintiffs filed a civil rights complaint against, *inter alia*, the Mayor of Danbury, Connecticut, Mark Boughton, for discriminatory, retaliatory and unauthorized law enforcement activities. *See* Am. Compl. On February 1, 2008, Boughton filed a Motion for Disqualification of counsel for Plaintiffs, the Jerome N. Frank Legal Services Organization ["LSO"], the clinical program of Yale Law School. *See* Motion for Disqualification of Jerome N. Frank Legal Services Organization ["Motion for Disqualification"].

In order to "assist in understanding what he perceives to be a conflict of interest on the part of [LSO]," Boughton retained Professor Charles W. Wolfram "to be an expert witness in this matter to review and comment." *See* Memorandum of Law in Support of Motion for Disqualification [hereinafter, "Defs.' Br."] at 10. Boughton submitted a declaration from Wolfram, in which the professor opined that LSO "has seriously departed from the standard of conduct that would be followed by lawyers of ordinary care and prudence" in concurrently representing the Connecticut Coalition for Justice in Education Funding ("CCJEF") and the plaintiffs in the present litigation. *See* Wolfram Decl. at ¶ 3, attached as Exhibit 1 to the Defs.' Br. Wolfram's argument, in summary, is that Boughton, as the President of CCJEF,[2] must be treated as a "client" of LSO for purposes of the Connecticut Rules of Professional Conduct, the plain wording of Rule 1.13(a)[3] notwithstanding. *See id.* at ¶ 8. The Memorandum of Law in Support of the Motion for Disqualification relies heavily on the Wolfram Declaration, citing to it

---

Wolfram – is reliable, relevant, and portrays the situation accurately. *See* Declaration of William H. Simon, attached as Exhibit 1 to Plaintiffs' Memorandum of Law in Opposition to the Motion for Disqualification.

[2] Note, however, that on February 29, 2008, Boughton's tenure as president of CCJEF expired, and CCJEF elected a new president. *See* Affidavit of Dianne Kaplan deVries at ¶ 16, attached as Exhibit 4 to Plaintiffs' Memorandum of Law in Opposition to the Motion for Disqualification. Boughton did not run for reelection. *Id.*

[3] Rule 1.13(a) states that "A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents." Conn. Rules Prof'l Conduct 1.13(a).

2

and quoting from it on pages 10-12, 14-17, 23-25, and 27, for a total of fourteen (14) separate citations. *See* Defs.' Br.

Wolfram, a retired law professor admitted to the bar (on inactive status) in Minnesota and the District of Columbia, *see* Wolfram Decl. at ¶ 4, has no personal knowledge of the facts at issue in the Motion for Disqualification. Wolfram Decl. at ¶ 6 ("I have no personal information that would permit me to swear to the existence of the facts on which I base my opinions."). Instead, his understanding of the facts is based on the documents given to him by defense counsel:

> For purposes of my analysis here, I have <u>assumed</u> the facts set out in my analysis, below, to be established by competent evidence. Those facts are based on documents that I have examined in preparing this affidavit, which I have listed in Exhibit 2.

*Id.* (emphasis added). Exhibit 2 of Wolfram's Declaration lists the following documents as reviewed by Wolfram: Affidavit of Mark D. Boughton ("Boughton Aff."), with exhibits[4]; the Complaint in the present action; the Complaint in *CCJEF v. Rell*; a letter dated Dec. 20, 2006, from Lazslo Pinter, Deputy Corporation Counsel of the City of Danbury, to LSO; a letter dated February 7, 2007 from LSO to Mr. Pinter; and a letter dated March 6, 2007 from Mr. Pinter to LSO. *See* Exhibit 2 of the Wolfram Decl.

