UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JUAN BARRERA, et al., : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | April 10, 2009 |
| : | |
| MARK BOUGHTON, et al., : | |
| : | |
| Defendants. : | |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PROTECTIVE ORDER

This is a motion for a protective order pursuant to Rule 26(c) to bar Defendants from obtaining discovery into the immigration status and alienage of nine Plaintiffs.[1] All Defendants have sought such information in a number of discovery requests. See Local Rule 7(a)(1) Statement (attached).[2] Numerous courts in the Second Circuit and elsewhere have granted protective orders barring similar discovery in recognition that immigration status and alienage are often irrelevant to the adjudication of civil rights claims and also of the powerful *in terrorem* effect that would result from compelled disclosure of such information. See infra Part II, B.

---

[1] This motion is submitted on behalf of all Plaintiffs except Danilo Brito Vargas, an Ecuadoran national who was removed in 2007. See Am. Comp. at ¶¶ 12, 169, 175. For purposes of this brief, the nine day-laborer Plaintiffs will be referred to as "Plaintiffs."
[2] Absent a protective order, Plaintiffs intend to invoke their Fifth Amendment privilege against self-incrimination in response to these requests. The Fifth Amendment may be invoked in civil proceedings. Where appropriate, an adverse inference may be drawn. McCarthy v. Arndstein, 266 U.S. 34, 40 (1924).

1

The compelled production of such evidence would force Plaintiffs to sacrifice one set of rights in order to vindicate another. Information about Plaintiffs' immigration status and alienage could potentially lead to their eventual prosecution or deportation. Id. Requiring such discovery in this case would have the effect of conditioning Plaintiffs' access to the courts on the disclosure of immigration status and alienage information, and would severely chill vindication of fundamental constitutional and civil rights. Id.

Finally, discovery into Plaintiffs' immigration status and alienage is not reasonably calculated to lead to admissible evidence, and would annoy, embarrass, oppress and unduly burden Plaintiffs. Cf. Fed.R.Civ.P. 26(c). It is not relevant to Plaintiffs' claims, nor to any specific defense Defendants have invoked or may assert. See infra, Part II, C. At best, it is remotely related to the general subject matter of the case. This is not enough to satisfy the requirements of Fed. R. Civ. Pro. 26(c), nor does it justify the terrorizing effect on Plaintiffs of such production.[3]

## FACTS AND PROCEEDINGS

On September 19, 2006, Defendants arrested Plaintiffs in an undercover sting operation designed to target day-laborers in the area of Kennedy Park in Danbury, Connecticut. Amended Complaint at ¶ 61, Dkt # 21 [hereinafter "Am. Comp"]. The Government did not bring criminal charges against the Plaintiffs, but placed them in

---

[3] Plaintiffs acknowledge that an Immigration Judge has found that each of the nine moving Plaintiffs is a native and citizen of Ecuador, present without inspection in this country. See Decision of the Immigration Judge, Jan. 30, 2008, attached as Ex. A. However, this finding was based on the Immigration Judge's erroneous denial of Plaintiffs' Motions to Suppress in their removal proceedings, and subsequent admission of evidence obtained through the illegal arrests of moving Plaintiffs by Defendants on September 19, 2006. Id. Plaintiffs have appealed the denial of their motions to suppress to the Board of Immigration Appeals; those appeals are pending. See Notice of Appeal of Decision of Immigration Judge, Feb. 28, 2008, attached as Exhibit B.

removal proceedings based on statements obtained on the day of the arrest. Id. at ¶¶ 104, 106. Plaintiffs moved to suppress this evidence before the Immigration Judge, but the motion was denied and Plaintiffs were subsequently either ordered removed or granted voluntary departure. See Orders of the Immigration Judge, Feb. 4, 2008, attached as Exhibit C. Plaintiffs are currently appealing this ruling to the Board of Immigration Appeals. See Notice of Appeal of Decision of Immigration Judge, attached as Exhibit B.

Plaintiffs brought the current suit to vindicate their constitutional and civil rights, alleging claims under the First, Fourth, Fifth and Fourteenth Amendments of the Federal Constitution, and Article 1, §§ 4, 7, 8, 9, and 20, of the Connecticut State Constitution. See Am. Comp. All Defendants have sought information about Plaintiffs' immigration status and alienage in numerous interrogatories, Requests for Admission and Requests for Production. See Local Rule 7(a)(1) Statement.

