**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JUAN BARRERA, JOSÉ CABRERA, DANIEL CHAVEZ, JOSÉ DUMA, JOSÉ LLIBISUPA, ISAAC MALDONADO, EDGAR REDROVAN, NICHOLAS SEGUNDO SANCHEZ, JUAN CARLOS SIMBAÑA, and DANILO BRITO VARGAS, | |
| | CIVIL ACTION NO. 3:07-cv-01436-RNC |
| *Plaintiffs,* | |
| v. | August 27, 2009 |
| MARK BOUGHTON, ALAN BAKER, JOSÉ AGOSTO, RICHARD DEJESUS, JAMES A. FISHER, JAMES LALLI, CRAIG MARTIN, JOSEPH NORKUS, JOHN DOES, CITY OF DANBURY, JAMES BROWN, RICHARD MCCAFFREY, RONALD PREBLE, JOHN DOES, and the UNITED STATES, | |
| *Defendants.* | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR A PROTECTIVE ORDER REGARDING IMMIGRATION STATUS AND ALIENAGE

Plaintiffs' hereby renew their motion for a protective order pursuant to Fed. R. Civ. P. 26(c) to bar Defendants from obtaining discovery into their immigration status and alienage.[1] After Plaintiffs' initial motion for a protective order was denied without prejudice, Dkt. #246, the parties conferred further and have significantly narrowed the items in dispute. See Declaration of Rebecca Heller. All Defendants, however, continue

---

[1] This motion is submitted on behalf of all Plaintiffs except José Duma and Danilo Brito Vargas. For the purposes of this memorandum, the remaining eight Plaintiffs will be referred to as "Plaintiffs."

to seek information regarding Plaintiffs' alleged immigration status and alienage through a number of discovery requests, which are specified in this memorandum in accordance with Local Rule 37(b)(1) and this Court's order. See Dkt. #246; infra Argument Part III. Because the parties were unable to reach agreement over these remaining requests, Plaintiffs renew their motion for a protective order.[2]

To grant discovery into immigration status in this case would be to depart from a large and growing body of case law in the Second Circuit barring similar discovery in recognition of the irrelevance of immigration status to the adjudication of civil rights claims and the powerful in terrorem effect that would result from compelled disclosure of such information. See infra Argument Part I. The compelled production of such evidence would force Plaintiffs to sacrifice one set of rights in order to vindicate another. Information about Plaintiffs' immigration status and alienage could potentially lead to their eventual prosecution or deportation. Id. Requiring such discovery in this case would have the effect of conditioning Plaintiffs' access to the courts on the disclosure of immigration status and alienage information, and would severely chill vindication of fundamental constitutional and civil rights. Id.

Furthermore, the specific discovery requests at issue that implicate Plaintiffs' alleged immigration status or alienage are not reasonably calculated to lead to admissible evidence, and would annoy, embarrass, oppress, and unduly burden Plaintiffs. Cf. Fed. R. Civ. P. 26(c). The requests are not relevant to Plaintiffs' claims, nor to any specific defense that Defendants have invoked or may assert. See infra, Argument Part II. At

---

[2] Absent a protective order, Plaintiffs intend to invoke their Fifth Amendment privilege against self-incrimination in response to many of these requests, as set forth in the written objections they previously served on Defendants. The Fifth Amendment may be invoked in civil proceedings. Where appropriate, an adverse inference may be drawn. McCarthy v. Arndstein, 266 U.S. 34, 40 (1924).

best, they are remotely related to the general subject matter of the case. This is not enough to satisfy the requirements of Fed. R. Civ. P. 26(c), nor does it justify the terrorizing effect on Plaintiffs of such production.[3]

## FACTS AND PROCEEDINGS

On September 19, 2006, Defendants arrested Plaintiffs in an undercover sting operation designed to target day-laborers in Danbury, Connecticut. Am. Compl. ¶ 61, Dkt. # 21.  The government did not bring state or federal criminal charges against the Plaintiffs, but federal immigration agents placed them in removal proceedings based solely on statements obtained on the day of the arrest. Id. at ¶¶ 104, 106. Plaintiffs moved to suppress this evidence and terminate proceedings before the Immigration Judge, but the motion was denied and Plaintiffs were subsequently either ordered removed or granted voluntary departure. See Orders of the Immigration Judge, Feb. 4, 2008, Ex. B. Plaintiffs have appealed this ruling to the Board of Immigration Appeals. See Notice of Appeal of Decision of Immigration Judge, Feb. 28, 2008, Ex. C. Plaintiffs brought the current suit to vindicate their constitutional and civil rights, alleging claims under the First, Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution, Article 1 §§ 4, 7, 8, 9, and 20, of the Connecticut Constitution, and the common law of Connecticut. See Am. Compl. All Defendants have sought information about Plaintiffs' immigration status and alienage in numerous interrogatories, requests for admission, and requests for

---

[3] Plaintiffs acknowledge that an Immigration Judge has found that each Plaintiff is a native and citizen of Ecuador, present without inspection in this country. See Decision of the Immigration Judge, Jan. 30, 2008, Ex. A. However, this finding was based on the Immigration Judge's erroneous denial of each Plaintiff's motions to suppress and terminate filed in his removal proceedings, and the resulting admission of evidence obtained through the illegal arrests of Plaintiffs by Defendants on September 19, 2006. Id. Plaintiffs have appealed the denial of their motions to suppress and terminate to the Board of Immigration Appeals; those appeals are pending. See Notice of Appeal of Decision of Immigration Judge, Feb. 28, 2008, Ex. C.

production of documents, which are specified in this memorandum. See infra Argument Part III.

If Plaintiffs are compelled to produce this information, it will severely prejudice their ability to defend themselves in the removal proceedings now pending against them. In all removal proceedings, the burden is on the government to prove alienage and deportability by "clear and convincing evidence." 8 U.S.C. § 1229a(c)(3)(A). During Plaintiffs' removal proceedings, they denied the government's allegations of alienage and unlawful presence. The government attempted to carry its burden by questioning Plaintiffs about their alienage and immigration status. The Plaintiffs invoked their Fifth Amendment privilege against self-incrimination and refused to answer. The government then offered a U.S. Immigration and Customs Enforcement ("ICE") Form I-213, Record of Deportable Alien, as alternative proof. The I-213's in this case were completed by ICE agents based upon interviews of the Plaintiffs on the day of their arrests.

Plaintiffs objected and moved to suppress the Forms I-213 tendered in their removal proceedings, on the basis of constitutional, statutory, regulatory, and sub-regulatory violations that occurred during their arrest. Plaintiffs were denied any discovery or evidentiary hearings, or even an opprotunity to testify personally, in their removal cases. The Immigration Judge denied each Plaintiff's motion to suppress, admitted each I-213 into evidence, and on that basis concluded that the government had carried its burden to prove alienage.  The Immigration Judge then ordered each Plaintiff removed or granted him voluntary departure. See Orders of the Immigration Judge, Exs. A, B.

Each Plaintiff has appealed this determination to the BIA. Upon information and belief, the only evidence of alienage available to the government in Plaintiffs' deportation proceedings is in the I-213's. The government should not be allowed to obtain in *this* action evidence of Plaintiffs' alienage or immigration status that it could then seek to introduce to carry its burden in the removal proceedings.

