# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JUAN BARRERA, et al., | : |
| | : |
| | : Civil Action No. 3:07-cv-01436 RNC |
| Plaintiffs, | : |
| | : |
| v. | : October 1, 2009 |
| | : |
| MARK BOUGHTON, et al., | : |
| | : |
| | : |
| Defendants. | : |

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR RENEWED MOTION FOR PROTECTIVE ORDER ON DISCOVERY REQUESTS REGARDING INFORMATION STATUS AND ALIENAGE AS TO THE CITY OF DANBURY

**Jerome N. Frank Legal Services Organization**
Yale Law School
127 Wall Street
New Haven, CT 06511


**Gibson, Dunn & Crutcher LLP**
200 Park Avenue
New York, NY 10166

**INTRODUCTION**

On August 27, 2009, Plaintiffs filed a Renewed Motion for Protective Order Regarding Immigration Status and Alienage pursuant to Fed. R. Civ. P. 26(c).[1] Dkt. #284. After reviewing Plaintiffs' opening brief, the Federal Defendants withdrew all written discovery requests at issue, Dkt. # 301, and this motion as to the Federal Defendants is therefore now moot. The Individual Danbury Defendants and the City of Danbury [hereinafter "Danbury Defendants"] have persisted in seeking all written discovery at issue on this motion, however, including discovery that is identical or substantially similar to that which the Federal Defendants no longer demand. This reply is addressed to the City of Danbury.[2]

In their opening brief, Plaintiffs demonstrated good cause for the Protective Order and demonstrated that allowing discovery into immigration status would mark a departure from a large and growing body of case law in the Second Circuit. See Memorandum of Law In Support Of Plaintiffs' Renewed Motion For a Protective Order Regarding Immigration Status and Alienage, Dkt. #284 [hereinafter "MPO"], 7-11. Numerous courts, both in the Second Circuit and elsewhere, have barred similar discovery in recognition of the general irrelevance of immigration status to the adjudication of civil rights claims and the powerful *in terrorem* effect that would result from compelled disclosure of such information. Id. at 1, 7-16. Plaintiffs also

---

[1] On April 10, 2009, Plaintiffs moved for a Protective Order on All Discovery Requests Regarding Immigration Status and Alienage. See Dkt. #156 [hereinafter "Initial Motion"]. On July 16, 2009, following oral argument, Judge Martinez denied the Initial Motion without prejudice and instructed Plaintiffs to re-file if the parties were unable to resolve the disputes through further conferral. See Telephone Conference at Dkt. #245 [hereinafter "Conference"], 6: 15-17, 8: 1-12; Order at Dkt. #246. As required by Local Rule 37(B)(1), Judge Martinez instructed Plaintiffs and Defendants to address the oppressiveness or relevance of each discovery request at issue. See Conference, 8: 8-16. In spite of extensive conferral, Plaintiffs were not able to come to an agreement with Danbury Defendants.

[2] Plaintiffs previously filed a reply brief in response to the Individual Danbury Defendants, Dkt. # 316. The City of Danbury filed its brief in opposition on September 17, 2009, Dkt. # 306, making this brief timely.

explained why the specific discovery requests at issue are not reasonably calculated to lead to admissible evidence, and would annoy, embarrass, oppress, and unduly burden Plaintiffs. Id. at 1, 16-20.

In objecting, the City of Danbury failed to comply with the Court's July 13, 2009 instructions that "the defendants shall state as to *each request* why the request is relevant and should be permitted." See Memorandum Of Law In Opposition To Plaintiffs' Renewed Motion For A Protective Order at Dkt. #303, Attach. 1 [hereinafter "Danbury Objection"]; Conference, 8: 13-16.[3] The City of Danbury, like the Individual Danbury Defendants, in fact does not attempt to justify a *single one* of the specific disputed discovery requests at issue.[4] See Danbury Objection, 7-15. The central argument all Danbury Defendants make is that non-citizens have no cause of action under the Connecticut Constitution. Id. at 6. This is a question of law that was already resolved by Judge Chatigny when he denied Danbury Defendants' motion to dismiss. See *infra* Part III.B.