Among the documents not consulted or listed by Professor Wolfram, but clearly important to understanding the alleged conflict of interest, are the retainer agreement between

---

[4] The exhibits to the Boughton Affidavit are the Certificate of Incorporation for CCJEF; the complaint in *CCJEF v. Rell*; a copy of an invoice for the CCJEF membership dues of the City of Danbury for 2005 and 2006; a document produced by CCJEF in February of 2007 entitled, "A Framework for Adequately and Equitably Funding Connecticut's Public Schools"; copies of two requests under the Connecticut Freedom of Information Act ("FOIA") filed in October of 2006 with the City of Danbury by LSO on behalf of various non-profit organizations in Connecticut; an appeal of those state FOIA requests, filed by LSO on behalf of the same non-profit organizations; the complaint in a federal FOIA case filed by LSO on behalf of the same non-profit organizations against the U.S. Department of Homeland Security; the same three letters between Danbury Deputy Corporation Counsel and LSO; and a Notice of Intention to Commence an Action filed by LSO on or about April 19, 2007 with the City Clerk of Danbury on behalf of nine of the plaintiffs in the present action. *See* Boughton Aff. at ¶¶ 3-14.

CCJEF and LSO, which explicitly states that "[LSO]'s client for purposes of this representation is CT CJEF and no other entities or persons," *see* Letter dated Oct. 19, 2004 from Robert Solomon, Esq., to Mayor Carl J. Ameto, CCJEF [hereinafter, "Retainer Agreement"], attached as Exhibit 2 to Plaintiffs' Memorandum of Law in Opposition to the Motion for Disqualification; and the bylaws of CCJEF, which set out the powers and authority of and limitations on the organization's various committees and officers. *See* "Bylaws of the Connecticut Coalition for Justice in Education Funding, Inc., June 15, 2006" [hereinafter "CCJEF Bylaws"], attached as Exhibit 3 to Plaintiffs' Memorandum of Law in Opposition to the Motion for Disqualification.[5] Apart from Boughton, Wolfram also was not provided statements from any of CCJEF's other 69 members, either of its two full-time employees,[6] or, indeed, any other individual at all. And as is evident from factual inaccuracies duplicated in both the Boughton Affidavit and the Wolfram Declaration, Wolfram relied heavily on Boughton's frequently inaccurate factual account.[7]

Consequently, the Wolfram Declaration makes a number of statements to support his argument that LSO has committed an ethical violation that are factually inaccurate, misleadingly exaggerated, or both. Perhaps unsurprisingly, given the incentives and sources of information, all or nearly all of the inaccuracies and exaggerations benefit Boughton's Motion for Disqualification. For example, Wolfram states that Boughton "created" CCJEF's Steering Committee, Wolfram Decl. at ¶ 10, which is patently false. *See* Affidavit of Dianne Kaplan

---

[5] As well as electing a new president, the CCJEF Board of Directors approved a new retainer agreement with LSO and adopted amended bylaws on February 29, 2008. Both documents are attached to the Plaintiffs' Memorandum of Law in Opposition to the Motion for Disqualification as Exhibits 9 and 10, respectively, but neither contains any changes relevant to this Motion to Exclude.

[6] The two full-time employees of CCJEF are Dianne deVries, Project Director, and Steven Cassano, Executive Director. *See* deVries Aff. at ¶ 2.

[7] This is even true with factual errors in the Boughton Affidavit that would have been discovered by careful examination of the other documents that Professor Wolfram was provided. For example, both Boughton and Wolfram state that the CCJEF litigation is a class action, Boughton Aff. at ¶ 5, Wolfram Decl. at ¶ 2, even though it is not, which is obvious from both the caption and the first sentence of the Complaint. *See CCJEF v. Rell*, Compl., attached as Exhibit B to the Boughton Aff., at ¶ 1 ("The plaintiffs bring this action on behalf of themselves and their minor children…."). Wolfram states that he reviewed the *CCJEF v. Rell* Complaint in preparing his Declaration. *See* note 1, *supra*, and accompanying text.