If Plaintiffs are compelled to produce this information, it will severely prejudice their ability to defend themselves in the removal proceedings now pending against them. In all removal proceedings, the burden is on the government to prove alienage and deportability by "clear and convincing evidence." 8 U.S.C. § 1229a(c)(3). During Plaintiffs' removal proceedings, they denied the government's allegations of alienage and unlawful presence. The government attempted to carry its burden by questioning Plaintiffs about their alienage and immigration status. The Plaintiffs invoked their Fifth Amendment privilege against self-incrimination and refused to answer. The government then offered a U.S. Immigration and Customs Enforcement ("ICE") Form I-213, Record of Deportable Alien, as alternative proof. The I-213's in this case were completed by ICE agents based upon interviews of the Plaintiffs on the day of their arrests. Plaintiffs

moved to suppress the Form I-213 tendered in their removal proceedings on the basis of constitutional, statutory, regulatory, and sub-regulatory violations that occurred during their arrest. Plaintiffs were denied any discovery or evidentiary hearings in the case. The Immigration Judge denied Plaintiffs' Motion to Suppress, and on the basis of the I-213's, concluded that the government had carried its burden and ordered Plaintiffs removed. See Orders of the Immigration Judge, Ex. A, C.

Plaintiffs have appealed this determination. Upon information and belief, the only evidence of alienage available to the government in Plaintiffs' deportation proceedings is in the I-213's. The government should not be allowed to obtain in *this* action evidence of Plaintiffs' alienage or immigration status that it could then seek to introduce to carry its burden in the removal proceedings.

For this reason, among others, Plaintiffs objected to these lines of discovery and conferred with Defendants pursuant to Local Rule 37(a). The Defendants refused to withdraw their request. See Declaration of Rebecca Heller.

## II. ARGUMENT

**A.     Standard of review.**

Federal Rule of Civil Procedure 26 was amended in 2000 specifically to narrow the scope of discovery "to any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The amendment of Rule 26 was intended to limit the prior version of the Rule, which had allowed discovery into any information relevant to the subject matter of the lawsuit. According to the Advisory Committee, the purpose of the change was "to involve the court more actively in regulating the breadth of sweeping

or contentious discovery." Advisory Committee's Note on 2000 Amendments to Fed. R. Civ. P. 26(b)(1).

The Second Circuit has ruled that the amended 26(b)(1) defines the boundaries of permissible discovery, but has also ruled that Fed. R. Civ. P. 26(c) directly limits the purview of 26(b)(1). In re Agent Orange, 517 F .3d 76, 102 (2d Cir. 2008). Rule 26(c) "permits a District Court to make any Order which justice requires to protect any party or person from annoyance, embarrassment, oppression, or undue burden or expense upon a showing by a movant for the order of good cause." Gambale v. Deutsche Bank Ag, 377 F .3d 133, 142 (2d Cir. 2004). See also Yancey v. Hooten, 180 F.R.D. 203, 207 (D. Conn. 1998) ("The Federal Rules afford courts wide discretion in resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing their oppressiveness, and weighing these factors in deciding whether discovery should be compelled") (internal quotation omitted); Chamberlain v. Farmington Sav. Bank, 2007 U.S. Dist. LEXIS 70376 (D. Conn., Sept. 25, 2007), attached as Exhibit D, (same).

Because evidence regarding Plaintiffs' immigration status and alienage is not relevant, and because any potential relevance is outweighed by the oppressiveness and chilling effects of the request, Plaintiffs' motion for protective order should be granted.

**B. Courts in the Second Circuit and elsewhere have granted protective orders against compelled production relating to immigration status and alienage, in recognition of the powerful *in terrorem* effects of such disclosures.**

The Supreme Court has long held that one cannot be compelled to choose between her Fifth Amendment privilege against self-incrimination and the vindication of

5

her other rights. For instance, the Supreme Court has ruled that it is unconstitutional to force a Defendant to choose between his Fourth Amendment Rights and his Fifth Amendment Rights. Simmons v. United States, 390 U.S. 377, 394 (1968) ("[I]t is intolerable that one constitutional right should have to be surrendered in order to assert another."). In the current case, forcing Plaintiffs to disclose information about their alienage or immigration status, which might later be used against them in their immigration proceedings, similarly forces them to surrender one set of rights in order to preserve another.