For this reason, among others, Plaintiffs filed their first Motion for Protective Order on All Discovery Requests Regarding Immigration Status and Alienage on April 10, 2009. Dkt. # 156. Oral argument on this motion was held on June 12, 2009. Dkt. # 224. On July 16, 2009, Judge Martinez denied Plaintiffs' motion without prejudice to refilling. Dkt. # 246.

Since this ruling, the parties have conferred further and made significant progress in narrowing the issues in dispute. See Declaration of Rebecca Heller. All Defendants, however, continue to seek Plaintiffs' immigration status and alienage through a number of discovery requests. See Argument Part III. Plaintiffs thus renew their motion for a protective order to protect themselves from having to release this information.[4]

### STANDARD OF REVIEW

Federal Rule of Civil Procedure 26 was amended in 2000 specifically to narrow the scope of discovery to "any nonprivileged matter that is relevant to any party's claim

---

[4] In their written responses to Defendant's interrogatories, requests for admission, and requests for production, Plaintiffs have raised additional objections and, in some instances, privileges, in addition to objecting on the grounds that the discovery seeks immigration status or alienage information.  On this motion, Plaintiffs affirmatively seek a protective order only on the basis of the immigration status or alienage objection, but do not waive any other objection or privilege also noted in their objections and responses.  Counsel for Plaintiffs and Defendants have agreed that as to Plaintiffs' objections other than on immigration status or alienage grounds, the parties shall confer through counsel, and Defendants will move to compel responses on any items that counsel are unable to resolve and as to which Defendants seek a judicial resolution.

or defense." Fed. R. Civ. P. 26(b)(1). The amendment was intended to limit the prior version of Rule 26, which had allowed discovery into any information relevant to the subject matter of the lawsuit. According to the Advisory Committee, the purpose of the change was "to involve the court more actively in regulating the breadth of sweeping or contentious discovery." Fed. R. Civ. P. 26(b)(1), advisory comm. notes to 2000 Amend.

The Second Circuit has held that amended Rule 26(b)(1) defines the boundaries of permissible discovery, but also that Fed. R. Civ. P. 26(c) directly limits the scope of 26(b)(1). Rule 26(c) "permits a District Court to make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense upon a showing by a movant for the order of good cause." Gambale v. Deutsche Bank Ag, 377 F.3d 133, 142 (2d Cir. 2004). See also Chamberlain v. Farmington Savings Bank, No. 3:06CV01437(CFD), 2007 WL 2786421 (D. Conn. Sept. 25, 2007), Ex. D ("The Federal Rules afford courts wide discretion in resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing their oppressiveness, and weighing these factors in deciding whether discovery should be compelled."); see also Badr v. Liberty Mutual Group, No. 3:06CV1208(AHN), 2007 U.S. Dist. LEXIS 73437, at *7 (D. Conn. Sept. 27, 2007), Ex. E; Chemical Bank v. Dana, 149 F.R.D. 11, 14 (D. Conn. 1993).

Because evidence regarding Plaintiffs' immigration status and alienage is not relevant, and because any potential relevance is outweighed by the oppressiveness and chilling effects of the request, Plaintiffs' motion for protective order should be granted.


**ARGUMENT**

I.   **Courts in the Second Circuit and elsewhere have granted protective orders against compelled production relating to immigration status and alienage, in recognition of the powerful *in terrorem* effects of such disclosures.**

The Supreme Court has long held that one cannot be compelled to choose between the Fifth Amendment privilege against self-incrimination and the vindication of her other rights. See, e.g., Simmons v. United States, 390 U.S. 377, 394 (1968) ("[W]e find it intolerable that one constitutional right should have to be surrendered in order to assert another."). In the current case, forcing Plaintiffs to disclose information about their alienage or immigration status, which might later be used against them in their immigration proceedings, forces them to surrender one set of rights in order to preserve another.

The chilling effects described in cases where protective orders over immigration status have been granted span a number of contexts.  For instance, in Topo v. Dhir, the plaintiff sought damages in tort for human trafficking, intentional infliction of emotional distress, and other causes of action. 210 F.R.D. 76, 77 (S.D.N.Y. 2002). Moreover, proof of Ms. Topo's alienage was an element of her own proof on claims brought under the Alien Tort Claims Act. Nevertheless, Magistrate Judge Ellis granted a protective order regarding immigration status information. "Although the cases addressing this issue typically relate to the Fair Labor Standards Act, the underlying principle is still the same. When the potential for abuse of procedure is high, the Court can and should act within its discretion to limit the discovery process, even if relevancy is determined." Id. at 78.

In many other cases, courts have entered a protective order regarding immigration status or alienage where plaintiffs alleged tort and contract claims. See, e.g., Hocza, 2009 WL 124701, at *1, Ex. G (tort claims for negligence and state labor code violations);

Collins v. New York City Health and Hosps. Corp., 201 A.D.2d at 447 (damages for

negligence and wrongful death); Incalza v. Fendi, 479 F.3d at 1008 (wrongful

termination in breach of contract); Librado, 2004 U.S. Dist. LEXIS 10817, at *3, Ex. X

(wrongful death tort action).

 The underlying principles apply with equal force in other civil rights contexts,

including in police misconduct cases such as this one.  A U.S. District Court in

Washington, for instance, specifically applied the rationale of these opinions to a case

involving false arrest claims. In De La O, Plaintiffs alleged that police had detained and

arrested them without reasonable suspicion or probable cause. The Defendants sought

discovery of Plaintiffs' immigration status, arguing that it was relevant to the existence of

"reasonable suspicion" justifying Plaintiffs' arrest. 2006 U.S. Dist. LEXIS 76816, at *11,

Ex. Q. The Court entered a protective order, holding that Plaintiffs had "satisfied their

burden of showing good cause by demonstrating harm or prejudice that would result if

they were forced to disclose their immigration status." Id.[5] See also Comm. for

Immigrant Rights v. County of Sonoma, 3:08-CV-04220-PJH (N.D. Cal. Apr. 24, 2009),

Ex. T (granting protective order seeking to bar discovery into immigration status in a

class action suit alleging police and municipal misconduct).

---

[5] The risk that court-compelled disclosure of immigration status or alienage information about a particular individual will chill many persons from ever asserting important constitutional or civil rights claims has also prompted many courts to approve the use of anonymous or "John Doe" pleadings by non-citizens bringing civil rights suits. For example, the Supreme Court allowed children who were undocumented immigrants to proceed anonymously in a suit seeking access to Texas schools. Plyler v. Doe, 457 U.S. 202 (1982); see also Lozano v. City of Hazleton, 496 F. Supp. 2d 477 (M.D. Pa. 2007) (upholding the rights of immigrants challenging discriminatory municipal ordinances to proceed anonymously), notice of appeal pending; Doe v. Advanced Textile Corp., 214 F.3d 1058, 1063 (9th Cir. 2000) (overturning trial court and allowing non-citizen plaintiffs to proceed anonymously in order to vindicate their rights under the Fair Labor Standards Act).