The City of Danbury, in incorporating the response of the Individual Danbury Defendants, argues chiefly that Plaintiffs have not shown "good cause," but fail to respond to, let alone cite, the extensive case law Plaintiffs invoke in support of their claim that allowing *the*

---

[3] The Danbury Defendants misunderstand the nature of the current motion. Defendants appear to conflate the renewed motion for a protective order on *written* discovery requests with Plaintiffs' Emergency Motion for Protective Order regarding depositions. See Danbury Objection, 3; Emergency Motion for Protective Order at Dkt. # 285. Judge Martinez denied the latter motion without prejudice to refiling once a deposition transcript was developed, and in so ruling made no reference to the instant motion regarding written discovery already propounded. See Order at Dkt. #297. Thus, Defendant's suggestion that this Court might "reserve ruling" on the current motion "until a complete deposition record can be presented to the Court" misses the mark. See Danbury Objection, 3.

[4] In addition, the Defendants seek to "incorporate by reference all of the arguments which they made in their Memorandum in Opposition to the plaintiffs' April 10, 2009 motion for a protective order." Danbury Objection, 2. This is improper and cannot substitute for the presentation of argument as to the instant motion. Many arguments by all parties made on the prior motion do not apply here as Plaintiffs have substantially narrowed the scope of the requested Protective Order and, pursuant to Judge Martinez' instructions, have shown good cause for each disputed discovery request.

*specific discovery requests at issue* would terrorize Plaintiffs and deny access to the courts for other victims of civil rights violations. See *Infra*, Part I. Danbury Defendants argue first that a Protective Order would be redundant because Plaintiffs have invoked their Fifth Amendment Rights. See Danbury Objection, 3. But invoking the Fifth Amendment does not afford the same protection as a Protective Order, nor does it avoid the harassment of being interrogated on these issues. See *infra* Part II. Danbury Defendants point out that Plaintiffs have served nearly identical requests on the Individual Danbury Defendants. See Danbury Objection, 15. But Plaintiffs and Danbury Defendants are not similarly situated. If any of the Danbury Defendants are in immigration proceedings, or if their responses to certain discovery could furnish a link in the chain of a prosecution of a Danbury Defendant for an immigration-related crime, Plaintiffs would not object to an identical order for their protection.

Danbury Defendants next contend that Plaintiffs do not demonstrate why each claim is embarrassing or oppressive. See Danbury Objection, 7. This is a strange claim to make after Defendants have essentially conceded that numerous courts have found that protection of immigration status is sufficient cause for a protective order. See *infra* Part I. Further, Plaintiffs were the only party to go through each discovery request and identify the harassing nature of the request. See MPO, 20-34. Requiring Plaintiffs to provide more information as to the content of each response would be to defeat the purpose of the Protective Order in the first place.

## ARGUMENT

**I.     Plaintiffs have met the standard of good cause for a Protective Order.**

The Court may issue a protective order upon a showing of good cause. Fed. R. Civ. P. 26(c). Courts in the Second Circuit have found good cause in a wide range of contexts including

some remarkably similar to the instant case. See, e.g., Topo v. Dhir, 210 F.R.D. 76, 78 (S.D.N.Y. 2002) ("when the question of a party's immigration status only goes to a collateral issue, as in this case, the protective order becomes necessary"); MPO, 9-11 (collecting cases where courts have found protection of immigration status to constitute "good cause" for protective order).[5]

Danbury Defendants seem to argue that this Court should require concrete factual findings in support of the MPO, a standard explicitly rejected in EEOC v. National Children's Ctr., 98 F.3d 1406, 1411 (D.C. Cir. 1996) ("[T]he [Supreme] Court considered and rejected the argument that protective orders must be supported by concrete factual showings"). According to the Danbury Defendants, Plaintiffs do not establish "good cause" as to why the disputed discovery requests that pertain to immigration status and alienage of Plaintiffs should be protected. See Danbury Objection, 3-5. But the Danbury Defendants' brief is short on actual legal arguments, case law, and direct engagement with Plaintiffs' Renewed Memo. Indeed, the entirety of Danbury Defendants' Reply Memo only cites one case. Id. Plaintiffs have shown good cause, and, as in Topo and the numerous cases cited in their opening brief, MPO, 9-11, immigration status here is at most a collateral issue. See MPO, 6.