deVries ("deVries Aff."), attached as Exhibit 4 to Plaintiffs' Memorandum of Law in Opposition to the Motion for Disqualification, at ¶ 19; CCJEF Bylaws at Art. IV, § 6.  Wolfram also states that the Steering Committee receives "advice of the Frank Organization lawyers about steps proposed to be taken in the litigation.  The Steering Group then advises those same lawyers about how to proceed." Wolfram Decl. at ¶ 10.  At a minimum, this is a significant overstatement.  *See* deVries Aff. at ¶ 18 ("The exclusive and non-delegable powers of the Board of Directors include decision-making authority over litigation."); *id.* at ¶ 23 ("[D]ecision making authority for litigation rests with the Board of Directors, not the Steering Committee, and CCJEF has an ad hoc Litigation Committee established specifically for the purpose of consultation with LSO about litigation matters.").[8]

Wolfram also drastically overstates Boughton's role in the CCJEF litigation, leading him to claim that "[t]he key difficulty is that the Frank Organization has ignored the central and personal role that Mayor Boughton played and continues to play in the Frank Organization's representation of CCJEF." Wolfram Decl. at ¶ 9.  According to Wolfram, the LSO lawyers, "in the course of their discussions of the Equal Funding Litigation with Mayor Boughton, will have ample occasions to gain what might be critically important insights into the Mayor's litigation strategies, his ways of dealing with litigation risks, and his attitudes toward settlement – among many other matters – that could prove important in this litigation." Wolfram Decl. at ¶ 17.  These statements dramatically exaggerate both Boughton's authority, *see* CCJEF Bylaws at Article IV, § 2; deVries Aff. at ¶ 20 (both stating that only the 70-member Board of Directors can settle litigation), as well as Boughton's involvement in the CCJEF litigation.  *See* deVries

---

[8] Wolfram also seems to confuse the Steering Committee with the Litigation Committee, stating that Boughton serves as President of CCJEF's "litigation steering group, the CCJEF Steering Committee." Wolfram Decl. at ¶ 2. Even while serving as president of CCJEF, Boughton was not a member of the Litigation Committee. deVries Aff. at ¶ 32.

5

Aff. at ¶ 32 ("To date, and to my knowledge, neither Mayor Boughton, nor anyone affiliated with the City of Danbury, has provided feedback to legal materials prepared by LSO, nor has he participated in any of the conference calls of the Litigation Committee or with pre-argument mooting.").[9]

Wolfram also gets other, more mundane details wrong. For example, he claims that the CCJEF litigation is a class action, which it is not, *see* note 7, *supra*, and accompanying text; and that LSO "created and incorporated," Wolfram Decl. at ¶ 2, and "founded" CCJEF. *Id.* at ¶ 9. The Certification of Incorporation for CCJEF, attached as Exhibit A to the Boughton Affidavit, does list LSO attorney Robert Solomon as the registered agent of CCJEF, but he is not listed as one of the two incorporators who signed the Certificate.[10]  *See* CCJEF Certification of Incorporation.  Wolfram also states that LSO "pressed aggressively to obtain Freedom of Information Act ["FOIA"] access to documents in the custody of the City of Danbury that Mayor Boughton's administration resisted disclosing." Wolfram Decl. at ¶ 12. Perhaps it is Professor Wolfram's opinion that the mere filing of an administrative appeal is aggressive, but it is certainly not the case that Danbury "resisted disclosing" any requested documents. In fact, in the FOIA matter attached as Exhibit F to the Boughton Affidavit, the City of Danbury did not claim a single statutory exception to disclosure; it merely claimed that it did not have any additional responsive documents.[11]

---

[9] And note that, as Project Director, deVries "coordinate[s] [] communications and interactions between LSO and the Litigation Committee." deVries Aff. at ¶ 31.

[10] It is certainly possible that this distinction was simply lost on Boughton, who is not a lawyer, and that when he stated in his affidavit that "[LSO] incorporated CCJEF in 2004", Boughton Aff. at ¶ 3, he merely meant that LSO helped draft the corporation organizing documents, which the Retainer Agreement states that LSO would undertake for CCJEF. *See* Retainer Agreement.  However understandable it may have been for Boughton to overlook the significance of this distinction, it is not at all understandable why Wolfram – who says he reviewed a copy of the CCJEF Certificate of Incorporation – would repeat Boughton's mistake. *See also* note 7, *supra*.