Courts in the Second Circuit have maintained that forcing a Plaintiff to answer discovery requests related to immigration status or alienage is prejudicial, oppressive and embarrassing. The Second Circuit Court has explicitly recognized that "[f]orcing an alien to perform the act of producing a foreign passport, I-94, or statement regarding immigration status at least arguably forces the alien to admit alienage and thus provide possible evidence of one or more crimes involving immigration violations." Rajah v. Mukasey, 544 F .3d 427, 441-42 (2d. Cir 2008) (citing to 8 U.S.C. § 1302 (failure to register unless exempted by the attorney general); id. § 1306 (willful failure to register); id. § 1325 (entering without inspection)). The Rajah court further found that "an alien who is not in legal status could be exposed to further investigation and subsequent prosecution by producing a foreign passport, I-94, or statements regarding immigration status." Id. See also EEOC v. First Wireless Group, Inc., 225 F.R.D. 404, 406 (E.D.N.Y. 2004) ("[D]iscovery of the Charging Parties' immigration status would cause them embarrassment and if their status is found to be illegal would subject them to criminal charges and, possibly, deportation.")

6

Consistent with these well-settled principles, courts have repeatedly and specifically held that Defendants in civil rights, employment, and other matters may not obtain discovery of the immigration status or alienage of a Plaintiff, lest the evident "in terrorem" effects of permitting such discovery prevent immigrants from vindicating their constitutional and civil rights and deny them their fundamental right of access to the courts. Numerous courts within the Second Circuit have granted immigration-related protective orders, both to protect individual plaintiffs from harassment and retaliation, and to prevent the chilling effect that discovery into immigration status would have on future lawsuits.  See, e.g., Trejos v. Edita's Bar & Rest., 2009 U.S. Dist. LEXIS 21239 **6-7 (E.D.N.Y., Mar. 17, 2009), attached as Exhibit E, ("[E]ven if the information sought [about Plaintiffs' immigration status] were somehow relevant, the in terrorem effect of the questions defendants seek to press outweighs the need for disclosure."); Hocza v. City of New York, 2009 U.S. Dist. LEXIS 3574 *5 (S.D.N.Y., Jan. 19, 2009), attached as Exhibit F, ("[W]hatever probative value illegal alien status may have is far outweighed by its prejudicial impact."); Avila-Blum v. Casa de Cambio Delgado, 236 F.R.D. 190, 192 (S.D.N.Y. 2006) ("The court shares the concerns animating the [protective] order and the decisions of other courts that have balanced the imperatives of optimal discovery, the introduction of unduly prejudicial evidence at trial, and the chilling effect of inquiry into immigration status…"); EEOC v. First Wireless Group, Inc., 225 F.R.D. 404, 405 (E.D.N.Y. 2004) (discovery into charging parties immigration status "would constitute an unacceptable burden on the public interest due to a chilling effect"); Topo v. Dhir, 210 F.R.D. 76, 78 (S.D.N.Y. 2003) ("Courts have generally recognized the in terrorem effect of inquiring into a party's immigration status when

7

irrelevant to any material claim"); Zeng Liu v. Donna Karan International, Inc., 207 F. Supp. 2d 191, 193 (S.D.N.Y. 2002) (to permit inquiry into immigration status of plaintiff would present "a danger of intimidation [that] would inhibit plaintiffs in pursuing their rights"); Flores v. Amignon, 233 F. Supp. 2d 462, 465 (E.D.N.Y. 2002) ("Not only does this Court find that the information is not relevant to defendant's defense, but as the court in Liu noted, even if it were, the potential for prejudice far outweighs whatever minimal probative value such information would have").