Courts in the Second Circuit have long maintained that forcing a Plaintiff to answer discovery requests related to immigration status or alienage is prejudicial, oppressive, and embarrassing. The issue has come before courts within the Second Circuit numerous times, and research indicates that a protective order has been granted in every case but one. See infra note 6.The Second Circuit Court has explicitly recognized that "[f]orcing an alien to perform the act of producing a foreign passport, I-94, or statement regarding immigration status at least arguably forces the alien to admit alienage and thus provide possible evidence of one or more crimes involving immigration violations," Rajah v. Mukasey, 544 F.3d 427, 441-42 (2d Cir. 2008), which could lead to "further investigation and subsequent prosecution." Id. (citing 8 U.S.C. § 1302 (criminal offense to failure to register with immigration authorities unless exempted by the attorney general); id. § 1306 (criminal offense of willful failure to register); id. § 1325 (criminal offense of entering United States without inspection by immigration authorities)). See also EEOC v. First Wireless Group, Inc., 225 F.R.D. 404, 406 (E.D.N.Y. 2004) ("[D]iscovery of the Charging Parties' immigration status would cause them embarrassment and if their status is found to be illegal would subject them to criminal charges and, possibly, deportation").

Consistent with these well-settled principles, courts have repeatedly and specifically held that defendants in civil rights, employment, and other matters may not obtain discovery of the immigration status or alienage of a plaintiff, lest the *in terrorem* effects of permitting such discovery prevent immigrants from vindicating their constitutional and civil rights and deny them their fundamental right of access to the courts. Numerous courts within the Second Circuit have granted immigration-related

protective orders, both to protect individual plaintiffs from harassment and retaliation, and to prevent the chilling effect that discovery into immigration status would have on future lawsuits. <u>See, e.g.</u>, <u>Trejos v. Edita's Bar & Rest.</u>, No. CV-08-1477(ARR), 2009 WL 749891, at *2 (E.D.N.Y. Mar. 17, 2009), Ex. F ("[E]ven if the information sought [about the plaintiffs' immigration status] were somehow relevant, the *in terrorem* effect of the questions defendants seek to press outweighs the need for disclosure."); <u>Hocza v. City of New York</u>, No. 06 Civ. 3340, 2009 WL 124701, at *2 (S.D.N.Y. Jan. 19, 2009), Ex. G ("[W]hatever probative value illegal alien status may have is far outweighed by its prejudicial impact."); <u>Renifo v. Erevos Enters.</u>, 2007 U.S. Dist. LEXIS 19928 at *5 (S.D.N.Y., March 20, 2007), Ex. H ("Courts have recognized the *in terrorem* effect of inquiring into a party's immigration status and authorization to work in this country when irrelevant to any material claim because it presents a danger of intimidation [that] would inhibit plaintiffs in pursuing their rights."); <u>EEOC v. First Wireless Group</u>, 2007 U.S. Dist. LEXIS 11893 at *8 (E.D.N.Y. Feb. 20, 2007), Ex. I ("Immigration status discovery in cases where plaintiffs are possibly undocumented is a very sensitive area of inquiry. In some cases, such information is not relevant because a claimant is continually employed or it was the employer who failed to comply with immigration laws. In most cases, however, the *in terrorem* effect of the proposed inquiry outweighs the probative value of the discovery."); <u>Avila-Blum v. Casa de Cambio Delgado, Inc.</u>, 236 F.R.D. 190, 191 (S.D.N.Y. 2006) ("The Court shares the concerns animating the [protective] [o]rder and the decisions of other courts that have balanced the imperatives of optimal discovery, the introduction of unduly prejudicial evidence at trial, and the chilling effect of inquiry into immigration status . . . ."); <u>EEOC v. First Wireless Group, Inc.</u>, 225 F.R.D. 404, 406

(E.D.N.Y. 2004) (upholding decision that discovery into charging parties' immigration

status "would constitute unacceptable burden on public interest due to [a] chilling

effect"); Topo v. Dhir, 210 F.R.D. 76, 78 (S.D.N.Y. 2002) ("Courts have generally

recognized the *in terrorem* effect of inquiring into a party's immigration status when

irrelevant to any material claim."); Zeng Liu v. Donna Karan Int'l, Inc., 207 F. Supp. 2d

191, 193 (S.D.N.Y. 2002) (finding that inquiry into plaintiffs' immigration status, even

under a confidentiality agreement, would present "a danger of intimidation [that] would

inhibit plaintiffs in pursuing their rights"); Flores v. Amignon, 233 F. Supp. 2d 462, 464-

65 (E.D.N.Y. 2002) ("Not only does this Court find that the information is not relevant to

defendant's defense, but as the court in *Liu* noted, even if it were, the potential for

prejudice far outweighs whatever minimal probative value such information would

have.").[6]

---

[6] In opposition to Plaintiffs' original motion for protective order, the federal defendants relied heavily on a single decision departing from this substantial body of decisions by courts within the Second Circuit. See Dkt. # 169 (citing Aguilar v. ICE, No. 07cv8224(JGK)(FM) (S.D.N.Y. Jan. 7, 2009) (denying in part motion for protective order in class action suit alleging that ICE agents illegally entered private homes and unlawfully arrested numerous individuals)); see also Aguilar v. ICE, 07cv8224(JGK)(FM) (S.D.N.Y. June 23, 2009) ("Aguilar II") (denying motion to reconsider), Ex. J. Aguilar is factually distinguishable, involving different underlying allegations and different discovery requests, and incorrectly decided. For instance, the decision of Magistrate Judge Maas that immigration status is relevant to credibility, Aguilar II at 8, is contrary to numerous other decisions within the Second Circuit. See, e.g., Renifo v. Erevos Enters., 2007 U.S. Dist. LEXIS 19928 at *9 (S.D.N.Y., March 20, 2007), Ex. H ("[D]efendant's opportunity to test the credibility of Renifgo does not outweigh the public interest in allowing employees to enforce their rights."); EEOC v. First Wireless Group, 2007 U.S. Dist. LEXIS 11893 (E.D.N.Y. Feb. 20, 2007), Ex. I (immigration status not relevant to inquiry into credibility, and any potential relevance outweighed by *in terrorem* effects); Avila-Blum v. Casa De Cambio Delgado, Inc., 236 F.R.D. 190 ( S.D.N.Y. 2006 )("[T]hat a party's credibility is at issue does not by itself warrant ulimited inquiry into the subject of immigration status when such examiniation would impose an undue burden on private enfocement of employment discrimination laws.") Similarly, Judge Maas's conclusion in Aguilar II that immigration status is subject to discovery in defense of an emotional distress claim, id. at 8, is also contrary to decisions within this circuit. See, e.g., EEOC v. First Wireless Group, Inc., 2007 U.S. Dist. LEXIS 11893 (E.D.N.Y. Feb. 27, 2007), Ex. I ("garden variety emotional distress claim" does not warrant examination into immigration status). Moreover, even Judge Maas recognized the potential *in terrorem* effects of such discovery in ordering that any information regarding immigration status or alienage be subject to an "attorney eyes only" protective order and not be shared with any ICE attorney involved in prosecuting or  supervising the