Danbury Defendants offer no response to Plaintiffs' arguments that numerous courts within the Second Circuit and elsewhere have granted similar protective orders in recognition of the powerful *in terrorem* effects of compelled disclosure of immigration status or alienage information, especially as a condition of asserting constitutional or statutory rights. See Danbury Objection, 7-9; MPO, 7-16. Courts have noted that allowing parties to inquire about the

---

[5] At least one District Court in the Second Circuit recently cited Topo as guiding law on the issue of protective orders. Ashkenazi v. Lincoln Nat'l Life Ins. Co., 2009 U.S. Dist. LEXIS 40234, at *11 (E.D.N.Y. May 13, 2009).

immigration status of other parties, when not relevant, would present a "danger of intimidation [that] would inhibit plaintiffs in pursuing their rights." (S.D.N.Y. 2002) citing Zeng Liu v. Donna Karan Int'l, Inc., 207 F. Supp. 2d 191, 193 (S.D.N.Y. 2002). See also MPO, 7-16.  By failing to dispute that a Protective Order is necessary to avoid the *in terrorem* effect immigration disclosures would have, Danbury Defendants essentially recognize good cause.

The *in terrorem* effect of the disputed discovery requests is part of what makes them annoying, embarrassing, oppressive and unduly burdensome. Moreover, the MPO made explicit the issue of the potential impact of contested discovery on Plaintiffs' immigration case. See MPO, 16.  See also, Rajah v. Mukasey, 544 F.3d 427, 441-42 (2d Cir. 2008) ("Forcing an alien to perform the act of producing a foreign passport, I-94, or statement regarding immigration status at least arguably forces the alien to admit alienage and thus provide possible evidence of one or more crimes involving immigration violations"); EEOC v. First Wireless Group, Inc., 225 F.R.D. 404, 406 (E.D.N.Y. 2004) ("[D]iscovery of the Charging Parties' immigration status would cause them embarrassment and if their status is found to be illegal would subject them to criminal charges and, possibly, deportation").

**II. The Fifth Amendment does not provide sufficient protection in this case and a Protective Order is necessary.**

Danbury Defendants argue a Protective Order would be redundant because Plaintiffs can invoke the Fifth Amendment.  See Danbury Objection, 4.[6]  However, the possibility that some discovery sought by the Danbury Defendants is not only irrelevant and oppressive under Rule

---

[6] The Individual Danbury Defendants' brief lists occasions when some Plaintiffs have invoked their Fifth Amendment right to remain silent, during the depositions of those Plaintiffs, see Danbury Objection, 5. But no aspect of any deposition is at issue on this motion, which concerns only written discovery propounded by the Danbury Defendants on all Plaintiffs.

5

26(c), but also invades a constitutionally-protected privilege possessed by each Plaintiff, is inapposite and not responsive to Plaintiffs' motion. First, unlike a refusal to answer based on a protective order entered pursuant to Rule 26, invoking the Fifth Amendment allows an adverse inference to be drawn. See Mitchell v. U.S., 526 U.S. 314, 328 (1999). Second, there are limitations on when the Fifth Amendment may be invoked that do not apply in the context of a Protective Order. The Fifth Amendment prevents a party from being compelled to give testimony that may furnish a link in the chain of a criminal prosecution, while Rule 26 authorizes a court to afford broader protection to parties and witnesses. Where immigration violations are purely civil, not criminal, the Fifth Amendment provides no protection. Information that could directly result in Plaintiffs' deportation without implicating any criminal offense would receive no Fifth Amendment protection because Immigration proceedings are civil in nature. See MPO at 3-5. Thus, absent a protective order, Plaintiffs could be forced to choose between deportation and vindication of their civil rights in federal court.

Finally, merely permitting Danbury Defendants repeatedly to pose irrelevant, terrorizing questions is uniquely embarrassing and oppressive to Plaintiffs. At least one court has specifically considered the effect of merely posing immigration status questions to a terrified witness and has held it improper. "[T]he effect upon the . . . witnesses of this wholly irrelevant probe into their immigration status which I observed at the hearing ranged from unsettling to devastating and certainly affected their ability to testify." Galaviz-Zamora v. Brady Farms, Inc., 230 F.R.D. 499, 502 (W.D. Mich. 2005). See also, Topo v. Dhir, 210 F.R.D. 76, 78 (S.D.N.Y. 2002) ("Courts have generally recognized the *in terrorem* effect of inquiring into a party's immigration status when irrelevant to any material claim"). Outside the context of immigration, courts have similarly found that depositions or questioning can, in and of themselves, be