[11] Note that the only way that this action on the part of Danbury could be considered "resistance to disclosure" is if Danbury was disingenuous in its claim that it had no additional responsive documents, which would be a violation of the Connecticut Freedom of Information Act, Conn. Gen. Stat. § 1-210 *et seq.*, or if Professor Wolfram is

## Standard of Review

"It is well-established that 'the trial judge has broad discretion in the matter of the admission or exclusion of expert evidence.'" *Boucher v. United States Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (quoting *Salem v. United States Lines Co.*, 370 U.S. 31, 35 (1962)). "Rules 701-706 [of the Federal Rules of Evidence] govern opinions and expert testimony, which are also subject to the relevancy provisions of Rules 401-403." *Kidder, Peabody & Co. v. IAG Int'l Acceptance Group N.V.*, 14 F. Supp. 2d 391, 397 (S.D.N.Y. 1998).

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court held that the Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *See also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) ("[*Daubert*] pointed out that [expert] testimony is admissible only if it is both relevant and reliable."). In *Kumho*, the Court clarified that "*Daubert*'s general holding – setting forth the trial judge's general 'gatekeeping' obligation – applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." 526 U.S. at 141 (quoting Fed. Rules Evid. 702). *See also* Advisory Committee Notes on the 2000 Amendment of Rule 702 ("While the relevant factors for determining reliability will vary from expertise to expertise, the amendment rejects the premise that an expert's testimony should be treated more permissively simply because it is outside the realm of science.").

"Limitations of the Rules of Evidence on expert opinion testimony are strictly enforced in the Second Circuit," *GST Telecomms., Inc. v. Irwin*, 192 F.R.D. 109, 110 (S.D.N.Y. 2000), and the proponent of the evidence has the burden of establishing its admissibility by a preponderance

---

somehow sanctioning Danbury's use of the Rules of Professional Conduct as a shield to the fulfillment of its statutory obligations. *See* Memorandum of Law in Opposition to the Motion for Disqualification at note 22 and accompanying text.

of the evidence.  *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987).  Additionally, the Second Circuit "has long held that 'in reviewing the use of expert testimony, we also look to see if it will usurp either the role of the trial judge … or the role of the jury.'"  *United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999) (quoting *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994).  *See also United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) (same).  To that end, "in evaluating the admissibility of expert testimony, this Court requires the exclusion of testimony [that] states a legal conclusion."  *United States v. Feliciano*, 223 F.3d 102, 121 (2d Cir. 2000) (citation omitted) (alteration in original); *see also Marx & Co. v. Diners' Club Inc.*, 550 F.2d 505, 510 (2d Cir. 1977) ("[E]xpert testimony on law is excluded because 'the tribunal does not need the witness' judgment…. The judge … can determine equally well.'") (citation omitted). Indeed, "this circuit is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion." *Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992).  *See also In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64 (SDNY 2001) ("In fact, every circuit has explicitly held that experts may not invade the court's province by testifying on issues of law.") *aff'd sub nom. In re Certain Underwriter Defendants*, 294 F.3d 297 (2d Cir. 2002); *id.* (collecting authorities).[12]

Additionally, in the evaluation of expert testimony, no distinction is made between whether the expert is testifying before a jury or in the context of a motion before a judge.  *See, e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61 (S.D.N.Y. 2001); *United States v. Eyerman*, 660 F. Supp. 775, 781 (S.D.N.Y. 1987) (excluding the opinions of two "experts on ethics" on a recusal motion).  *Cf. In re Crossen*, 450 Mass. 533, 570.  *See also* Advisory

---

[12] Like other Circuits, the Second Circuit makes one exception to this strict rule: "when interpreting foreign law, expert legal opinion may be allowed."  *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d at 65. "Experts may also give limited testimony on mixed questions of law and fact, but the testimony must remain focused on helping the jury or judge understand particular facts in issue and not opine on the ultimate legal conclusion."  *Id.*

8

Committee Notes on the 2000 Amendment of Rule 702 ("The trial judge in <u>all</u> cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted.") (emphasis added).