Courts outside the Second Circuit have similarly protected plaintiffs from compelled disclosure of their immigration status. See, e.g., In re Reyes, et al., 814 F.2d 168, 170 (5th Cir. 1985) (issuing writ of mandamus to overturn District Court decision allowing discovery into Plaintiffs' immigration status because it "could inhibit petitioners in pursuing their rights in the case because of possible collateral wholly unrelated consequences, because of embarrassment and inquiry into their private lives which was not justified, and also because it opened for litigation issues which were not present in the case"); Incalza v. Fendi, 479 F .3d 1005, 1009 (9th Cir. 2006) (Under California law, "in proceedings or discovery undertaken to enforce [labor, employment and civil rights] state laws no inquiry shall be permitted into a person's immigration status except where the person seeking to make this inquiry has shown by clear and convincing evidence that this inquiry is necessary in order to comply with federal immigration law"); United States v. Arias-Izquierdo, 449 F .3d 1168 (11th Cir. 2006) (denying motion for post-trial discovery into defendant's immigration status for purposes of discrediting his prior testimony); Calderon v. Witovet, 999 F .2d 1101 (7th Cir. 1993) (denying Defendant's request for discovery into Plaintiffs' immigration status in class action lawsuit under AWPA and

FLSA); EEOC v. Restaurant CO., 2007 U.S. Dist. LEXIS 7836 at *3 (D. Minn. 2007), attached as Exhibit G, ("the discovery sought [into Plaintiffs' immigration status] is not sufficiently relevant to justify its potential chilling effect on victims of discrimination"); Sandoval v. Am. Bldg. Maint. Indus., 2007 U.S. Dist. LEXIS 97773 at *58 (D. Minn., Oct. 23, 2007), attached as Exhibit H, ("Defendant employers may not use the discovery process to delve into a plaintiff's immigration status"); Vanek v. I.I. Inc., 2007 U.S. Dist. LEXIS 59311 at **5-6 (D. Neb. Aug. 14, 2007), attached as Exhibit I, ("I fail to see how evidence concerning Mr. Ruffin's immigration status might assist in the development of a reasonable inference of discrimination within the context of [this] case's . . . facts"); Lozano v. City of Hazelton, 239 F.R.D. 397, 400 (M.D. Penn. 2006) ("It is important in balancing the defendant's need against the burden on the plaintiffs to bear in mind that this case involves the constitutional and statutory rights asserted by the plaintiffs with regard to certain ordinances. This case is not an action to enforce United States immigration laws. Plaintiffs' interest in keeping this information confidential outweighs the defendant's need for it, and the request for a protective order will be granted"); De La O v. Arnold-Williams, 2006 U.S. Dist. LEXIS 76816 at *11 (E.D. Wa., Oct. 20, 2006), attached as Exhibit J, ("Defendants also argue they need to know the immigration status of Plaintiffs in order to show that the investigation into Plaintiffs was based on legitimate police concerns of criminal conduct and to challenge Plaintiffs' credibility. The Court concludes Plaintiffs' immigration status has little, if any, relevance to either of these issues"); EEOC v. City of Joliet, 239 F.R.D. 490 at **7-8 (N.D. Ill., May 5, 2006) ("[C]ourts have found that the in terrorem effect of inquiring into the immigration status of employees suing their employer for unfair labor practices is devastating. Not only does

an undocumented alien face the reality of possible retaliatory adverse work place actions by the employer, but he or she also faces the very real possibility of being reported to the Department of Homeland Security and subsequent deportation or even criminal prosecution") (internal citation omitted); Galaviz-Zamora v. Brady Farms, Inc., 230 F.R.D. 499, 502 (W.D. Mich. 2005) ("[T]he effect upon the…witnesses of this wholly irrelevant probe into their immigration status which I observed at the hearing ranged from unsettling to devastating and certainly affected their ability to testify"); Garcia-Andrade v. Madra's Café Corp., 2005 U.S. Dist. LEXIS 22122 at *5 (W.D. Mich., Aug. 3, 2005), attached as Exhibit K, ("[T]here is sufficient case law to support the assertion that immigration status is irrelevant in this matter and what little relevance the other information sought by the Defendants in this matter is outweighed by the Fifth Amendment concerns expressed by the Plaintiffs"); EEOC v. Bice of Chicago, 229 F.R.D. 581, 582 (N.D. Ill. 2005) ([W]e find good cause exists to enter this protective order because questions about immigration status are oppressive, they constitute a substantial burden on the parties and on the public interest and they would have a chilling effect on victims of employment discrimination from coming forward to assert discrimination claims"). Flores v. Albertsons Inc., 2002 U.S. Dist. LEXIS 6171 (C.D.Cal., April 9, 2002), attached as Exhibit L, ("[I]t is entirely likely that any undocumented [litigant] forced to produce documents related to his or her immigration status will withdraw from the suit rather than produce such documents and face … potential deportation."); See also Montoya v. S.C.C.P. Painting Contrs., Inc., 2008 U.S. Dist. LEXIS 16354 (D. Md., Feb. 26, 2008), attached as Exhibit M; Garcia v. Monument Management Group, 2006 U.S. Dist. LEXIS 48532 (D. Neb., July 17, 2006), attached as