Courts outside the Second Circuit have similarly protected plaintiffs from compelled disclosure of their immigration status. See, e.g., Incalza v. Fendi N. Am., Inc., 479 F.3d 1005, 1009 (9th Cir. 2006) ("[I]n proceedings or discovery undertaken to enforce [California's labor, employment, and civil rights] state laws no inquiry shall be permitted into a person's immigration status except where the person seeking to make this inquiry has shown by clear and convincing evidence that this inquiry is necessary in order to comply with federal immigration law"); United States v. Arias-Izquierdo, 449 F.3d 1168, 1189 (11th Cir. 2006) (upholding denial of the defendants' request for post-trial discovery of the plaintiff's immigration status for purposes of discrediting his prior testimony); Calderon v. Witvoet, 999 F.2d 1101, 1107 (7th Cir. 1993) (denying request for discovery into plaintiffs' immigration status in class action lawsuit under federal employment statutes); In re Reyes, 814 F.2d 168, 170 (5th Cir. 1987) (issuing writ of mandamus to overturn district court decision allowing discovery into plaintiffs' immigration status because it "could inhibit petitioners in pursuing their rights in the case because of possible collateral wholly unrelated consequences, because of embarrassment and inquiry into their private lives which was not justified, and also because it opened for litigation issues which were not present in the case"); Pacheco v. Boar's Head Provisions Co., Inc., 2009 U.S. Dist. LEXIS 73685 (W.D. Mich., Aug. 3, 2009), Ex. K ("questions directly involving a party's immigration status sought irrelevant or marginally relevant information and… their utility was outweighed by the probability of witness intimidation"); Sandoval v. Rizzuti Farms, Ltd., cv-07-3076-EFS (E.D. Wa. July 15, 2009), Ex. L ("Accordingly, in order to prevent manifest injustice and the chilling of

---

plaintiffs' removal cases, Aguilar II at 9, – a proposal specifically rejected by federal defendants in this case when raised by the Court at oral argument on the original motion for protective order.

Plaintiffs' private right of action under the Act, discovery regarding immigration status is barred."); Baca v. Brother's Fried Chicken, 2009 U.S. Dist. LEXIS 42306 (E.D. La. May 13, 2009), Ex. M ("plaintiffs' motion for a protective order limiting inquiries with in *in terrorem* effect [sic] is GRANTED in that plaintiffs are not required to provide defendants with the following information: (a) immigration status; (b) Social Security numbers; and (c) addresses."); David v. Signal Int'l, LLC, 257 F.R.D. 114 (E.D. La. April 2, 2009) ("[T]his court can only conclude that any inquiry into plaintiffs' current immigration status, current residence and/or post-termination employment history will most assuredly strike paralyzing fear in the plaintiffs sufficient to chill any inclination they may have had to prosecute their pending claims."); Sandoval v. Am. Bldg. Maint. Indus., No. 06CV1772(RHK/JSM), 2007 U.S. Dist. LEXIS 97773, at *57 (D. Minn. Oct. 23, 2007), Ex. N ("Defendant employers may not use the discovery process to delve into a plaintiff's immigration status."); Vanek v. I.I., Inc., No. 4:06CV3223, 2007 U.S. Dist. LEXIS 59311, at *5-6 (D. Neb. Aug. 14, 2007), Ex. O ("I fail to see how evidence concerning Mr. Ruffin's immigration status might assist in the development of a reasonable inference of discrimination within the context of [this] case's . . . facts."); EEOC v. Rest. Co., No. 05-1656(JRT/FLN), 2007 WL 424323, at *1 (D. Minn. Feb. 2, 2007), Ex. P ("[T]he discovery sought [into the plaintiffs' immigration status] is not sufficiently relevant to justify its potential chilling effect on victims of discrimination."); Lozano v. City of Hazleton, 239 F.R.D. 397, 400 (M.D. Pa. 2006) ("It is important in balancing the defendant's need against the burden on the plaintiffs to bear in mind that this case involves the constitutional and statutory rights asserted by the plaintiffs with regard to certain ordinances. This case is not an action to enforce United States

immigration laws. Plaintiffs' interest in keeping this information confidential outweighs the defendant's need for it, and the request for a protective order will be granted."); De La O v. Arnold-Williams, No. CV-04-0192-EFS, 2006 U.S. Dist. LEXIS 76816, at *11 (E.D. Wash. Oct. 20, 2006), Ex. Q ("Defendants also argue they need to know the immigration status of Plaintiffs in order to show that the investigation into Plaintiffs was based on legitimate police concerns of criminal conduct and to challenge Plaintiffs' credibility. The Court concludes Plaintiffs' immigration status has little, if any, relevance to either of these issues."); EEOC v. City of Joliet, 239 F.R.D. 490, 493 (N.D. Ill. 2006) ("[C]ourts have found that the *in terrorem* effect of inquiring into the immigration status of employees suing their employer for unfair labor practices is devastating. Not only does an undocumented alien face the reality of possible retaliatory adverse work place actions by the employer, but he or she also faces the very real possibility of being reported to the Department of Homeland Security and subsequent deportation or even criminal prosecution.") (internal citation omitted); Galaviz-Zamora v. Brady Farms, Inc., 230 F.R.D. 499, 502 (W.D. Mich. 2005) ("[T]he effect upon the . . . witnesses of this wholly irrelevant probe into their immigration status which I observed at the hearing ranged from unsettling to devastating and certainly affected their ability to testify."); Garcia-Andrade v. Madra's Cafe Corp., No. 04-71024, 2005 U.S. Dist. LEXIS 22122, at *5 (W.D. Mich., Aug. 3, 2005), Ex. R ("[T]here is sufficient case law to support the assertion that immigration status is irrelevant in this matter and what little relevance the other information sought by the Defendants in this matter [has] is outweighed by the Fifth Amendment concerns expressed by the Plaintiffs."); EEOC v. Bice of Chicago, 229 F.R.D. 581, 583 (N.D. Ill. 2005) ("[W]e find good cause exists to enter this protective

order because questions about immigration status are oppressive, they constitute a substantial burden on the parties and on the public interest and they would have a chilling effect on victims of employment discrimination from coming forward to assert discrimination claims."); Flores v. Albertsons, Inc., No. CV01-00515AHM(SHx), 2002 U.S. Dist. LEXIS 6171, at *21 (C.D. Cal., Apr. 9, 2002), Ex. S ("It is entirely likely that any undocumented [litigant] forced to produce documents related to his or her immigration status will withdraw from the suit rather than produce such documents and face . . . potential deportation."). See also Comm. for Immigrant Rights v. County of Sonoma, 3:08-CV-04220-PJH (N.D. Cal. Apr. 24, 2009), Ex. T; Montoya v. S.C.C.P. Painting Contractors, Inc., No. CCB-07-455, 2008 U.S. Dist. LEXIS 16354 (D. Md. Feb. 26, 2008), Ex. U; Garcia v. Monument Mgmt. Group, No. 4:05CV3139, 2006 U.S. Dist. LEXIS 48532 (D. Neb. July 17, 2006), Ex. V; Recinos-Recinos v. Express Forestry, Inc., No. 05-1355, 2006 U.S. Dist. LEXIS 2510 (E.D. La. Jan. 23, 2006), Ex. W; Librado v. M.S. Carriers, Inc., 2004 U.S. Dist. LEXIS 10817 (N.D. Tex. Mar. 23, 2004), Ex. X; Collins v. New York City Health and Hosps. Corp., 201 A.D.2d 447 (N.Y. App. Div. 1994).

Allowing Plaintiffs to vindicate their rights without forcing them to disclose oppressive, burdensome, damaging, and irrelevant information about their immigration status and alienage is consistent with a wide range of case law. To decide otherwise would be to significantly break with a substantial body of precedent both within the Second Circuit and elsewhere. A protective order is critical to preserve the ability of wronged, abused, and oppressed non-citizens to seek justice in federal courts and to

ensure that public officials are held accountable for their illegal actions towards foreign nationals.