6

intimidating. See, e.g., Ethicon Endo-Surgery v. United States Surgical Corp., 160 F.R.D. 98, 99 (S.D. Ohio 1995) ("A deposition is not to be used as a device to intimidate a witness… thereby motivating him to either dismiss or settle the complaint"); Landers v. Kevin Gros Offshore, L.L.C., 2009 U.S. Dist. LEXIS 65480, 4 (E.D. La. July 13, 2009) (citing Landers); Bernal v. All Am. Inv. Realty, Inc., 479 F. Supp. 2d 1291, 1312 (S.D. Fla. 2006) (barring discovery where defendant's inquiries were designed to intimidate plaintiff); Priest v. Rotary, 98 F.R.D. 755, 761 (N.D. Cal. 1983) (limiting discovery of intimate aspects of plaintiff's lives so as not to discourage litigants from seeking to vindicate their rights); Mitchell v. Hutchings, 116 F.R.D. 481, 485 (D. Utah 1987) (questions remote in time and place from zone of dispute are "wholly irrelevant and unlikely to lead to admissible evidence. Such questions would only serve as tools of annoyance and harassment and serve no purpose in this litigation"). The situation in the instant case falls squarely within the area the amended Federal Rule 26(c) protects and which invoking the Fifth Amendment cannot protect.

### III. The Danbury Defendants' fail to demonstrate the relevance of the disputed discovery requests.

Despite clear instructions from Judge Martinez and Local Rule 37(b)(1), the Danbury Defendants did not even attempt to substantiate the relevance of any individual disputed discovery request. See Conference: 8: 13-16; Danbury Objection. The absence of specific justifications for the disputed discovery is a sufficient basis, without more, for rejecting the opposition of the Danbury Defendants and granting Plaintiffs' request for a Protective Order.

#### A. Danbury Defendants make no attempt to demonstrate the relevance of specific disputed discovery requests.

Danbury Defendants do not contest Plaintiffs' arguments as to why the disputed discovery requests are irrelevant. First, the discovery requests at issue do not deal with matters

7

that occurred at or in conjunction with Plaintiffs' arrest on September 19, 2006. See MPO, 29-34. Second, Plaintiffs' alleged immigration status and alienage are not relevant to any specific claim or defense. Cf. Fed.R.Civ.P. 26(b)(1). In their opening brief, Plaintiffs demonstrated that the 26 causes of action in their complaint could be broadly divided into three groups: (1) illegal arrest and detention; (2) racial or ethnic profiling; (3) freedom of speech and association. See MPO, 16; Amended Complaint at Dkt. #21 [hereinafter "Amended Complaint"]; see also L.R. 37(b) ("Where several different items of discovery are in dispute, counsel shall, to the extent possible, group the items into categories in lieu of an individual listing of each item"). Plaintiffs illustrated that immigration status and alienage are not relevant to any defenses raised by the Danbury Defendants, and they have failed to argue otherwise. See MPO, 17-20, 28-34.

Instead of following this Court's explicit instructions and attempting to justify the disputed discovery requests, Danbury Defendants broadly argue that a Protective Order is unnecessary, quoting from Dove v. Atlantic Capital Corp., 963 F.2d 15, 19 (2d Cir.1992). Dove is distinguishable from the instant case on at least four grounds. 1. "Dove does not argue that the discovery Atlantic seeks is not relevant to Atlantic's affirmative defenses," 963 F.2d at 19; 2. The court in Dove considered whether a lower court had abused its discretion by failing to grant a protective order; 3. Dove was concerned with a second case in a foreign jurisdiction;[7] 4. The court in Dove interprets Federal Rule 26(b) and (c) in a way that supports Plaintiffs position. "If the district court had found that the affirmative defense in the instant action was interposed for the sole purpose of obtaining information through discovery for use in the UK litigation, it would have been justified in issuing the protective order Dove requested." Id., at 19.

---

[7] In fact, the Supreme Court subsequently held that there is no Fifth Amendment protection when the potential criminal prosecution is in a foreign jurisdiction. United States v. Balsys, 524 U.S. 666 (1998).

8

### B. The Connecticut Constitution and Plaintiffs' own discovery requests do not provide a relevance defense.

Danbury Defendants' central relevance argument is that Plaintiffs' claims for relief hinge on whether the Plaintiffs can establish that they are "citizens" with a cause of action under the Connecticut Constitution. See Danbury Objection, 6-7. But Judge Chatigny has already considered the argument that Plaintiffs' speech and assembly rights under the Connecticut Constitution depend on their citizenship or immigration status. Denial of Mot. to Dismiss, at Dkt. #129 [hereinafter "Denial of Mot. To Dismiss"]; see also, Transcript of Motions Hearing at Dkt. #167, 95. Moreover, Defendants now seem to suggest Plaintiffs" rights under the Connecticut Due Process and Equal Protection Clauses also depend on their citizenship or immigration status, though they did not even raise this argument in their Motion to Dismiss. To the extent that Judge Chatigny's dismissal did not directly address this issue, Danbury Defendants cite no authority – neither from the Connecticut Constitution nor a single case – for their radical theory. At this stage in discovery, there is no factual dispute that would require Danbury Defendants to discover information about Plaintiffs immigration status or alienage.