### **Argument**

I.  **The Wolfram Declaration is inadmissible under Rule 702 of the Federal Rules of Evidence.**

Rule 702 of the Federal Rules of Evidence, which governs the admissibility of expert testimony, states that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Thus, in order to be admissible, expert testimony must be a) helpful to the trier of fact b) in understanding the evidence or determining a disputed fact; c) based on sufficient facts or data; and d) reliably produced. *See In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d at 68. The Wolfram Declaration fails on all accounts to satisfy this standard.

> *A. The Wolfram Declaration impermissibly states a legal conclusion, and therefore must be excluded under Rule 702.*

Despite the well-established principle that experts may not testify as to questions of law,[13] Professor Wolfram's opinion is an unabashed example of precisely that. Wolfram begins his Declaration by stating that "I have been retained by counsel for defendant Mark Boughton [] to consider submitting my opinions as an expert in matters of lawyer's ethics in support of Mayor Boughton's motion to disqualify." Wolfram Decl. at ¶ 2. In his "considered expert

---

[13] One commentator has noted that this principle is "so well-established that it is often deemed a basic premise or assumption of evidence law – a kind of axiomatic principle." Thomas Baker, *The Impropriety of Expert Witness Testimony on the Law*, 40 U. Kan. L. Rev. 325, 352 (1992).

9

opinion … [LSO] has seriously departed from the standard of conduct that would be followed by lawyers of ordinary care and prudence." *Id.* at ¶ 3.[14]  "That course of conduct," according to Wolfram, "warrants disqualification of [LSO] from further participation in this matter." *Id.* at ¶ 3.  But, of course, whether or not the conduct of LSO "warrants disqualification" is <u>the ultimate issue</u> at stake in the Motion for Disqualification. *See* Motion for Disqualification by Defendant Mark Boughton, at 4 ("WHEREFORE, it is respectfully requested that this motion be granted and that the Jerome N. Frank Legal Services Organization be disqualified from representing the plaintiffs in this action.").

The Wolfram Declaration thus improperly invades the province of this court by attempting to displace the legal judgment of the judge with that of an "expert." *See, e.g.*, *United States v. Bronston*, 658 F.2d 920, 930 (2d Cir. 1981) (excluding expert testimony as "clearly inadmissible" because, *inter alia*, "his testimony would in substance have conveyed nothing more . . . than his general belief as to how the case should be decided") (citation omitted); *Burkhart v. Washington Metro. Area Trans. Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997) ("Each courtroom comes equipped with a 'legal expert,' called a judge."); *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d at 69 ("In our adversarial system, lawyers make arguments, judges write legal opinions -- and there is no such thing as an expert opinion when it comes to interpreting a statute unless that opinion belongs to a court."); *GST Telecomms., Inc. v. Irwin*, 192 F.R.D. at 111 ("In short, the Court should not shift to such witnesses the responsibility to give conclusory opinions and characterizations of the business conduct portrayed and to essentially decide the case."); *Kidder, Peabody & Co. v. IAG Int'l Acceptance Group N.V.*, 14 F. Supp. 2d 391, 396 n.5 (S.D.N.Y. 1998) ("[I]t is for the trial judge, and not an expert witness,

---

[14] Wolfram also explicitly considers the proper interpretation of Rules 1.7 and 1.13 of the Connecticut Rules of Professional Conduct. *See, e.g.*, Wolfram Decl. ¶¶ 7-10.

however eminent, to declare the governing law in the case."); *Pepe & Hazard v. Jones*, No. (X02)CV960151601S, 2002 Conn. Super. LEXIS 2997, at *5 (Super. Ct. Conn. 2002) ("The Court presumably knows the law from its own experience, or can learn the law from its own research and the arguments of the lawyers who appear before it. As a result, the testimony of an expert on the law is typically unnecessary or superfluous."), attached as Exhibit 1.