Exhibit N; Recinos-Recinos v. Express Forestry, Inc., 2006 U.S. Dist. LEXIS 2510 (E.D. La., Jan. 23, 2006), attached as Exhibit O; Librado v. M.S. Carriers, Inc., 2004 U.S. Dist. LEXIS 10817 (N.D. Tex., March 23, 2004), attached as Exhibit P.

The chilling effects described in these cases span a number of contexts. For instance, in Topo v. Dhir, the plaintiff sought damages in tort for human trafficking, intentional infliction of emotional distress, and other causes of action. Topo v. Dhir, 210 F.R.D. 76 (S.D.N.Y. 2002). Moreover, proof of Ms. Topo's alienage was an element of her own proof on claims brought under the Alien Tort Claims Act. Nevertheless, Magistrate Judge Ellis granted a protective order regarding immigration status information. As the Court explained, "[a]lthough the cases addressing this issue typically relate to the Fair Labor Standards Act, the underlying principle is still the same. When the potential for abuse of procedure is high, the Court can and should act within its discretion to limit the discovery process, even if relevancy is determined." Id. at 78.

In many other cases, courts have entered a protective order regarding immigration status and/or alienage where plaintiffs alleged tort and contract claims. See, e.g., Hocza, 2009 U.S. Dist. LEXIS 3574 at *5, Ex. F (tort claims for negligence and state labor code violations); Collins v. New York City Health and Hospitals Corp., 201 A.D.2d 447 (App. Div. 1994) (damages for negligence and wrongful death); Incalza v. Fendi, 479 F.3d 1005 (9th Cir. 2006) (wrongful termination in breach of contract); Librado, 2004 U.S. Dist. LEXIS 10817, Ex. P (wrongful death tort action).

Courts have also entered protective orders against discovery of immigration status and alienage in civil rights suits. See, e.g., Avila-Blum v. Casa de Cambio Delgado, 236 F.R.D. 190, 192 (S.D.N.Y. 2006) (discrimination claims under Title VII and the Family

11

Medical Leave Act); EEOC v. First Wireless Group, Inc., 225 F.R.D. 404, 405 (E.D.N.Y. 2004) (charging workplace discrimination based on race and ethnicity); EEOC v. Restaurant Co., 490 F. Supp. 2d 1039 (D. Minn. 2007) (Title VII claim for civil rights violation based on gender discrimination); Sandoval, 2007 U.S. Dist. LEXIS 97773, Ex. H, (workplace discrimination and sexual harassment); Vanek, 2007 U.S. Dist. LEXIS 5931, Ex. I, (age discrimination); Lozano v. City of Hazelton, 239 F.R.D. 397 (M.D. Penn. 2006) (discrimination claims brought against municipality), appeal pending; De La O, 2006 U.S. Dist. LEXIS 76816, Ex. J, (various civil rights claims against municipality and state); Garcia, 2006 U.S. Dist. LEXIS 48532, Ex. N, (pregnancy discrimination); EEOC v. City of Joliet, 239 F.R.D. 490 (N.D. Ill., May 5, 2006) (Title VII sexual harassment and discrimination claim); EEOC v. Bice of Chicago, 229 F.R.D. 581 (N.D. Ill. 2005) (employment discrimination).