## II. Plaintiffs' alleged immigration status and alienage are not relevant to any specific claim or defense in this case.

Defendants' requests for discovery into Plaintiffs' immigration status and alienage in this case are not relevant to any specific claim or defense. Plaintiffs' causes of action can be divided broadly into three categories—illegal arrest and detention, racial or ethnic profiling, and freedom of speech and association—none of which relate to Plaintiffs' immigration status or alienage. Further, none of the discovery requests at issue in this motion deal with matters which occurred at Kennedy Park on September 19, 2006, before Plaintiffs were arrested. Plaintiffs have complied with as many discovery requests as possible, producing hundreds of pages in response to the hundreds of interrogatories and requests for admission propounded by the various defendants, and those that remain in contention deal almost exclusively with direct inquiries into Plaintiffs' immigration status or alienage.

In this case, although Plaintiffs' alleged immigration status and alienage may be relevant to their civil immigration proceedings, Defendants cannot "transfer" the relevance to this lawsuit. See e.g., Chemical Bank v. Dana, 149 F.R.D. 11, 14 (D. Conn. 1993) (materials related only to separate civil litigation involving same Plaintiffs was subject to protective order). It would be highly unjust if the same illegal arrest that resulted in the commencement of deportation proceedings against Plaintiffs also barred this Court from hearing, and Plaintiffs from vindicating, their constitutional rights.

### A. Information obtained in discovery relating to Plaintiffs' immigration status is not relevant to any claim or defense relating to illegal seizure, arrest and detention.

Plaintiffs have pled six causes of action relating to their unlawful seizure, arrest, and detention.  Am. Compl., First, Second, Tenth, Thirteenth and Twenty-Second Claims for Relief.

Plaintiffs were initially seized by Danbury police officers who were not authorized to enforce civil immigration laws.  Therefore, Plaintiffs' immigration status is entirely irrelevant to whether the arresting Danbury officers had probable cause or reasonable suspicion to arrest Plaintiffs.  Federal immigration officers also participated in the arrest of some or all Plaintiffs.  To defend this claim, they will need to prove that the ICE officers had probable cause Plaintiffs were present illegally before they arrested them in September 2006.  The Plaintiffs' actual immigration status and alienage in 2009, or information obtained in 2009 regarding Plaintiffs' status in 2006, is irrelevant to the knowledge of federal agents three years earlier.

**B.  Evidence related to Plaintiffs' immigration status and alienage is not relevant to any claim or defense regarding Plaintiffs' claims of unlawful profiling based on race, ethnicity, or perceived national origin.**

Plaintiffs have pled four causes of action alleging unlawful profiling. Am. Compl., Third, Fifth, Twelfth and Thirteenth Claims for Relief.  These equal protection claims assert that Plaintiffs were singled out for discriminatory treatment based on their race, ethnicity, and perceived national origin. Plaintiffs have not claimed discrimination based on immigration status or alienage.

Equal protection claims regarding race, ethnicity, and national origin are subject to strict scrutiny. Bolling v. Sharpe, 347 U.S. 497 (1954); Castaneda v. Partida, 430 U.S. 482 (1977) (holding that national origin discrimination against Mexican-Americans in grand jury selection is impermissible); Oyama v. California, 332 U.S. 633, 644-47 (1948)

(holding that restriction on transfer of agricultural property of Japanese Lawful

Permanent Resident is a violation of Equal Protection).  Equal protection extends to all

persons in the United States, regardless of citizenship or immigration status. Yick Wo v.

Hopkins, 118 U.S. 356, 369 (1886) ("These [protections of the Constitution] are universal

in their application, to all persons within the territorial jurisdiction, without regard to any

differences of race, of color, or of nationality . . . ."); Plyler v. Doe, 457 U.S. 202 (1982)

(undocumented children are "persons" within meaning of Fourteenth Amendment equal

protection clause).

Defendants' response to Plaintiffs' claims must thus be to argue that Plaintiffs'

were *not* detained based on their race, ethnicity, or national origin, and were instead

targeted based on a facially neutral policy that was being applied in a neutral manner,

without *any* intent to discriminate. See Vill. of Arlington Heights v. Metro. Hous. Dev.

Corp., 429 U.S. 252, 265-66, 270 n. 21. (1977) (holding that if discrimination is so much

as a "motivating factor," even in official action that appears facially neutral, the action is

unconstitutional). Defendants do not need information about Plaintiffs' immigration

status or alienage to prove that they were enforcing a policy that did not discriminate on

the base of race, ethnicity, or national origin.

**C.  Evidence related to Plaintiffs' immigration status and alienage is not relevant to any claim or defense relating to Plaintiffs' First Amendment claims.**

Plaintiffs have also alleged that they were singled out based on their protected

speech and association. Plaintiffs have pled one cause of action alleging unlawful

restriction of speech. Am. Compl., Fourth Claim for Relief. It is undisputed that

Plaintiffs' speech took place in a public forum, whether they were gathered in Kennedy

Park or on Main Street. See Lakewood v. Plain Dealer Co., 468 U.S. 750, 797 (1988) (city streets have been recognized as public forums for First Amendment purposes since "time immemorial"). Because Plaintiffs' speech occurred in a public forum, Defendants must prove first that their restriction of that speech was one based on the time, place, or manner of the speech, and not its content. See Police Dep't of Chicago v. Mosley, 408 U.S. 92 (1972). Plaintiffs' immigration status and alienage are not relevant to whether the restriction of their speech was one of time, place or manner.

Second, Defendants must prove that their time, place, or manner restriction was narrowly tailored to serve a substantial government interest. Ward v. Rock Against Racism, 491 U.S. 781 (1989).  Individual Danbury Defendants have admitted that Plaintiffs were originally picked up by Joseph Norkus, that Norkus was acting as an official of the City of Danbury, and that the vehicle used to transport them from the public forum was owned, leased or operated by the Danbury Police Department. See Individual Danbury Defendants' Response to Plaintiffs' Requests for Admission of Facts, Feb. 10, 2009, Ex. Y, at ¶¶ 1, 2, 3, 10. Because the Danbury Police Department is not authorized to make immigration arrests, the government interest in this case would have to be something *other* than the enforcement of immigration regulations. See 8 U.S.C. § 1357(a) (limiting authority to detain suspected aliens to officers of the Department of Homeland Security); see also id. § 1357(g) (authorizing state and local jurisdictions to enter into memorandum agreement with DHS to deputize local police as immigration

agents).[7] Discovery into Plaintiffs' immigration status or alienage will thus have no relevance to Defendants' defense against Plaintiffs' First Amendment claims.

### III. Plaintiffs should be granted a protective order on the specific discovery requests that implicate their immigration status or alienage.

Pursuant to Local Rule 37(b)(1) and this Court's order, Dkt. #246, Plaintiffs include here in their memorandum of law a "specific verbatim listing of each of the items of discovery . . . opposed, and immediately following each specification . . . the reason why the item should be . . . disallowed."  Every one of these items directly or indirectly implicates Plaintiffs' immigration status and alienage. Requiring Plaintiffs to respond to any of these requests in order to vindicate their civil rights would have powerful *in terrorem* effects and could lead to their prosecution or deportation. See supra Argument Part I. The information sought in each of these requests also has no relevance to the claims or defenses in this case. See supra Argument Part II. Each of the specific discovery requests below is followed by an explanation of how that request implicates status.