In addition, according to Danbury Defendants, Plaintiffs' application for a Protective Order regarding information sought about their own immigration status and alienage should be denied because they have alleged discrimination based on race, ethnicity, or *perceived* national origin by the Danbury Defendants, and because they have alleged that Danbury Defendants targeted immigrants. See Danbury Objection, 9. But Plaintiffs' allegations about the motivation of the Danbury Defendants – their discriminatory and retaliatory animus – in no way makes Plaintiffs' actual immigration status or alienage relevant. See Am. Comp. at ¶ 56, (alleging discrimination based on "perceived national origin"). If sustained, this argument would

9

essentially allow unchecked abuse in the name of immigration enforcement. Plaintiffs did not put their immigration status at issue by filing suit- Defendants put it at issue when they illegally arrested and detained Plaintiffs, and then placed them in deportation proceedings.

Danbury Defendants contend that discovery recently served by the Plaintiffs in this case demands the same information Plaintiffs seek to protect in the MPO. See Danbury Objection, 9-15. This inverse logic does not apply, because the Danbury Defendants and Plaintiffs are not similarly situated. Nowhere have Danbury Defendants suggested that responding to Plaintiffs' discovery requests would embarrass, annoy or oppress them, or that such discovery might result in criminal prosecution or their own deportation. Further, Plaintiffs seek this discovery to establish what the Defendants knew about Plaintiffs' status *prior to their arrest*. The issue of probable cause is a central dispute in this case, and probable cause turns on what the arresting officers knew *prior to Plaintifffs' arrest*. What Plaintiffs knew about their own status is irrelevant because it sheds no light on whether the arrest was lawful and supported by probable cause.

The implications of the arguments made by the Danbury Defendants are dramatic. Failure to grant a Protective Order in the instant case may well have the practical impact of: denying similarly situated plaintiffs access to federal courts to vindicate their constitutional and civil rights; decreasing reporting of abuse because of fears about immigration prosecution; and allowing local police agencies to disregard federal guidelines. While these *ex ante* considerations give pause, the *ex post* reality that Plaintiffs are being punished for trying to seek justice after multiple government agencies trampled their fundamental rights is unconscionable.

# CONCLUSION

Plaintiffs should be granted a Protective Order on the specific discovery requests propounded by the Danbury Defendants that implicate their immigration status or alienage.

Respectfully Submitted,

_____/s/_____

Michael J. Wishnie, Esq., ct27221
Susan Hazeldean, Esq., ct28093
Chesa Boudin, Law Student Intern
Rebecca Heller, Law Student Intern
Ari Holtzblatt, Law Student Intern
Sophie Hood, Law Student Intern
Dror Ladin, Law Student Intern
Lindsay Nash, Law Student Intern
Helen O'Reilly, Law Student Intern

Jerome N. Frank Legal Services Organization
Yale Law School
127 Wall Street
New Haven, CT 06511
Telephone: (203) 432-4800
Facsimile: (203) 432-1426
michael.wishnie@yale.edu

October 1, 2009

**CERTIFICATE OF SERVICE**

       I hereby certify that on September 29, 2009 a copy of the foregoing Memorandum of Law and all attachments was sent by operation of the Court's electronic filing system to:

       Douglas P. Morabito
       US Attorney's Office - NH
       157 Church St., 23rd Floor
       New Haven, CT 06510

       Charles A. DeLuca, Esq.
       Clarisse Nicole Thomas, Esq.
       Susan B. Parzymieso, Esq.
       Ryan, Ryan, Johnson & Deluca, LLP
       707 Summer Street
       Stamford, CT 06901

       Daniel E. Casagrande, Esq.
       Cramer & Anderson
       30 Main Street
       Suite 303
       Danbury, CT 06810

       By:
       _____/s/_____
       Chesa Boudin, Law Student Intern
       for Plaintiffs

October 1, 2009