The fact that Professor Wolfram is attempting to provide an expert opinion on what is required by legal ethics – hardly an issue beyond the understanding of the Court – only reinforces the impropriety of the Declaration. *See, e.g.*, *Fishman v. Brooks*, 487 N.E.2d 1377, 1381 (Mass. 1986) ("Expert testimony concerning the fact of an ethical violation is not appropriate, any more than expert testimony is appropriate concerning the violation of, for example, a municipal building code."). *See also GST Telecomms., Inc. v. Irwin*, 192 F.R.D. 109, 110 (S.D.N.Y. 2000) ("The standards of conduct espoused by the experts are not specialized knowledge; rather, in effect, the 'experts' are called to express their legal conclusions on ethics."); *In re Crossen*, 450 Mass. 533, 570 (2008).

In reality, the Wolfram Declaration is a thinly-veiled attempt to argue for a particular view of what the law requires, supported by a "weighty compendium of [the expert's] extracurricular activities to give verisimilitude to [the] sworn legal conclusions." *United States v. Eyerman*, 660 F. Supp. 775, 781 (S.D.N.Y. 1987) (excluding declarations of two experts on ethics).[15] *See In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d at 64 ("[P]laintiffs informed the Court that they had reviewed the declaration by Professor Wolfram and believed it was

---

[15] In *Eyerman*, Judge Milton Pollack, in rejecting two statements of experts on ethics, had particularly strong words for the notion that experts should give opinions regarding what the law requires, remarking that "[s]upplying such affidavits under these circumstances seems rather presumptuous, considering that the affiants have not been asked by the Court for their views on the law and how the motion should be decided." 660 F. Supp. at 781. Judge Pollack was additionally critical of the "gratuitous sworn legal opinions" of the two professors because they were based on "uninformed hearsay," *id.*, just as Professor Wolfram's opinion in the present case is. Judge Pollack made clear, though, that even if the professors had not been completely ignorant of the facts, their declarations would still be "presumptuous," "gratuitous," and "extracurricular legal opinions." *Id.*

11

'nothing more than an attempt to camouflage what is clearly an opinion as a matter of law on a legal issue by just using some facts as background for his conclusion.'"); *Pepe & Hazard v. Jones*, 2002 Conn. Super. LEXIS 2997, at *11 ("So stated, this opinion is an undisguised opinion on a matter of law. It is expressly phrased as an opinion as to the applicability of a particular ethical rule to Attorney Jones's alleged conduct.").

Judge Learned Hand once warned trial courts that "[a]rgument is argument whether in the [witness] box or at the bar, and its proper place is the last." *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 123 (2d Cir. 1930). The same can be said here; the Wolfram Declaration "only advocate[s] a particular interpretation of a statute and the ultimate outcome of the motion." *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d at 69 (quoting Judge Hand). *See also Pepe & Hazard v. Jones*, 2002 Conn. Super. LEXIS 2997, at *14-15 ("As an opinion on what the law requires, Attorney Elliot's analysis is more appropriately presented by counsel in a trial brief…. In short, this is the classic sort of opinion that is excluded as legal opinion because it invades the law-deciding province of the Court.").

In summary, this is precisely the type of testimony that the Second Circuit <u>requires</u> to be excluded. *Hygh v. Jacobs*, 961 F.2d at 363. To echo a previous admonishment by a district court in this Circuit:

> Professor[] Wolfram [is] free to consult with the moving defendants, sign their brief, or both. [He] may attend the conferences and argue on their behalf. [He] could have submitted an amicus brief arguing how the law should be interpreted, although the time for such a submission has passed. But it remains this Court's exclusive duty and province "to say what the law is."

*In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d at 69-70 (citing *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803)).

> B. *The Wolfram Declaration does not "assist the trier of fact to understand the evidence or to determine a fact in issue," and so must be excluded under Fed. R. Evid. 702.*

While Rule 702 makes expert testimony inadmissible if it is, *inter alia*, unreliable, the Rule also has a condition predicate that must be satisfied before even considering the testimony's reliability: the testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. *See also* Advisory Committee Notes on Rule 702 ("Whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier.").