      A district court in Washington specifically extended the rationale of these opinions entering protective orders against discovery of immigration status or alienage to a case involving police misconduct. In De La O, Plaintiffs alleged that police had detained and arrested them without reasonable suspicion or probable cause. The Defendants sought discovery of Plaintiffs' immigration status, arguing that it was relevant to the existence of "reasonable suspicion" justifying Plaintiffs' arrest. De La O, 2006 U.S. Dist. LEXIS 76816 at *11, Ex. J. The Court evaluated the claims of the arresting police officers as to relevance, and then held that Plaintiffs had "satisfied their

burden of showing good cause by demonstrating harm or prejudice that would result if they were forced to disclose their immigration status." Id.[4] See also infra, Part II, C, 1.

Allowing Plaintiffs to vindicate their rights without forcing them to disclose oppressive, burdensome, damaging, and irrelevant information about their immigration status and alienage, is consistent with a wide range of case law on the issue. A protective order is critical to preserve the ability of wronged, abused and oppressed non-citizens to seek justice in federal courts.

**C. Plaintiffs' alleged immigration status and alienage are not relevant to any specific claim or defense in this case.**

Defendants' requests for discovery into Plaintiffs' immigration status and alienage in this case are not relevant to any specific claim or defense. Plaintiffs' causes of action can be divided into three categories, those relating to: illegal arrest and detention; racial or ethnic profiling; and freedom of speech and association. None of the elements of these causes of action, nor possible defenses to them, relates to immigration status or alienage.

---

[4] The risk that court-compelled disclosure of immigration status or alienage information about a particular individual will chill many persons from ever asserting important constitutional or civil rights claims has also prompted many courts to approve the use of anonymous or "John Doe" pleadings by non-citizens bringing civil rights suits. For example, the Supreme Court allowed children who were undocumented immigrants to proceed anonymously in a suit seeking access to Texas schools. Plyler v. Doe, 457 U.S. 202 (1982); see also Lozano v. City of Hazelton, 496 F. Supp. 2d 477 (M.D. Penn. 2007) (upholding the rights of immigrants challenging discriminatory municipal ordinances to proceed anonymously), notice of appeal pending; Doe v. Advanced Textile Corp., 214 F.3d 1058, 1063 (9th Cir. 2000) (overturning trial court and allowing non-citizen plaintiffs to proceed anonymously in order to vindicate their rights under the Fair Labor Standards Act).

Courts in the District of Connecticut have followed other district courts in the Second and Seventh Circuits, ruling that protective orders are proper when defendants seek documents or information that do not "pertain directly" to Plaintiffs' complaint. Badr v. Liberty Mutual Group, 2007 U.S. Dist. LEXIS 73437 (D. Conn. 2007), attached as Exhibit Q, (request for all records relating Plaintiffs' previous employment in workplace discrimination suit was overly broad when the only relevance was to contradict Plaintiff's testimony on one specific issue); Franzon v. Massena Mem. Hosp., 189 F.R.D. 220, 222 (N.D.N.Y. 1999) (Plaintiffs in suit against medical review board had to justify each category of records sought as relevant to their specific complaint); see also Chamberlain v. Farmington Savings Bank, 2007 U.S. Dist. LEXIS 70376 at *8, Ex. D, (forcing Plaintiff to produce records "would constitute an unwarranted intrusion" and Defendant could not discover irrelevant records based solely on hope that within them he would discover plausible defense); Chemical Bank v. Dana, 149 F.R.D. 11, 14 (D. Conn. 1993) (discovery request was overly broad when it sought a wide range of bank records with no relevance to the claim at issue in the case).

In this case, although Plaintiffs' alleged immigration status and alienage may be relevant to their civil immigration proceedings, Defendants cannot "transfer" the relevance to this lawsuit. See e.g., Chemical Bank v. Dana, 149 F.R.D. 11, 14 (D. Conn. 1993) (materials related only to separate civil litigation involving same Plaintiffs was subject to protective order). It would be highly unjust if the same illegal arrest that resulted in the commencement of deportation proceedings against Plaintiffs also barred them from vindicating their constitutional claims against the perpetrators of the rights violations in this action.