### A. The Federal Defendants' discovery requests that implicate Plaintiffs' immigration status or alienage are not relevant to any specific claim or defense in this case.

### Federal Defendants' First Requests for Admission, dated March 16, 2009, Ex. Z

*1. Admit that plaintiff is illegally present in the United States.*

Plaintiffs object to this request for admission because it directly seeks Plaintiffs' immigration status and is not relevant to any specific claim or defense.

---

[7] It is undisputed that at the time of the Sept. 19, 2006 arrests, the Danbury Police Department had not entered into a memorandum agreement pursuant to 8 U.S.C. § 1357(g) deputizing them to enforce immigration laws.

*2. Admit that plaintiff entered the United States without inspection by an immigration official.*

Plaintiffs object to this request for admission because it directly seeks Plaintiffs'

immigration status and is not relevant to any specific claim or defense.

*3. Admit that plaintiff entered the United States through use of fraudulent or false documents.*

Plaintiffs object to this request for admission because it directly seeks Plaintiffs'

immigration status and is not relevant to any specific claim or defense.

*4. Admit that plaintiff has worked in the U.S. without employment authorization from the Department of Homeland Security ("DHS") or a component thereof such as Immigration and Customs Enforcement ("ICE") or Citizenship and Immigration Services ("CIS") or the legacy INS.*

Plaintiffs object to this request because any employment authorization that

Plaintiffs may or may not have had from DHS, ICE, or CIS implicates their immigration

status and is not relevant to any specific claim or defense.

*5. Plaintiff admits he presently has no authorization from CIS to work in the U.S. lawfully.*

Plaintiffs object to this request because any employment authorization that

Plaintiffs may or may not currently have from CIS implicates their immigration status

and is not relevant to any specific claim or defense, particularly in so far as Plaintiffs'

current authority to work is wholly irrelevant to the facts of this case.   Plaintiffs make no

claim for lost wages or damage to professional prospects in this action.

*9. Plaintiff admits that he has engaged in conduct to prevent DHS, a component part thereof and/or the legacy INS from determining that he is illegally in the U.S.*

Plaintiffs object to this request for admission because it seeks information that

may directly bear on Plaintiffs' immigration status, as well as assuming that Plaintiffs are

present in the United States illegally. Further, it does not seek information that is relevant to any specific claim or defense.

>    10. Plaintiff admits that prior to his arrest on September 19, 2006, he never
>    advised any DHS representative or component part thereof or any representative
>    of the legacy INS of his illegal status in the U.S.

Plaintiffs object to this request for admission because it seeks information that may directly bear on Plaintiffs' immigration status, as well as assuming that Plaintiffs are present in the United States illegally. Further, it does not seek information that is relevant to any specific claim or defense.

>    11. Plaintiff admits that prior to his arrest of September 19, 2006, he had no
>    contact or dealings with DHS, or any representative therefrom or the legacy INS.

Plaintiffs object to this request for admission because any contact Plaintiffs may or may not have had with DHS or the legacy INS implicates their immigration status and is not relevant to any specific claim or defense. To the extent that Defendants claim that this information is relevant to Plaintiffs' Fourth Amendment claims, this information would have already had to be in the possession of Defendants prior to September 19, 2006, and would not need to be produced by Plaintiffs during discovery. See supra Argument Part II.

>    16. Plaintiff admits that at or around September, 2006, some, if not most, day
>    laborers that he knew who gathered at or around Kennedy Park were illegally
>    present in the U.S.

Plaintiffs object to this request for admission because it implicates their immigration status and alienage. Because each Plaintiff was himself a day laborer who gathered in Kennedy Park at or around September 2006, admitting that most of the day laborers were present illegally would implicate each Plaintiff's own status, as well as that of the other Plaintiffs to this suit. Further, such information is not relevant to any specific

claim or defense. To the extent that Defendants claim that this information is relevant to Plaintiffs' Fourth Amendment claims, this information would have already had to be in the possession of Defendants prior to September 19, 2006, and would not need to be produced by Plaintiffs during discovery. See supra Argument Part II.

> *17. Plaintiff admits he is not aware of any U.S. citizen, lawful permanent resident or alien with employment authorization who has congregated at or around Kennedy Park in 2006 in an effort to obtain day labor work.*

Plaintiffs object to this request for admission because it implicates their immigration status and alienage. Because each Plaintiff was himself a day laborer who congregated at or around Kennedy Park in 2006 in an effort to obtain work, admitting that no day laborer had work authorization would implicate each Plaintiff's own status, as well as that of the other Plaintiffs to this suit. Further, such information is not relevant to any specific claim or defense. To the extent that Defendants claim that this information is relevant to Plaintiffs' Fourth Amendment claims, this information would have already had to be in the possession of Defendants prior to September 19, 2006, and would not need to be produced by Plaintiffs during discovery. See supra Argument Part II.

> *19. Plaintiff admits that if he had known the vehicle was driven by a DPD officer on the morning of September 19, 2006, he would not have agreed to get into the vehicle because he knew his conduct was in violation of the law.*

Plaintiffs object to this request for admission because "conduct . . . in violation of the law" would encompass immigration violations, and thus this request potentially implicates Plaintiffs immigration status. Further, this information is not relevant to any specific claim or defense.

> *35. Plaintiff admits that at no time prior to September, 2006 had he sought any immigration benefits or any other form of relief from DHS, ICE or CIS.*

Plaintiffs object to this request for admission because any contact Plaintiffs may or may not have had with DHS, ICE, or CIS would potentially implicate their immigration status, and this request is not relevant to any specific claim or defense.

### Federal Defendants' First Set of Interrogatories, dated February 24, 2009, Ex. AA

*1(a). State your . . . social security number.*

Plaintiffs object to this interrogatory because one's social security number directly implicate status, and neither Plaintiffs' status nor their social security number is relevant to the specific claims or defenses in this case.

*3(b). For each of the individuals identified in subsection (a) above [spouse, significant other, children, and other relatives in US], indicate,*

*i. where they were born;*
*ii. when they entered the United States;*
*iii. their current immigration status.*

Plaintiffs object to answering these questions because the national origin and immigration status of a Plaintiff's wife and children may implicate Plaintiff's own status or alienage. Plaintiffs' wives and children, if any, are not parties to this law suit, and information about their place of birth, potential entry into the United States, and current immigration status has no relevance to the specific claims or defenses in this case.

*6. Please state where you were born and, for each time you entered the United [S]tates, indicate:*
*a. when you entered the United States;*
*b. where you entered the United States;*
*c. who was with you when you entered the United States;*
*d. whether you paid money to enter the United States and, if so, who did you pay and how much did you pay to enter the United States;*
*e. what was your status when you entered the United States;*
*f. have you done anything to change that status and, if so, what did you do to change your status and when did you take such action;*

*g. did you have any official documents allowing you to enter or obtain subsequent documents allowing you to remain in the United States;*
*h. have you ever filed any documents or applications with the Department of Homeland Security, through any of its departments, including but not limited to the Immigration and Customs Enforcement Agency or the Citizenship and Immigration Services and, if so, what documents were filed, where were they filed, and when were they filed;*
*i. state your current immigration status.*

Plaintiffs object to this interrogatory because each sub-part asks for information that directly implicates Plaintiffs' alleged immigration status or alienage. Information about the circumstances and legality of Plaintiffs' entry into the United States is not relevant to any specific claim or defense. To the extent that Defendants claim that this information is relevant to Plaintiffs' Fourth Amendment claims, this information would have already had to be in the possession of Defendants prior to September 19, 2006, and would not need to be produced by Plaintiffs during discovery. See supra Argument Part II.