First, the plain language of Rule 702 strongly suggests that the Wolfram Declaration, no matter its content, is not admissible because a motion for disqualification does not call for a trier of fact. *See* Fed. R. Evid. 702 ("<u>If</u> scientific, technical, or other specialized knowledge <u>will assist the trier of fact</u> to understand the evidence or to determine a fact in issue, a witness… <u>may</u> testify….") (emphasis added). *See also In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d at 68 (stating, in excluding declarations of two experts on ethics, that "[t]he moving defendants' argument that Rule 702 allows the declarations to be admitted fails for two reasons. First, this motion does not call for a trier of fact; a motion to recuse is not a trial"), *aff'd sub nom.*, *In re Certain Underwriter Defendants*, 294 F.3d 297 (2d Cir. 2002).

Second, even if this court could be considered a "trier of fact" on a motion for disqualification, the Wolfram Declaration does nothing to help the court "understand the evidence or to determine a fact in issue." Wolfram, by his own admission, does not have any personal knowledge of any of the facts upon which he based his legal opinion. Wolfram Decl. at ¶ 6. At least some of the evidence he does rely on – the Boughton Affidavit – is not only

13

hearsay,[16] but also factually inaccurate in significant ways. *See* Statement of Facts, *supra*. As one district court in the Second Circuit stated in excluding two opinions of ethics experts:

> What makes their gratuitous sworn legal opinions even more inappropriate is their apparent obliviousness to the self-evident utter absence of any factual basis in the record for a cognizable opinion from them -- expert or other. Indeed, they should have recognized that uninformed hearsay alone is the basis on which they were asked to express their legal opinions.

*United States v. Eyerman*, 660 F. Supp. 775, 781 (S.D.N.Y. 1987). The same statement could be said as to Wolfram's testimony, particularly since he was not given – and apparently did not request – the Retainer Agreement; CCJEF's Bylaws; or statements from unbiased sources rather than a named defendant in the present action. Given Wolfram's limited, incomplete, and distorted understanding and replication of the facts, it is simply implausible that his testimony could "assist the trier of fact understand the evidence or to determine a fact in issue."

In sum, the Wolfram Declaration is so misleading that it cannot assist anyone in understanding the evidence or a fact in issue. *Cf. Dibella v. Hopkins*, No. 01:CV11779(DC), 2002 U.S. Dist. LEXIS 20856 at *12 (S.D.N.Y. 2002) ("I conclude that his opinion is unlikely to be of assistance to the jury because his conclusions are so unfairly one-sided."), attached as Exhibit 2.[17]

> C. The Wolfram Declaration is not reliable, and therefore must be excluded under Fed. R. Evid. 702.

Rule 702 requires the expert testimony to be the product of reliable principles and methods applied in a reliable way to sufficient facts or data upon which to base the opinion. Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court held that Rule 702 imposes an obligation upon a judge to "ensure that any and all

---

[16] Hearsay is defined by Rule 801 of the Federal Rules of Evidence as "a statement, other than one made by the declarant …, offered in evidence to prove the truth of the matter asserted."

[17] In *Dibella*, the judge was particularly concerned that that the expert never mentioned or discussed "highly relevant" evidence in giving his written opinion. *Id.*

14

scientific testimony … is not only relevant, but reliable." *Id.* at 589. In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Court made clear that "this basic gatekeeping obligation applies … to all expert testimony." *Id.* at 147. While cautioning that the judge "must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable," *id.* at 152, *Kumho* emphasized that the objective of "*Daubert*'s gatekeeping function" is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id. See also Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir. 1997) ([*Daubert*] requires the district judge to satisfy himself that the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting.").

As is discussed *supra*, the Wolfram Declaration is hardly "based upon sufficient facts or data." In particular, and given that the relationship between LSO, CCJEF, and Boughton is precisely what is at issue in the Motion for Disqualification, it is difficult to comprehend why Defendants' expert apparently did not request, nor did Defendants provide to him, the two documents that define this relationship and outline the actual powers of CCJEF's various constituent members: the Retainer Agreement and the CCJEF Bylaws. Instead, Wolfram apparently based most of his opinion on the Boughton Affidavit, even reproducing factual errors made in the Affidavit despite the fact that Wolfram had the documents that showed those errors. *See* notes 7, 10, *supra*.