14

      *1. Information obtained in discovery relating to Plaintiffs' immigration status is not relevant to any claim or defense relating to illegal seizure, arrest and detention.*

Plaintiffs have pled five causes of action relating to their unlawful seizure, arrest, and detention. Am. Comp., First, Second, Tenth, and Thirteenth Causes of Action. In order to justify the seizure, arrest and detention of Plaintiffs, Defendants will need to prove that they had, at the very least, "reasonable suspicion" that an enforceable law was being violated *at the time of seizure* and "probable cause" at the time of arrest. Terry v. Ohio, 392 U.S. 1, 21-22 (1968); Gerstein v. Pugh, 420 U.S. 103 (1975). Reasonable suspicion and probable cause must be based on specific, articulable evidence available to the officers *prior* to the time of detention or arrest. Id. See also United States v. Brignon-Ponce, 422 U.S. 873 (1975); U.S. v. Padilla, 548 F.3d 179 (2d Cir. 2008); United States v. McCargo, 464 F.3d 192 (2d Cir. N.Y. 2006). Arresting officers cannot use discovery to retroactively create reasonable suspicion or probable cause. Ramirez v. Webb, 599 F. Supp. 1278, 1284 (W.D. Mich. 1984) *aff'd without opinion* 787 F .2d 592 (6th Cir. Mich. 1987) ("It would appear that [the officer] believes he can stop a vehicle and *then* discover reasonable articulable facts for doing so, based on closer observation and interrogation. That is not the case law or the constitutional principle. The reasonable articulable facts must *precede* the stop.").

Thus, evidence obtained through discovery in this case cannot be used to retroactively create reasonable suspicion or probable cause in the minds of the Defendants three years prior. This standard has been specifically upheld to prohibit discovery into immigration status and alienage. In a case involving the arrest and detention of alleged illegal immigrants, the District Court in the Eastern District of

15

Washington ruled that defendant police officers seeking to justify their detention and arrest of plaintiffs (alleged illegal immigrants) were prohibited from seeking discovery into plaintiffs' immigration status or alienage. De La O, 2006 U.S. Dist. LEXIS 76816 \*\*9-12, Ex. J. The court in De La O explained that Defendants had to prove that there was a legitimate police concern that justified the arrest of immigrants *at the time they were detained and arrested*, and that evidence obtained later through discovery could have no bearing on the reasons for arrest. Id. Plaintiffs' immigration status and alienage are thus not relevant to the defense of the seizure, arrest or detention claims.

> 2. *Evidence related to Plaintiffs' immigration status and alienage is not relevant to any claim or defense regarding Plaintiffs' claims of unlawful profiling based on race, ethnicity, or perceived national origin.*

Plaintiffs have pled four causes of action alleging unlawful profiling. Am. Comp., Third, Fifth, and Fourteenth Claims for Relief. These equal protection claims assert that Plaintiffs were singled out for discriminatory treatment based on their race, ethnicity and perceived national origin. Plaintiffs have not claimed discrimination based on immigration status or alienage.

Equal protection claims regarding race, ethnicity and national origin are subject to strict scrutiny. Bolling v. Sharpe, 347 U.S. 497 (1954); Castaneda v. Partida, 430 U.S. 482 (1977) (national origin discrimination against Mexican-Americans in grand jury selection is impermissible); Oyama v. California, 332 U.S. 633, 644-47 (1948) (restriction on transfer of agricultural property of Japanese Lawful Permanent Resident is a violation of Equal Protection). Equal protection extends to all persons in the United States, regardless of citizenship or immigration status. Yick Wo v. Hopkins, 118 U.S. 356, 369 (1886) (the protections of the Constitution "are universal in their application to

16

all persons within the territorial jurisdiction, without regard to any differences of race, of color or of nationality").

Defendants' response to Plaintiffs' claims must thus be to argue that Plaintiffs' were *not* detained based on their race, ethnicity, or national origin, and were instead targeted based on a facially neutral policy that was being applied in a neutral manner, without *any* intent to discriminate. Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265-66, 270 n. 21. (1977) (if discrimination is so much as a "motivating factor," even in official action that appears facially neutral, the action is unconstitutional). Defendants do not need information about Plaintiffs' immigration status or alienage to prove that they were enforcing a policy that did not discriminate on the base of race, ethnicity or national origin.