*8. Did you report to immigration officials when you entered the United States?*

Plaintiffs object to this discovery request because whether Plaintiffs reported to immigration officials at the time of any alleged entry to the United States directly implicates their immigration status and is not relevant to any specific claim or defense.

*26. Please describe all documents issued to you by any government official(s) which authorized you to work in the United States? For each document, indicate:*
*a. what document(s) were issued;*
*b. when were the document(s) issued:*
*c. who issued the document(s);*
*d. the name of the individual the document(s) were issued to.*

Plaintiffs object to this interrogatory because the existence or non-existence of documents authorizing them to work in the United States implicates their immigration status and is not relevant to any specific claim or defense.

*28. State the names and addresses of each person or organization by whom or with which you have been employed during the 10-year period immediately preceding the date of the incident alleged in the Amended Complaint, and with respect to each, state*
*. . .*
*e. documents submitted by you, such as social security card, license, etc., to your employer?*

Plaintiffs object to subpart (e) of this request because the existence or non-existence of documents submitted to a past employer such as a social security card may implicate their immigration status and is not relevant to any specific claim or defense.

**<u>Federal Defendants' First Set of Requests for Production, dated March 16, 2009, Ex. BB</u>**

*1. Produce all documents identified in your answers, both your original answers and/or supplemental answers, to the federal defendants' interrogatories.*

Plaintiffs object to providing these documents to the extent that they implicate status. In many instances, such as for tax returns and municipal citations, Plaintiffs have agreed to provide copies of these documents with only any information that implicates status (such as social security number) redacted.  Accordingly, on this motion, Plaintiffs seek a protective order only as to any limited redactions of discrete information, such as a social security number or nationality, implicating immigration status or alleged alienage. Information about Plaintiffs' social security numbers or other such info, if any, is not relevant to any specific claim or defense.

*8. Provide all documents issued to you by any government official(s) which authorized you to work in the United States.*

Plaintiffs object to this interrogatory because the existence or non-existence of documents authorizing them to work in the United States implicates their immigration

status and is not relevant to any specific claim or defense.  Plaintiffs make no claim for

lost wages or damage to professional prospects in this action.

> *10. Produce a copy of all tax returns filed with the State of Connecticut, or any other state in the United States, for the tax years 2005 through 2008.*

Plaintiffs agree to provide these documents with only information implicating

immigration status, such as Social Security Number, redacted.  Accordingly, on this

motion, Plaintiffs seek a protective order only as to any limited redactions of discrete

information, such as a social security number, implicating immigration status or alleged

alienage.  The redacted information may directly implicate Plaintiffs' immigration status

or alienage, and is not relevant to any specific claim or defense.

> *15. Produce a copy of your birth certificate.*

Plaintiffs object to this request because their birth certificates may implicate their

immigration status and alienage, and are not relevant to any specific claim or defense.

> *18. Produce a copy of all applications and/or documents you have ever filed with any government office, through any of its agencies, departments, or sub-departments, including but not limited to the Department of Homeland Security; the Social Security Administration; and the Internal Revenue Service.*

Plaintiffs object to this Request for Production to the extent that it asks for

information which directly implicates immigration status or alienage. Plaintiffs are

willing to produce responsive documents with information implicating immigration status

and alienage, such as Social Security Number, redacted.  Accordingly, on this motion,

Plaintiffs seek a protective order only as to any limited redactions of discrete information,

such as a social security number or nationality, implicating immigration status or alleged

alienage.  The redacted information is not relevant to any specific claim or defense.

Further, Plaintiffs will not produce documents which directly implicate immigration

status such as copies of foreign passports. These documents are also not relevant to any specific claim or defense. Finally, such production would be redundant because these documents should already be in Defendant's possession.

> *19. Produce a copy of all written citations/tickets issued to you by any municipal, town, or city government in the United States for violation of any law or ordinance.*

Plaintiffs agree to provide these documents with only information implicating immigration status, such as Social Security Number, redacted. Accordingly, on this motion, Plaintiffs seek a protective order only as to any limited redactions of discrete information, such as a social security number or nationality, implicating immigration status or alleged alienage. The redacted information may directly implicate Plaintiffs' immigration status or alienage, and is not relevant to any specific claim or defense.

> *20. Produce a copy of all documents in your possession, custody, or control relating to any arrest or charge filed against you for violation of any state or federal law anywhere in the United States.*

Plaintiffs agree to provide these documents with information implicating immigration status, such as Social Security Number, redacted. Accordingly, on this motion, Plaintiffs seek a protective order only as to any limited redactions of discrete information, such as a social security number or nationality, implicating immigration status or alleged alienage. The redacted information may directly implicate Plaintiffs' immigration status or alienage, and is not relevant to any specific claim or defense.

**B. Danbury Defendants' discovery requests that implicate Plaintiffs' immigration status or alienage are not relevant to any specific claim or defense in this case.**

**<u>Individual Danbury Defendants' Requests for Production, dated Feburary 4, 2009, Ex. CC</u>**

*5. All documents and records with respect to the Plaintiffs' immigration status at that time of the incident alleged in the Amended Complaint and at the current time, including, but not limited to, "A-Files."*

Plaintiffs object to this request for production because it seeks documents which directly bear on Plaintiffs' immigration status and alienage, and is not relevant to any specific claim or defense.

### Individual Danbury Defendants' First Set of Interrogatories and Requests for Production, dated March 11, 2009, Ex. DD

*Interrogatories*

*1. Please state the following:*
*. . .*
*e. your social security number*

Plaintiffs object to this interrogatory because one's social security number directly implicate status, and neither Plaintiffs' status nor or social security is relevant to the specific claims or defenses in this case.

*2. Please state whether you are currently married, single or divorced.*
*a. If you are currently married, please state your spouse's name, date of birth, current address and occupation.*
*b. If you are divorced, please state your ex-spouse's name, date of birth, current address and occupation.*

On this motion, Plaintiffs seek a protective order only as to the requests for "current address" in subparts (a) and (b) of this question because the current address of a spouse or ex-spouse of Plaintiff may implicate Plaintiffs' alienage and has no relevance to any specific claim or defense in this case.

*3. Please state whether you have any children and if so, for each child, please state:*
*. . .*
*c. your child's current address.*

On this motion, Plaintiffs seek a protective order only as to subpart (c) of this question because the child's current address may implicate Plaintiffs alienage and has no relevance to any specific claim or defense in this case.

> *6. Please state your current immigration status in the United States, including but not limited to the status of any immigration proceedings currently pending against you.*

Plaintiffs object to this interrogatory because it directly asks Plaintiffs for their immigration status, which is not relevant to any specific claim or defense.

> *7. Please state the city and country in which you were born.*

Plaintiffs object to this interrogatory because it directly asks Plaintiffs for information about potential alienage and is not relevant to any specific claim or defense.