As esteemed and accomplished as Professor Wolfram is, the declaration submitted in this case is undoubtedly not "the same level of intellectual rigor that characterizes" his regular work. *Kumho*, 526 U.S. at 152. Of particular concern, of course, is the incomplete and suspect factual

record upon which he bases his opinion, as well as the fact that he merely assumed the complete veracity of the Boughton Affidavit, and then built further inferences upon it, without ever seeking to independently verify anything – a practice condemned even within his own field. *See* Carl M. Selinger, *The Problematical Role of the Legal Ethics Expert Witness*, 13 Geo. J. Legal Ethics 405, 422 (2000) ("Some legal scholars believe strongly that it is unethical for an ethics expert to testify, or otherwise render an opinion, on an issue that requires applying ethics law to a particular state of facts without having <u>independently reviewed</u> all the available evidence.") (emphasis added). *See also id.* at 423-24 ("[A]n ethics scholar who renders an opinion as to the applicable law based on an assumed state of facts prepared by the law firm that retained the scholar, without being satisfied that there is evidence to support those facts, is taking an unreasonable, unnecessary, and, in my opinion, unethical risk of misleading those who read or listen to the opinion, and of being used by the law firm."). *See generally* William H. Simon, The Market for Bad Legal Advice: Academic Professional Responsibility Consulting as an Example, Stanford Law Review (*forthcoming 2008*) (explaining how "[c]lients demand bad legal advice when legal advice can favorably influence third-party conduct or attitudes even when it is wrong" and that "[l]awyers supply bad legal advice most readily when they are substantially immunized from accountability to the people it is intended to influence"), available at http://ssrn.com/abstract=1025984.

## II. The Wolfram Declaration is also inadmissible under Rule 402 of the Federal Rules of Evidence.

For all of the reasons discussed *supra*, the Wolfram Declaration should also be excluded under Rule 402 of the Federal Rules of Evidence, which makes all "irrelevant" evidence inadmissible. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less

probable than it would be without the evidence." Fed. R. Evid. 401.  Given that Professor Wolfram based his opinion on an incomplete and distorted factual record, his Declaration has no probative value as to "any fact that is of consequence," and is thus irrelevant.  Insofar as the Wolfram Declaration has *any* probative value, it is substantially outweighed by the danger of prejudice it presents to Plaintiffs.  *See* Fed. R. Evid. 403.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this cross-motion to exclude the Wolfram Declaration and to strike all references to it in Defendant Boughton's Memorandum of Law in Support of the Motion for Disqualification.

    Respectfully submitted,

/s/   Michael Wishnie
Michael Wishnie (ct27221)
Supervising Attorney

/s/  Christopher Lasch
Christopher Lasch (ct27139)
Supervising Attorney

/s/   Ramzi Kassem
Ramzi Kassem (ct27537)
Supervising Attorney

Justin Cox, Law Student Intern
Ari Holtzblatt, Law Student Intern
Heide Iravani, Law Student Intern
Michael Tan, Law Student Intern

JEROME N. FRANK LEGAL SERVICES
 ORGANIZATION
Yale Law School
P.O. Box 209090
New Haven, Connecticut 06520
Phone: (203) 432-4800

Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

  I hereby certify that on March 7, 2008, a copy of foregoing Motion was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

        /s/   Michael Wishnie
        Michael Wishnie (ct27221)
        Supervising Attorney

        /s/  Christopher Lasch
        Christopher Lasch (ct27139)
        Supervising Attorney

        /s/   Ramzi Kassem
        Ramzi Kassem (ct27537)
        Supervising Attorney

        Justin Cox, Law Student Intern
        Ari Holtzblatt, Law Student Intern
        Heide Iravani, Law Student Intern
        Michael Tan, Law Student Intern

        JEROME N. FRANK LEGAL SERVICES
         ORGANIZATION
        Yale Law School
        P.O. Box 209090
        New Haven, Connecticut 06520
        Phone: (203) 432-4800

        Counsel for Plaintiffs