>   3.  *Evidence related to Plaintiffs' immigration status and alienage is not relevant to any claim or defense relating to Plaintiffs' First Amendment claims.*

Plaintiffs have also alleged that they were singled out based on their protected speech and association. Plaintiffs have pled one cause of action alleging unlawful restriction of speech. Am. Comp., Fourth Claim for Relief. It is undisputed that Plaintiffs' speech took place in a public forum. Although Plaintiffs maintain that they were gathered in Kennedy Park and Defendants maintain they were gathered on Main Street, both of these would constitute public forums. Lakewood v. Plain Dealer Co., 468 U.S. 750, 797 (1988) (city streets have been recognized as public forums for First Amendment purposes since "time immemorial"). Because Plaintiffs' speech occurred in a public forum, Defendants must prove first that their restriction of that speech was one based on the time, place or manner of the speech, and not its content. Police Dep't of

17

Chicago v. Mosley, 408 U.S. 92 (1972).  Plaintiffs' immigration status and alienage are not relevant to whether the restriction of their speech was one of time, place or manner.[5]

Second, Defendants must prove that their time, place or manner restriction was narrowly tailored to serve a substantial government interest.  Ward v. Rock Against Racism, 491 U.S. 781 (1989).  Individual Danbury Defendants have admitted that Plaintiffs were originally picked up by Joseph Norkus, that Norkus was acting as an official of the City of Danbury, and that the vehicle used to transport them from the public forum was owned, leased or operated by the Danbury Police Department. *See* Individual Danbury Defendants' Response to Plaintiffs' Requests for Admission of Facts, Feb. 10, 2009, attached as Exhibit R, at ¶¶ 1, 2, 3, 10.  Because the Danbury Police Department is not authorized to make immigration arrests, the government interest in this case would have to be something *other* than the enforcement of immigration regulations.  See 8 U.S.C. § 1357(a) (limiting authority to detain suspected aliens to officers of the Department of Homeland Security); see also Id. § 1357(g) (authorizing state and local jurisdictions to enter into memorandum agreement with DHS to deputize local police as immigration agents).[6]   Discovery into Plaintiffs' immigration status or alienage will thus have no relevance to Defendants' defense against Plaintiffs' First Amendment claims.

---

[5] In their motion to dismiss, the Individual Danbury Defendants contended that the state constitutional protections for speech and association applied only to citizens, and may therefore argue that, on this theory, citizenship statuts is relevant to Plaintiffs' speech and association *Binette* claims.  In opposing the motion, Plaintiffs disputed the contention that Connecticut's constitutional protections are limited to U.S. citizens, and Judge Chatigny denied the motion.

[6] It is undisputed that at the time of Sept. 19, 2006 arrests, as at present, the Danbury Police Department had not entered into a memorandum agreement pursuant to 8 U.S.C. § 1357(g) deputizing them to enforce immigration laws.

### III. Conclusion

In light of the foregoing, Plaintiffs request this Court grant this motion for a protective order prohibiting inquiry into and discovery of any record or admission bearing on Plaintiffs' immigration status or alienage.

Respectfully submitted,

_____/s/_____
Christopher N. Lasch, Supervising Attorney, ct27139
Michael J. Wishnie, Supervising Attorney, ct27221
Ramzi Kassem, Supervising Attorney, ct27537
Ari Holtzblatt, Law Student Intern
Heide Iravani, Law Student Intern
Elizabeth Simpson, Law Student Intern
Rebecca Heller, Law Student Intern
Dror Ladin, Law Student Intern
Jerome N. Frank Legal Services Organization
Yale Law School
127 Wall Street
New Haven, CT 06511
Telephone: (203) 432-4800
Facsimile: (203) 432-1426
michael.wishnie@yale.edu
christopher.lasch@yale.edu
ramzi.kassem@yale.edu

*Counsel for Plaintiffs*

April 10, 2009

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 10, 2009, a copy of the foregoing was sent by Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

Douglas P. Morabito
U.S. Attorney's Office-NH
157 Church St., 23rd floor
New Haven, CT 06510

Charles A. Deluca
Ryan, Ryan, Johnson & Deluca, LLP-CT
707 Summer Street
Stamford, CT 06901

Daniel E. Casagrande
Cramer & Anderson - Danbury
30 Main Street
Suite 303
Danbury, CT 06810

By     /s/
        Rebecca Heller
        Law Student Intern

April 10, 2009