> *10. Please state how many times you have entered the United States.*

Plaintiffs object to this interrogatory because it seeks information about immigration status and alienage and is not relevant to any specific claim or defense.

> *11. For each time you entered the United States, please state:*
> *a. The date and time of entry into the United States.*
> *b. The location of entry into the United States.*
> *c. The means of entry into the United States.*
> *d. Whether you had permission from the United States government or any of its agencies to enter the United States prior to entering.*
> *e. Your immigration status upon entering the United States.*

Plaintiffs object to this interrogatory each sub-part asks for information that directly implicates Plaintiffs' alleged immigration status or alienage. Information about the circumstances and legality of Plaintiffs' entry into the United States is not relevant to any specific claim or defense. Further, because no Danbury Defendant was authorized to

make a civil immigration arrest, this information is not relevant to Plaintiffs' Fourth

Amendment claims. <u>See</u> 8 U.S.C. §1357(g).

> *14. Please state whether you ever been arrested or charged with violating any*
> *federal or state law(s) anywhere outside of the United States. If the answer is*
> *affirmative, please state:*
> *a. The date(s) of the arrest or charge.*
> *b. The location of the arrest or charge.*
> *c. A description of the arrest or charge, including the nature of the alleged*
> *violation.*
> *d. The outcome of the arrest or charge and the date of said outcome.*

Although the Federal Defendants have limited their discovery requests to any

arrests or charges within the United States, which the Plaintiffs have agreed to provide,

the Individual Danbury Defendants have refused with withdraw this interrogatory.

Information about potential arrests that took place outside of the United States implicates

Plaintiffs' immigration status and alienage and is not relevant to any specific claim or

defense.

> *15. Please state whether you have received a verbal warning or written citation by*
> *any municipal, town or city government for the violation of any local law or*
> *ordinance. If the response is in the affirmative, please state:*
> *. . .*
> *b. Where you received such verbal warning or written citation.*
> *c. The local law or ordinance you were alleged to have violated.*
> *f. The amount of any fines or penalties and whether said amount was paid.*

Although the Federal Defendants have limited their discovery requests to any

warnings or written citations within the United States, which the Plaintiffs have agreed to

provide, the Individual Danbury Defendants have refused with withdraw this

interrogatory.  Information about potential warnings or citations that took place outside of

the United States implicates Plaintiffs' immigration status and alienage and is not

relevant to any specific claim or defense.

*26. Please state the names and addresses of each person or business by whom or with which you have been employed during the ten year period preceding the date of the incident alleged in your Complaint and with respect to each, please state:*
*. . .*
*e. any documents submitted by you to your employer, including but not limited to, passport, driver's license or social security card.*

Plaintiffs object to subpart (e) of this question because the existence or non-existence of these documents implicates Plaintiffs' immigration status and is not relevant to any specific claim or defense.

*27. Please state whether you have ever been employed as a day laborer during the ten year period preceding the date of the incident alleged in your Complaint. If so, please state:*
*. . .*
*e. any documents submitted by you to your employer, including but not limited to, passport, driver's license or social security card.*

Plaintiffs object to subpart (e) of this question because the existence or non-existence of these documents implicates Plaintiffs' immigration status and is not relevant to any specific claim or defense.

*Requests for Production*

*1. Please produce all documents which relate to your current immigration status in the United States, including but not limited to documents which relate to the status of any immigration proceedings currently pending against you.*

Plaintiffs object to this interrogatory because it directly requests documents related to immigrations status and is not relevant to any specific claim or defense.

*2. Please produce all documents to which reference is made in your answer to Interrogatory No. 11.*

Interrogatory No. 11 asks for a number of details concerning each time Plaintiffs entered the United States. Any related documents would similarly implicate immigration status and alienage and are not relevant to any specific claim or defense.

> *3. Please produce all reports and records of all doctors and all other health care providers relating to treatment allegedly received by the Plaintiff as a result of the alleged incident, and to the injuries to which reference is made in your answers to Interrogatory Nos. 16 through 23.*

Plaintiffs agree to provide these documents with only information implicating immigration status, such as Social Security Number, redacted. Accordingly, on this motion, Plaintiffs seek a protective order only as to any limited redactions of discrete information, such as a social security number or nationality, implicating immigration status or alleged alienage.   The redacted information may directly implicate Plaintiffs' immigration status or alienage, and is not relevant to any specific claim or defense.

> *5. Please produce copies of all federal income tax returns filed in any of the ten years immediately preceding the date of the incident alleged in your Complaint.*

Plaintiffs agree to provide these documents with only information implicating immigration status, such as Social Security Number, redacted.  Accordingly, on this motion, Plaintiffs seek a protective order only as to any limited redactions of discrete information, such as a social security number or nationality, implicating immigration status or alleged alienage.  The redacted information may directly implicate Plaintiffs' immigration status or alienage, and is not relevant to any specific claim or defense.

> *6. Please produce all federal income tax returns filed in the years following the date of the incident alleged in your Complaint.*

Plaintiffs agree to provide these documents with only information implicating immigration status, such as Social Security Number, redacted. Accordingly, on this

motion, Plaintiffs seek a protective order only as to any limited redactions of discrete

information, such as a social security number or nationality, implicating immigration

status or alleged alienage.   The redacted information may directly implicate Plaintiffs'

immigration status or alienage, and is not relevant to any specific claim or defense.

> *7. Please produce copies of all wage and employment records of all employers of the Plaintiff for ten years prior to the date of the incident and for all years subsequent to the date of the incident.*

Plaintiffs agree to provide these documents with only information implicating

immigration status, such as Social Security Number, redacted.   Accordingly, on this

motion, Plaintiffs seek a protective order only as to any limited redactions of discrete

information, such as a social security number or nationality, implicating immigration

status or alleged alienage.  The redacted information may directly implicate Plaintiffs'

immigration status or alienage, and is not relevant to any specific claim or defense.


## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court to grant a

protective order to protect Plaintiffs from having to release information bearing on their

immigration status or alienage in response to these discovery requests.


Respectfully submitted,

_____/s/_____
Michael J. Wishnie, Esq., ct27221
Susan Hazeldean, Esq., ct28093
Rebecca Heller, Law Student Intern
Ari Holtzblatt, Law Student Intern
Dror Ladin, Law Student Intern

Lisa Larrimore Ouellette, Law Student Intern

Jerome N. Frank Legal Services Organization
Yale Law School
127 Wall Street
New Haven, CT 06511
Telephone: (203) 432-4800
Facsimile: (203) 432-1426
michael.wishnie@yale.edu

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2009 a copy of the foregoing Memorandum of Law and all attachments was sent by operation of the Court's electronic filing system to:

Douglas P. Morabito
US Attorney's Office - NH
157 Church St., 23rd Floor
New Haven, CT 06510

Charles A. DeLuca, Esq.
Clarisse Nicole Thomas, Esq.
Susan B. Parzymieso, Esq.
Ryan, Ryan, Johnson & Deluca, LLP
707 Summer Street
Stamford, CT 06901

Daniel E. Casagrande, Esq.
Cramer & Anderson
30 Main Street
Suite 303
Danbury, CT 06810

By:

_____/s/_____
Rebecca Heller, Law Student Intern
for Plaintiffs

August 27, 2009