# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| JUAN BARRERA, et al. | : | |
| | : | |
| *Plaintiffs,* | : | Civil Action No. 3:07-cv-01436(RNC) |
| | : | |
| v. | : | |
| | : | |
| MARK BOUGHTON, et al. | : | |
| | : | |
| *Defendants.* | : | **March 30, 2010** |

## <u>PLAINTIFFS' OBJECTION TO</u>

## <u>MAGISTRATE JUDGE'S MARCH 9, 2010 DISCOVERY RULING</u>

TABLE OF CONTENTS

I.     Introduction.................................................................................................1

II.    Statement of Facts and Proceedings ..........................................................3

III.   Standard of Review......................................................................................7

IV.    Discussion ...................................................................................................7

       A.    The discovery requested by the Federal Defendants might expose the
             Plaintiffs and the Third Parties they identify to deportation or criminal
             prosecution for federal immigration-related offenses.....................................7

       B.    The Magistrate Judge committed clear error prejudicing Plaintiffs in
             refusing to consider and enter a protective order..........................................12

             1.    The Magistrate Judge failed to balance the relevant factors
                   under Rule 26(c), including the harm to Plaintiffs and special
                   weight given to burdens imposed on third parties. ..........................12

             2.    The Magistrate Judge erred by failing to recognize her
                   discretion under Rule 37 and Rule 26 to fashion a protective
                   order in response to the Federal Defendants' Motion to
                   Compel ...........................................................................................16

       C.    The District Court should vacate and remand with instructions to
             enter a protective order limiting *to this litigation* use of any
             immigration status or alienage information that Defendants may
             obtain from third parties whose names are disclosed by Plaintiffs............18

             1.    Plaintiffs have demonstrated good cause for a protective order,
                   and limiting use of immigration-related information to this
                   litigation would be appropriate under Rule 26(c)............................19

             2.    Courts routinely limit access to or dissemination of sensitive
                   information for use in other proceedings........................................20

             3.    Protective orders are routinely granted forbidding inquiry into
                   immigration status during civil discovery, and the reasoning
                   similarly supports a protective order limiting use of
                   immigration status information to the present litigation.................22

       D.    In the Alternative, this Court should Vacate the March 9 Ruling and
             Remand for consideration of Entry of a Protective Order in the First
             Instance. ..........................................................................................26

V.     Conclusion ...............................................................................................27

TABLE OF AUTHORITIES

**Cases**

ABC Rug & Carpet Cleaning Serv. Inc., v. ABC Rug Cleaners, Inc., ,
 2009 WL 105503 (S.D.N.Y. Jan. 14, 2009) ............................................................... 23

Aguilar v. ICE,
 No. 07-8224, 2009 WL 1789336 (S.D.N.Y. June 23, 2009) ............................................ 5, 30

Ansoumana v. Gristede's Operating Corp.,
 201 F.R.D. 81 (S.D.N.Y. 2001) .......................................................................... 26

Avila-Blum v. Casa de Cambio Delgado, Inc.,
 236 F.R.D. 190 (S.D.N.Y. 2006) ........................................................................ 30

Baca v. Brother's Fried Chicken,
 2009 U.S. Dist. LEXIS 42306 (E.D. La. May 13, 2009) ............................................... 28

Barrera v. Boughton,
 No. 07-01436, 2010 U.S. Dist. LEXIS 26081 (D. Conn. Mar. 19, 2010) ...... 2, 3, 4, 11, 21, 25

Botta v. Barnhart,
 475 F.Supp.2d 174 (E.D.N.Y.2007) ...................................................................... 7

Bridgeport Music Inc. v. UMG Recordings, Inc.,
 No. 05-6430, 2008 WL 577284 (S.D.N.Y. Feb. 22, 2008) ............................................ 13

Brookdale Univ. Hospital and Med. Ctr., Inc. v. Health Ins. Plan of Greater New
 York,
 No. 07- 1471, 2008 WL 4541014 (E.D.N.Y. Oct. 7, 2008) ........................................... 24

Burka v. New York City Transit Authority,
 110 F.R.D. 660 (S.D.N.Y. 1986) ........................................................................ 23

Calderon v. Witvoet,
 999 F.2d 1101 (7th Cir. 1993) ........................................................................... 27

Capitol Records, Inc. v. MP3tunes,
 261 F.R.D. 44 (SDNY 2009) ............................................................................ 20

Centeno-Bernuy v. Becker Farms,
 219 F.R.D. 59 (W.D.N.Y. 2003) ........................................................................ 27

Cobb v. Rockefeller University,
 1991 WL 222125 (S.D.N.Y. Oct.24, 1999) ............................................................. 16

Cole v. Fischer,
 No. 08-512, 2009 WL 3049728 (W.D.N.Y. Sept. 18, 2009) ........................................... 19

Collins v. New York City Health and Hosps. Corp.,
 201 A.D.2d 447 (N.Y. App. Div. 1994) ................................................................. 29

Comm. for Immigrant Rights v. County of Sonoma,
    3:08-CV-04220-PJH (N.D. Cal. Apr. 24, 2009)...................................................... 29

Concord Boat Corp. v. Brunswick Corp.,
    169 F.R.D. 44 (S.D.N.Y.1996) ........................................................................... 15

David v. Signal Int'l, LLC,
    257 F.R.D. 114 (E.D. La. April 2, 2009) ........................................................... 28

De La O v. Arnold-Williams,
    No. CV-04-0192-EFS, 2006 U.S. Dist. LEXIS 76816 (E.D. Wash. Oct. 20,
    2006) .................................................................................................................. 28

Donald v. Rast,
    927 F.2d 379 (8th Cir. 1991) .............................................................................. 23

Drax v. Reno,
    338 F.3d 98 (2d Cir. 2003) ................................................................................. 20

E.E.O.C. v. First Wireless Group, Inc.,
    225 F.R.D. 404 (E.D.N.Y. 2004) ................................................................. 11, 27

EEOC v. Bice of Chicago,
    229 F.R.D. 581 (N.D. Ill. 2005)......................................................................... 29

EEOC v. City of Joliet,
    239 F.R.D. 490 (N.D. Ill. 2006)......................................................................... 28

EEOC v. Rest. Co.,
    No. 05-1656(JRT/FLN), 2007 WL 424323 (D. Minn. Feb. 2, 2007)................... 28

Felzcerek v. INS,
    75 F.3d 112 (2d Cir. 1996) ................................................................................... 8

Firmode International Company Limited v. International Watch Group,
    No. 2008-4890, 2009 WL 3698137 (E.D.N.Y. Nov. 2, 2009) ............................ 23

Flores v. Albertsons, Inc.,
    No. CV01-00515AHM(SHx), 2002 U.S. Dist. LEXIS 6171 (C.D. Cal., Apr. 9,
    2002) .................................................................................................................. 29

Flores v. Amignon,
    233 F.Supp. 2d 462 (E.D.N.Y. 2002) ................................................................. 26

Galaviz-Zamora v. Brady Farms, Inc.,
    230 F.R.D. 499 (W.D. Mich. 2005)..................................................................... 28

Garcia v. Monument Mgmt. Group,
    No. 4:05CV3139, 2006 U.S. Dist. LEXIS 48532 (D. Neb. July 17, 2006)........... 29

Garcia-Andrade v. Madra's Cafe Corp.,
    No. 04-71024, 2005 U.S. Dist. LEXIS 22122 (W.D. Mich., Aug. 3, 2005)........... 29

Grand River Enterprises Six Nations, Ltd. v. King,
    No. 02-5068, 2009 WL 330213 (S.D.N.Y. Feb. 9, 2009) ..................................................... 13

Haddock v. Nationwide Financial Services, Inc.,
    2009 WL 3734059 (D.Conn. Nov. 6, 2009) ........................................................................... 7

Hasbrouck v. BankAmerica Housing Servs.,
    187 F.R.D. 453 (N.D.N.Y. 1999) ......................................................................................... 24

Herbert v. Lando,
    441 U.S. 153 (1979) ............................................................................................................. 17

In re Fitch, Inc.,
    330 F.3d 104 (2d Cir. 2003) ................................................................................................. 17

In re Reyes,
    814 F.2d 168 (5th Cir. 1987) ............................................................................................... 27

In re Savitt/Adler Litig.,
    No. 95 Civ. 1842 (RSP/DH), 1997 WL 369387 (N.D.N.Y. 1997) ......................................... 7

Incalza v. Fendi N. Am., Inc.,
    479 F.3d 1005 (9th Cir. 2006) ............................................................................................. 27

INS v. St. Cyr,
    533 U.S. 289 (2001) ............................................................................................................. 19

Krause v. Rhodes,
    671 F.2d 212 (6th Cir. 1982) ............................................................................................... 24

Ladson v. Ulltra East Parking Corp.,
    164 F.R.D. 376 (S.D.N.Y. 1996) ..................................................................................... 16, 17

Lesal Interiors, Inc. v. Resolution Trust Corp.,
    153 F.R.D. 552 (D.N.J. 1994) .............................................................................................. 18

Librado v. M.S. Carriers, Inc.,
    2004 U.S. Dist. LEXIS 10817 (N.D. Tex. Mar. 23, 2004) ................................................... 29

Lozano v. City of Hazleton,
    239 F.R.D. 397 (M.D. Pa. 2006) .......................................................................................... 28

Medical Components, Inc. v. Classical Medical, Inc.,
    210 F.R.D. 175 (M.D.N.C.2002) ......................................................................................... 14

Mitchell v. Fishbein,
    227 F.R.D. 239 (S.D.N.Y.2005) .............................................................................. 16, 22, 24

Montoya v. S.C.C.P. Painting Contractors, Inc.,
    No. CCB-07-455, 2008 U.S. Dist. LEXIS 16354 (D. Md. Feb. 26, 2008) ........................... 29

Nestle Foods Corp. v. Aetna Cas. and Sur. Co.,
    129 F.R.D. (D.N.J. 1990) ..................................................................................................... 18

Pacheco v. Boar's Head Provisions Co., Inc.,
    2009 U.S. Dist. LEXIS 73685 (W.D. Mich., Aug. 3, 2009)...............................27

Pearson v. Miller,
    211 F.3d 57 (3d Cir. 2000) .....................................................................22, 24

Rajah v. Mukasey,
    544 F.3d 427 (2d Cir. 2008) .........................................................11, 29, 30

Recinos-Recinos v. Express Forestry, Inc.,
    No. 05-1355, 2006 U.S. Dist. LEXIS 2510 (E.D. La. Jan. 23, 2006)...................29

Rivera v. NIBCO,
    364 F.3d 1057 (9th Cir. 2005) ...............................................................27

Sandoval v. Am. Bldg. Maint. Indus.,
    No. 06CV1772 (RHK/JSM), 2007 U.S. Dist. LEXIS 97773 (D. Minn. Oct. 23,
    2007) ............................................................................................28

Sandoval v. Rizzuti Farms, Ltd.,
    656 F.Supp.2d 1265 (E.D. Wash. 2009).......................................................27

Seattle Times v. Rhinehart,
    467 U.S. 20 (1984)...............................................................................16

Seminara v. City of Long Beach,
    68 F.3d 481 (9th Cir. 1995) ....................................................................18

Sperry Rand Corporation v. Rothlein,
    288 F.2d 245 (2d. Cir. 1961) ..................................................................22

Stampf v. Long Island R. Co.,
    No. 07-3349, 2009 WL 3628109 (E.D.N.Y. Oct. 27, 2009)...............................16

Thule, Inc. v. Yakima Products, Inc.,
    No. 303-1730, 2003 WL 22909821 (D.Conn. Dec. 8, 2003) ...............................18

Topo v. Dhir,
    210 F.R.D. 76 (S.D.N.Y. 2002) ...........................................................25, 26

Travelers Indemnity Co. v. Metropolitan Life Insurance Co.,
    228 F.R.D. 111 (D.Conn.2005)...............................................................15

Trejos v. Edita's Bar & Rest.,
    No. 08-1477, 2009 WL 749891 (E.D.N.Y. Mar. 17, 2009)...............................26

Uniroyal Chemical Co. Inc. v. Syngenta Crop Protection,
    224 F.R.D. 53 (D. Conn. 2004)...............................................................21

United States v. Arias-Izquierdo,
    449 F.3d 1168 (11th Cir. 2006) ...............................................................27

United States v. Sanders,
    211 F.3d 711 (2d Cir. 2000) ..................................................................17

United States v. Thorpe,
   191 F.3d 339 (2d Cir.1999) ............................................................................. 19

United States v. Ventrilla,
   233 F.3d 166 (2d Cir.2000) ............................................................................. 19

Vanek v. I.I., Inc.,
   No. 4:06CV3223, 2007 U.S. Dist. LEXIS 59311 (D. Neb. Aug. 14, 2007) ........................ 28

Wells Fargo Bank, N.A. v. Konover,
   No. 05-1924, 2009 WL 585433 (D.Conn. Mar. 4, 2009) ................................... 21

Wertheim Schroder & Co. Inc. v. Avon Products, Inc.,
   No. 91-2287, 1995 WL 6259 (S.D.N.Y. Jan. 9, 1995) ...................................... 16

Wolters Kluwer Financial Services, Inc. v. Scivantage,
   564 F.3d 110 (2d Cir. 2009) ........................................................................... 21

Zeng Liu v. Donna Karan Int'l, Inc.,
   207 F. Supp. 2d 191 (S.D.N.Y. 2002) .............................................................. 26

Zerrei v. Gonzalez,
   471 F.3d 342 (2d Cir. 2006) .............................................................................. 9

**Statutes**

8 C.F.R. § 1240.46(c) ............................................................................................. 9

8 C.F.R. § 1240.7(a) ............................................................................................... 9

8 U.S.C. § 1229(a)(c)(3)(A) (2006) ..................................................................... 15

8 U.S.C. § 1302 ..................................................................................................... 11

8 U.S.C. § 1306 ............................................................................................... 11, 29

8 U.S.C. § 1325 ............................................................................................... 11, 30

28 U.S.C. § 636(b)(1)(A) ........................................................................................ 7

**Rules**

Fed. R. Civ. P. 26(b)(2)(C)(iii) ............................................................................ 13

Fed. R. Civ. P. 26(c) ............................................................................................. 22

Fed. R. Civ. P. 37(a) ............................................................................................... 4

Fed. R. Civ. P. 37(a)(5)(C) ................................................................................. 5, 18

Fed. R. Civ. P. 72(a) ............................................................................................... 7

Local Rule 37 ........................................................................................................... 4

## I.      Introduction

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure and Local Rule 72.2,

Plaintiffs respectfully submit this Objection to Magistrate Judge Martinez's March 9, 2010

Ruling [Doc. No. 454] ("the Ruling"), granting in part and denying in part the Federal

Defendants' Motion to Compel Interrogatory Responses and Requests to Admit [Doc. No. 314]

("Motion to Compel").  The Ruling requires Plaintiffs to turn over names of family members,

friends and other third parties responsive to the Federal Defendants' Interrogatories, without

imposing any limits on the use of sensitive information elicited from those individuals.[1]  The

Plaintiffs have repeatedly expressed their willingness to provide these names, provided a

protective order is entered directing that any immigration status information that may be

obtained from those third parties be used *only in this litigation*, and in particular may not be used

in the removal proceedings pending against Plaintiffs, or any proceeding that may be brought

against the third parties.  This sort of protective order is routinely entered in civil litigation when

trade secrets, health information, or other privacy concerns arise.  At issue on this appeal, then, is

the Magistrate Judge's failure to consider and enter such a protective order while allowing

discovery into these sensitive areas to ensue.  The risk of allowing such discovery without a

limited protective order is genuine:  the Federal Defendants have asserted that they must be

allowed to use any immigration status information they obtain in discovery in this action for

purposes other than to defend this lawsuit.

The current Ruling permits the Federal Defendants and Danbury Defendants to

immediately locate and interview third parties outside of any judicial process, thus potentially

obtaining access to immigration status information regarding Plaintiffs or third parties.  Without

relief from this Court, information gathered from third parties will not be restricted to use in this

---

[1]     There are approximately 25 third parties whose names would be disclosed under this Ruling.  In light of the Court's granting of a stay of the Ruling pending appeal [Doc. No. 466], Plaintiffs expect that the Defendants will not proceed with interviews of previously identified third parties until this appeal has been adjudicated.

action. Such an outcome might result in irreparable injury to Plaintiffs or third parties, most of whom are friends or relatives of Plaintiffs and some of whom could face deportation as a result. Federal Defendants have presented no argument that they would be prejudiced by an order prohibiting the use of immigration status information obtained in this action in removal proceedings.

The Court's decision to compel disclosure of third party names without a protective order was clear error.  Under Federal Rule of Civil Procedure 26(c)(1), judges are vested with broad discretion to fashion protective orders to mitigate exactly the sort of harm the Plaintiffs and third parties would face.  Plaintiffs explicitly requested a protective order prohibiting use of alienage and immigration status information outside of this litigation in their opposition brief to Federal Defendants' Motion to Compel, during oral argument, and in a post-argument supplemental filing.  See Pls.' Opp'n to Mot. to Compel [Doc. No. 345] at 8; Transcript of February 24, 2010 Oral Argument ("Tr. of Proceedings") (Ex. A) at 28-33; Notice of Supplemental Auth. [Doc. No. 447] at 1.  The Court failed to consider the request, erroneously believing that the issue was not squarely before it.  Defendants are thus free to elicit from third parties – and use in other proceedings – precisely the sort of information that Magistrate Judge Martinez just prohibited them from compelling directly from Plaintiffs in light of the "chilling and prejudicial effect" of disclosure.  See Barrera v. Boughton, No. 07-01436, 2010 U.S. Dist. LEXIS 26081, at *17 (D. Conn. Mar. 19, 2010) (Ex. B) (granting Plaintiffs protective order as to Danbury Defendants' written discovery requests, which sought information that could implicate Plaintiffs' immigration status).  A protective order limiting use of prejudicial immigration-related information obtained from third parties to this litigation would appropriately balance Defendants' need to defend against claims *in this litigation* with Plaintiffs' interest in ensuring that any immigration-related information not be used *outside this litigation* to deport or prosecute them or their friends and family.

Since the Ruling directing Plaintiffs to produce third party names without a protective order was clearly erroneous, Plaintiffs respectfully request that the Court vacate the March 9

Ruling and enter a protective order limiting use of any immigration-related information obtained from third parties to this litigation.  In the alternative, Plaintiffs request that this Court vacate the March 9 Ruling and remand for consideration of entry of a protective order in the first instance.[2]

## II.    Statement of Facts and Proceedings

On September 19, 2006, Plaintiffs were arrested during an undercover immigration sting operation carried out by the Danbury Police Department (DPD) and Immigration and Customs Enforcement (ICE) in Danbury, Connecticut.  See Second Am. Compl. ¶¶ 70, 71 [Doc. No. 317].  The operation was intended to target day laborers gathering in Kennedy Park and was part of a pattern of intimidation and harassment of Danbury's immigrant community.  Id. ¶¶ 36-38, 63-66, 72.  At the time the operation was commenced, the Defendants had no information suggesting that the Plaintiffs were illegally present in the United States.  Id. ¶¶ 73-75.  Although the Government did not bring state or federal criminal charges against the Plaintiffs, federal immigration agents placed them in removal proceedings based solely on statements obtained on the day of the arrest.  Id. at ¶¶ 104, 106.[3]  Plaintiffs moved to suppress this evidence – believed to be the only evidence of alienage available to the Government – as the product of an unlawful arrest and moved to terminate the removal proceedings.  The Immigration Judge denied each Plaintiff's motion to suppress, admitted the I-213s into evidence, and on that basis concluded that the government had carried its burden to prove alienage.  Plaintiffs were subsequently either ordered deported or granted voluntary departure.  See Orders of the Immigration Judge, Feb. 4, 2008 [Doc. No. 284 (Ex. B)].  Each Plaintiff has appealed this determination to the Board of

---

[2]    Plaintiffs note that their motion for a protective order as to the Individual Danbury Defendants' interrogatories [2 and 3] seeking names and addresses of Plaintiffs' family members was "denied as moot in light of the court's ruling on the federal defendants' motion to compel." Barrera, 2010 U.S. Dist. LEXIS 26081, at *19.  Accordingly, Plaintiffs request that any relief granted on this appeal be extended to those portions of the March 19 discovery ruling.

[3]    During the removal proceedings, Plaintiffs denied the Government's allegations of alienage and unlawful presence, and invoked the Fifth Amendment privilege against self-incrimination when the Government questioned them about their status. As alternative proof, the Government introduced a Form I-213 (Record of Deportable Alien), completed by ICE agents based on custodial and post-arrest interviews conducted of Plaintiffs on the day of their arrests.

Immigration Appeals (BIA), from which they are currently awaiting a decision. <u>See</u> Notice of Appeal of Decision of Immigration Judge, Feb. 28, 2008 [Doc. No. 284 (Ex. C)].

On September 26, 2007, Plaintiffs initiated the instant lawsuit to vindicate their constitutional and civil rights, alleging claims under the First, Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution, Article 1 §§ 4, 7, 8, 9, and 20, of the Connecticut Constitution, and the common law of Connecticut. <u>See</u> Compl. [Doc. No. 1] and Second Am. Compl. [Doc. No. 317].  In response to the Defendants' written discovery requests and deposition questions seeking immigration-related information, Plaintiffs have filed various motions for protective orders, several of which were denied as premature and without prejudice by Magistrate Judge Martinez,[4] before the Court granted Plaintiffs' motion for a protective order as to written discovery requests implicating immigration status or alienage  [Doc. No. 286] on March 19, 2009.  <u>See</u> <u>Barrera</u>, 2010 U.S. Dist. LEXIS 26081, at *19-20.  In that opinion, Magistrate Judge Martinez explained that the immigration-related information the Danbury Defendants sought was not relevant to the parties' claims or defenses, and whatever value the information might have as to impeachment was outweighed by the "chilling and prejudicial effect of disclosure." <u>Id</u>. at *13, 17.

On September 29, 2009 the Federal Defendants filed a motion to compel responses to various interrogatories pursuant to Fed. R. Civ. P. 37(a) and Local Rule 37 [Doc. No. 314]. Through these interrogatories, Federal Defendants seek the identities of various third parties whom they intend to interview and/or depose as potential fact witnesses.[5]

---

[4]    <u>See</u> Doc. No. 246 (denying without prejudice Plaintiffs' first motion for protective order as to written discovery requests regarding immigration status and alienage); Doc. No. 297 (denying without prejudice Plaintiffs' motion for protective order as to depositions of Plaintiffs regarding immigration status and alienage information); Doc. No. 469 (denying without prejudice motions of three named non-parties and of Plaintiffs for protective order as to depositions of three non-parties regarding immigration status and alienage information).

[5]    The Federal Defendants withdrew their request for third parties' place of birth, date of entry into United States and immigration status (Interrogatory 3(b)), as well as details regarding Plaintiffs' conversations with third parties (21(b) through (e)).  The Federal Defendants also withdrew their objection to Plaintiffs' invocation of the Fifth Amendment in response to [Footnote continued on next page]

In Plaintiffs' response, <u>see</u> Doc. No. 345 at 1, 10,  they argued that the *in terrorem* effects of turning over the names and addressees outweighed the relevance of the information sought; as such, Plaintiffs asked the Court to either deny the Motion to Compel or, pursuant to Rule 37(a)(5)(C), to issue a protective order that would forbid "the use of any [immigration status or alienage-related] information in removal proceedings against any Plaintiff … and further forbid[] the use of any such information in removal proceedings against any nonparty identified as a result of this information"). <u>Id</u>. at 8.  Plaintiffs were not required by the Federal Rules to formally file a redundant cross-motion for protective order, <u>see</u> Fed. R. Civ. P. 37(a)(5)(C), but they did also attempt to negotiate an Attorney's Eyes Only Agreement with the Federal Defendants, a proposal that they rejected.[6]

At oral argument, on February 24, 2010, counsel for the Plaintiffs reiterated Plaintiffs´ willingness to disclose the third party names, provided that the Court enter a protective order limiting use of any immigration status and alienage information obtained from the third parties to this litigation.  <u>See</u> Tr. of Proceedings at 29 ("we think this Court can reasonably fashion an order under Rule 26 and 37 that would direct the release of those names, but [request] that… information regarding alienage or immigration status… be used only in this case"); <u>id</u>. at 48 ("[I]f the Court was inclined to compel Plaintiffs to disclose any of the information … we would

_____

[Footnote continued from previous page]
Interrogatory 4.  Therefore, the only interrogatories at issue are subparts of Numbers 3, 21, and 75.  The Federal Defendants seek answers to Interrogatory 3(a), specifically the names, addresses, and present ages of spouses, significant others, children, and any other relatives in the United States for each Plaintiff, and Interrogatory 3(c), which calls for the names of the individuals indentified in 3(a) with whom the Plaintiff discussed the "circumstances of this lawsuit." Mot. to Compel [Doc 314] at 4.  With respect to Interrogatory 21, the Federal Defendants moved to compel names of any persons that the Plaintiffs discussed "the circumstances and/or facts of this case." <u>Id</u>. at 6.  Finally the Federal Defendants moved to compel the names of those responsive to Interrogatory 75 who "continue to suffer fear … as a result of your arrest." <u>Id</u>. at 23.

[6]     The Plaintiffs modeled their proposal on the order entered in <u>Aguilar v. ICE</u>, No. 07-8224, 2009 WL 1789336 (S.D.N.Y. June 23, 2009), a case on which Federal Defendants [Doc. No. 169 at 2] and Danbury Defendants [Doc. No. 171 at 3-4, 6] have relied.  On February 25, 2010, Plaintiffs filed a Notice of Supplemental Authority, attaching the order entered in the <u>Aguilar</u> action, to guide the Court in fashioning an appropriate protective order.  <u>See</u> Doc. No. 447.

request the Court to enter a protective order forbidding the use in the manner that [Plaintiffs] described earlier.").  However, Magistrate Judge Martinez indicated that she did not believe Plaintiffs' request for the protective order, including the issue of how immigration-related information elicited from the third parties could be used, was before her.  Id. at 19 (Counsel for Plaintiffs: "It's entirely possible and plausible that in the course of conversations with unrepresented third parties, information about the immigration status or the alienage of the Plaintiffs will become available." Court: "That's not before me.")

On March 9, 2010, the Court granted in part the Federal Defendants' Motion to Compel, ordering Plaintiffs to turn over third party names responsive to Interrogatories 3, 21 and 75.  See Doc. No. 454.  However, the Court did not explicitly rule on Plaintiffs' request that disclosure of third party names be conditioned on the entry of a protective order precluding the use of information elicited from third parties in proceedings outside this litigation.

On March 22, 2010, Plaintiffs moved for a partial stay of compliance with the Ruling pending adjudication of this appeal or, in the alternative, a renewed motion for a protective order [Doc. No. 460].  In an effort to resolve the dispute, and to determine whether the Federal Defendants would consent to a stay, Magistrate Judge Martinez convened a telephone conference among the parties on March 23, 2010.  See Doc. Nos. 463, 465.  During the conference, counsel for Plaintiffs reiterated that their motion for a stay pending appeal was, in the alternative, a renewed motion for a protective order.  See Affidavit of Siham Nurhussein in Support of Plaintiffs' Objection to Magistrate Judge Martinez's March 9, 2010 Discovery Ruling ("Nurhussein Aff.") ¶ 6.  Magistrate Judge Martinez stated that, although Plaintiffs had "breezily mentioned" the protective order before, this was the first time Plaintiffs had requested a protective order as far as she was concerned.  Id. ¶ 7.

The Court granted Plaintiffs' motion for a stay pending appeal on March 23, 2010.  See Doc. No. 466.

**III.     Standard of Review**

Discovery motions are non-dispositive motions.  "The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law."  Fed. R. Civ. P. 72(a); see 28 U.S.C. § 636(b)(1)(A).  A magistrate judge's order resolving a discovery dispute is afforded substantial deference, though a district court must exercise independent judgment with respect to legal conclusions and may overturn those conclusions that contradict or ignore applicable precepts of law.  See Botta v. Barnhart, 475 F.Supp.2d 174 (E.D.N.Y. 2007).  Furthermore, under the clearly erroneous standard, the district court must overturn the decision of the magistrate judge only if the district court, on review of the entire evidence, is left "with the definite and firm conviction that a mistake has been committed."  Haddock v. Nationwide Financial Servs., Inc., No. 01-1552, 2009 WL 3734059 (D.Conn. Nov. 6, 2009) (Ex. C).  See also In re Savitt/Adler Litig., No. 95-1842 (RSP/DH), 1997 WL 369387, at *4 (N.D.N.Y. June 24, 1997) (Ex. D).

**IV.     Discussion**

>    **A.     The discovery requested by the Federal Defendants might expose the Plaintiffs and the third parties they identify to deportation or criminal prosecution for federal immigration-related offenses.**

The March 9 Ruling directed Plaintiffs to produce names of third parties responsive to Interrogatories 3, 21 and 75 of the Federal Defendants' Interrogatories.  The third parties whose names are responsive to these interrogatories are close friends, family members, co-workers, former employers and other individuals, each of whom may have knowledge regarding Plaintiffs' alleged alienage and immigration status.  Plaintiffs have repeatedly offered to disclose these third party names, subject only to a protective order limiting use *to this litigation* of any immigration status or alienage information that Defendants may obtain from those third parties.  If Plaintiffs are compelled to produce names of third parties absent a protective order, they face a real risk that immigration-related information elicited from these individuals could be used against them, or against the third parties themselves, in removal or other proceedings.

Defendants should not be permitted to use statements made by third parties in this civil rights action as a backdoor way of furnishing independent evidence of alienage in Plaintiffs' or third parties' removal proceedings.

The sole dispute between the parties is the insistence of the Federal Defendants that they be permitted to use information obtained from third parties disclosed by Plaintiffs for purposes unrelated to defense of this suit. The Federal Defendants have indicated that they seek the names of these third parties so they can be "interviewed and/or deposed" and "provide useful information about the plaintiffs' condition." See Mot. to Compel [Doc. No. 314] at 5. If the Court imposes no limits on the use of immigration-related information outside of this litigation, Plaintiffs will be severely prejudiced in their ability to defend themselves in the removal proceedings that are currently pending against them. See supra note 2 and Sec. II.[7] Absent a protective order, there is nothing preventing Defendants from using information obtained in the course of interviews of third parties to attempt to carry their burden in Plaintiffs' pending removal proceedings. Not only does the March 9 Ruling put Plaintiffs at risk of deportation, it also exposes their friends, family, co-workers and other non-parties to the same fate. Without a protective order in place, information gleaned from the Government's conversations with third parties could potentially be used to initiate removal proceedings against some third parties or prosecute them for immigration-related offenses.[8]

---

[7]    Because deportation and removal hearings are civil administrative proceedings, the heightened procedural protections of a criminal trial do not apply and the standard for admissibility of evidence is relaxed, Felzcerek v. INS, 75 F.3d 112 (2d Cir. 1996); Zerrei v. Gonzalez, 471 F.3d 342, 346 (2d Cir. 2006). Hearsay is admissible in removal proceedings, and an Immigration Judge "may receive in evidence any oral or written statement that is material and relevant to any issue in the case *previously made by the respondent or any other person during any investigation, examination, hearing, or trial.*" 8 C.F.R. §§ 1240.7(a) and 1240.46(c) (emphasis added). Accordingly, unless a protective order is entered, information the Government gathers from third parties could be offered as evidence in Plaintiffs' removal proceedings, in a government effort to moot out Plaintiffs´ suppression motions and evade judicial scrutiny of their unconstitutional conduct in obtaining Plaintiffs' statements.

[8]    Danbury Police Officers may also seek to use evidence of immigration status or alienage as a basis to arrest third parties and turn them over to ICE custody using authority granted to them under the 287(g) Agreement. On October 15, 2009, ICE Assistant Secretary John Morton [Footnote continued on next page]

The risk posed to Plaintiffs and the third parties is not speculative.  As amply demonstrated during Plaintiffs' depositions, which were conducted without the benefit of a protective order, it is very easy to elicit immigration status and alienage information without directly asking for a person's immigration status.  See Mem. in Opp'n to Mot. to Compel Deposition Responses [Doc. No. 428]  (discussing various deposition questions that could implicate immigration status, including how long Plaintiffs have resided in the United States, why they came to Danbury, where they attended high school, and why they have not tried to seek work anywhere other than Kennedy Park).  While the questions posed to Plaintiffs during depositions and in written discovery requests have been oppressive, Plaintiffs at least had the limited benefit of having counsel present, who could object to the disclosure of immigration-related information.  By contrast, the third parties, many of whom are indigent, do not currently have counsel as to any interview requests the Defendants may make or deposition subpoenas the Defendants may serve.  Defendants could visit and seek to interview these third parties at their homes, at any time, outside the judicial process, and outside the presence of Plaintiffs' or personal counsel, who might otherwise be able to prevent irrelevant, harassing and oppressive questions about their alleged alienage or immigration status.  Many of the non-parties have little formal education or sophistication about the legal process, and are unlikely to know when to assert their Fifth Amendment right against self-incrimination or other objections.  Under these circumstances, the risk of immigration-related information being divulged – and subsequently used in other proceedings – is substantial.

---

[Footnote continued from previous page]
entered the Department of Homeland Security into a formal Memorandum of Agreement ("287(g) Agreement") with the Danbury Police Department, "pursuant to which ICE delegates nominated, trained, certified and authorized [Danbury Police] personnel to perform certain immigration enforcement functions." See Doc. No. 460, Ex. A, at 1.  Section 287(g) of the Immigration and Nationality Act is codified at 8 U.S.C. 1357(g) and authorizes state or local law enforcement officials to exercise the powers of federal immigration agents upon the execution of a written agreement, training, and supervision.  At least one defendant Danbury police officer is scheduled to be deputized under Danbury's 287(g) agreement.  Fisher Depo. Tr. at 301 (Ex. E).

The Federal Defendants have repeatedly declined to enter into an agreement restricting the use of immigration-related information solely to this litigation.  See supra Sec. II.  Rather, the Federal Defendants have insisted that they must be allowed to use any immigration status information they obtain in discovery in this action for purposes *other than* to defend this lawsuit, because, they have asserted, there is "no basis for preventing ICE from using information obtained in this action to prevent it from enforcing immigration laws."  See Opp'n to Pls.' Mot. for a Protective Order [Doc. No. 160] at 9.  See also Tr. of Proceedings at 37 ("[Counsel for the Federal Defendants] are hard pressed to advise ICE, who is responsible for the removal of undocumented persons in the United States, to agree not to do something they're statutorily authorized to do.")

Permitting any immigration-related information disclosed by third parties in this litigation to be used by Defendants outside of this litigation would have a significant *in terrorem* effect on Plaintiffs and similarly situated individuals.  Courts both within and outside of the Second Circuit have long recognized the rights of allegedly undocumented individuals to vindicate their constitutional rights in federal court, and the chilling effect of discovery into immigration-related information.  The Second Circuit has explicitly recognized that "[f]orcing an alien to perform the act of producing a foreign passport, I-94, or statement regarding immigration status at least arguably forces the alien to admit alienage and thus provide possible evidence of one or more crimes involving immigration violations," Rajah v. Mukasey, 544 F.3d 427, 441-42 (2d Cir. 2008), which could lead to "further investigation and subsequent prosecution." Id. (citing 8 U.S.C. § 1302 (criminal offense to failure to register with immigration authorities unless exempted by the attorney general); id. § 1306 (criminal offense of willful failure to register); id. § 1325 (criminal offense of entering United States without inspection by immigration authorities)). See also EEOC v. First Wireless Group, Inc., 225 F.R.D. 404, 406 (E.D.N.Y. 2004) ("[D]iscovery of the Charging Parties' immigration status would cause them embarrassment and if their status is found to be illegal would subject them to criminal charges

and, possibly, deportation"). <u>See</u> Sec. IV.C.3., <u>infra</u>, for detailed discussion of cases prohibiting inquiry into immigration status.

Consistent with these well settled principles, Magistrate Judge Martinez ruled that Plaintiffs should not be compelled to answer written discovery requests seeking immigration status information. <u>See</u> <u>Barrera</u>, 2010 U.S. Dist. LEXIS 26081, at *17 (noting the "chilling and prejudicial" effect of disclosure). If Plaintiffs are now ordered to disclose third party names without a protective order, the result is that Defendants may be able to obtain and use the very same immigration-status information denied to them in the March 19 decision. The chilling effect this Ruling could have on Plaintiffs and other potential litigants who are alleged to be undocumented is significant.

Among the persons whose names Plaintiffs would be compelled to disclose are several friends, family members, co-workers and acquaintances. Some of these individuals are terrified at the prospect of having their immigration status revealed to federal immigration or local law enforcement officers, knowing that any immigration-related information they disclose might be used to deport themselves or prosecute them for immigration-related offenses, or used against Plaintiffs in the removal proceedings already pending against them. Plaintiffs are essentially being forced to expose their loved ones to potential immigration and criminal penalties in order to pursue this civil rights lawsuit. Confronted with such a scenario, other similarly situated individuals may well be deterred from seeking to vindicate their constitutional rights. On the other hand, disclosure of the third party names with a protective order limiting use of any immigration status information to this lawsuit, as Plaintiffs have repeatedly offered, <u>see</u> Pls.' Opp'n to Mot. to Compel [Doc. No. 345] at 8; Tr. of Proceedings at 28; Notice of Supplemental Auth. [Doc. No. 447], would appropriately balance the needs of Defendants to engage in fact discovery with the privacy and *in terrorem* concerns of Plaintiffs and the third parties themselves.

**B.** **The Magistrate Judge committed clear error prejudicing Plaintiffs in refusing to consider and enter a protective order.**

The Magistrate Judge erred when she ordered Plaintiffs to disclose third party names without considering the harm this disclosure would cause to Plaintiffs and nonparties, as she was required to under Federal Rule 26.  She further erred by not ruling on Plaintiffs' properly-made request for a protective order.  As a result of the Magistrate's error, Plaintiffs have been severely prejudiced in this litigation.

**1.** **The Magistrate Judge failed to balance the relevant factors under Rule 26(c), including the harm to Plaintiffs and special weight given to burdens imposed on third parties.**

In determining whether discovery should be limited, the Court has the nondiscretionary obligation to both 1) balance the burden or expense of the proposed discovery against its likely benefit, and 2) take into consideration the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.  See Fed. R. Civ. P. 26(b)(2)(C)(iii).  See also Bridgeport Music Inc. v. UMG Recordings, Inc., No. 05-6430, 2008 WL 577284, at *1 (S.D.N.Y. Feb. 22, 2008) (Ex. F) (noting that Court's role is to engage in a balancing analysis when two parties present competing concerns for and against discovery disclosure); Grand River Enterprises Six Nations, Ltd. v. King, No. 02-5068, 2009 WL 330213, at *6 (S.D.N.Y. Feb. 9, 2009) (Ex. G). If a party puts forth evidence that compelling discovery would be burdensome, the court has discretion under Rule 37 and Rule 26 to fashion a protective order that allows the discovery to be had without the associated burden.

Although a Magistrate is not required to articulate the reasons for her determination, the court must make clear that it was aware of its obligation to balance the needs and interests of the two parties.  The Magistrate failed to do so in this case.  Instead, the Magistrate compelled Plaintiffs to produce – without any limits on how the information elicited can be used – the names and addresses of nonparty friends and family members who could be interviewed by the Federal or Danbury Defendants outside of a deposition.

Plaintiffs clearly articulated the burdens that would result if the Court compelled discovery. In their response to Federal Defendants' Motion to Compel, Plaintiffs set forth the reasons why responding to the Federal discovery requests would expose Plaintiffs to potential immigration and criminal penalties, and subject Plaintiffs' friends and families to government questioning and possible harassment. See Pls.' Opp'n to Mot. to Compel [Doc. No. 345]. Plaintiffs further explained that "the Federal Defendants attempt to compel disclosures that [would] yield the very information Plaintiffs seek to protect [in their pending motion for a Protective Order pertaining to written discovery], such as immigration status and alienage." Id. at 2. Plaintiffs noted that they "remain[ed] concerned that such information could be used in immigration proceedings as evidence of their alienage, which would shift the burden of proof from the federal government to the Plaintiffs and could lead to the Plaintiffs' eventual deportation." Id. at 2; see also id. at 7-14.

In addition, Plaintiffs noted that certain of Federal Defendants' Interrogatories would force Plaintiffs to "disclose personal information about nonparty friends and family," and that they were "particularly oppressive to Plaintiffs because they would expose these nonparties to questions that could be used against them in immigration proceedings." Id. at 8. Plaintiffs also indicated their

> reasonable belief that, in an unsworn interview environment, Federal Defendants will conduct an even broader inquiry into the status and alienage of Plaintiffs than took place during depositions occurring in the presence of counsel. Non-parties have no right to counsel during questioning, and those who have little formal education or sophistication about legal process and procedures are especially likely to be greatly intimidated by the presence of federal immigration or other law enforcement investigators at their residences.

Id. at 10. Accordingly, pursuant to Rule 37(a)(5)(C), Plaintiffs formally requested that the Court issue a protective order against use of immigration status or alienage information outside this lawsuit, should it compel disclosure of third party names and addresses. Id. at 8.

In balancing the need for discovery against the burdens imposed by the discovery requested, courts should give "special weight to the unwanted burden thrust upon non-parties

when evaluating the balance of competing needs." <u>Med. Components, Inc. v. Classical Med.,</u> <u>Inc</u>., 210 F.R.D. 175, 180 n. 9 (M.D.N.C. 2002) (citations omitted). In this case, the potential harm to nonparties that might result from disclosure cannot be overstated. Defendants' interrogation of family and acquaintances could lead to the disclosure of the immigration status of these third parties, either from direct questioning or through inadvertent disclosure.  If one of these individuals were to reveal that he lacked legal status, the Federal Defendants or Danbury Defendants, <u>see</u> <u>supra</u> note 7, could use that admission to initiate deportation proceedings or even criminal prosecution against that third party.  <u>See</u> 8 U.S.C. § 1229(a)(c)(3)(A) (2006).

Despite this severe burden, in its two-page ruling on Federal Defendants' Motion to Compel, the Magistrate provided no indication that it had accorded <u>any</u> weight to this burden borne by nonparties, much less special weight.  <u>See</u> March 9 Ruling [Doc. No. 454].  Instead, under the current Ruling, Federal or Danbury Defendants may attempt to conduct these interviews at the nonparties' homes, outside of a deposition and thus outside the presence of Plaintiffs' attorneys who might otherwise be able to prevent irrelevant, harassing, and oppressive questions about Plaintiffs' and Plaintiffs' family and friends' immigration status. As discussed <u>supra</u>, the Federal Defendants continue to maintain that nothing  "prevent[s] ICE from using information obtained in this action to prevent it from enforcing immigration laws." <u>See</u> Resp. To Pls.' Mot. for a Protective Order [Doc. No. 160] at 9.

The Magistrate erred by not structuring discovery to limit the potential harm to nonparty witnesses in a way that would cause no prejudice to the Federal Defendants.   Courts in this circuit have long recognized the need to be particularly sensitive to weighing the probative value of the information sought against the burden of production on a nonparty. <u>Concord Boat Corp. v.</u> <u>Brunswick Corp</u>., 169 F.R.D. 44, 49 (S.D.N.Y. 1996) ("[T]he status of a witness as a nonparty to the underlying litigation 'entitles [the witness] to consideration regarding expense and inconvenience.' " (alteration in original)); <u>see also</u> <u>Travelers Indemnity Co. v. Metropolitan Life</u> <u>Ins. Co</u>., 228 F.R.D. 111, 113 (D.Conn. 2005) (special weight should be given to the burden on non-parties of producing documents to parties involved in litigation).  It was error to fail to

weigh the potential harm that might result from unlimited inquiry absent a protective order, and the Court erroneously failed to "fashion an appropriate confidentiality order." See Mitchell v. Fishbein, 227 F.R.D. 239, 253 (S.D.N.Y. 2005) (ordering production of personnel records and imposing a confidentiality order); Ladson v. Ulltra East Parking Corp., 164 F.R.D. 376, 377 n. 2 (S.D.N.Y. 1996); Cobb v. Rockefeller Univ., No. 90 Civ. 6516, 1991 WL 222125, at *2 (S.D.N.Y. Oct. 24, 1991) (Ex. H); see also Doc. No. 262 (entering stipulated order for production of records otherwise subject to the Privacy Act and imposing confidentiality order); Doc. No. 209 (entering stipulated order imposing confidentiality protections on written discovery so designated by the producing party).[9]

In addition, the March 9 Ruling does not indicate that the Court considered or weighed the other factors relevant to an application pursuant to Rule 26(c). The Court erred by failing to "weigh fairly the competing needs and interests of parties affected by discovery." Seattle Times v. Rhinehart, 467 U.S. 20, 34 (1984); see also In re Fitch, Inc., 330 F.3d 104, 108 (2d Cir. 2003); United States v. Sanders, 211 F.3d 711, 720 (2d Cir. 2000). Courts must limit discovery not only when there is a discernable financial burden, but also must limit it "where the burden is not measured in the time or expense required to respond to requested discovery, but lies instead in the adverse consequences of the disclosure of sensitive, albeit unprivileged material." Herbert v. Lando, 441 U.S. 153, 177 (1979). Here, the party seeking the names of Plaintiffs' friends and family members is the U.S. government, which is already prosecuting removal proceedings against all the Plaintiffs and which has the power to initiate removal proceedings against third parties whom it has probable cause to believe have violated an immigration statute.

---

[9]     The Magistrate also failed to weigh whether the people affected are party to the action or are "enmeshed in it only because he happened to be present when certain events in dispute took place." Stampf v. Long Island R. Co., No. 07-3349, 2009 WL 3628109, at *2 (E.D.N.Y. Oct. 27, 2009) (Ex. I) While "discovery should not simply be denied on the ground that the person or entity from whom it is sought is not a party to the action," a court should "take steps to relieve a nonparty of the burden of compliance even when such accommodations might not be provided to a party." Wertheim Schroder & Co. Inc. v. Avon Products, Inc., No. 91-2287, 1995 WL 6259, at *6 (S.D.N.Y. Jan. 9, 1995) (Ex. J). The Magistrate did not take any such steps in this case.

The Magistrate also failed to consider the importance of the discovery in resolving the issues. The Federal Defendants have never articulated why they need to *use* immigration status information of the Plaintiffs or the third parties outside of the litigation in order to advance a claim or a defense. If the Court had concerns about blocking all access to all names, the Magistrate had wide discretion to address the Plaintiffs' concerns "by means short of restricting the scope of discovery." Ladson, 164 F.R.D. at 377 n. 2.

> 2. **The Magistrate Judge erred by failing to recognize her discretion under Rule 37 and Rule 26 to fashion a protective order in response to the Federal Defendants' Motion to Compel.**

The Magistrate declined to consider a protective order when ordering Plaintiffs to disclose third party names based on the erroneous view that the issue was not properly before the Court. See Tr. of Proceedings, at 19; March 9 Ruling [Doc. No. 454].  However, under Federal Rules of Civil Procedure 26 and 37, Plaintiffs' request that the Court consider the entry of a protective order in their response to Federal Defendants' Motion to Compel was proper.  See Pls.' Opp'n to Mot. to Compel [Doc. No. 345] at 1, 8, 10; Tr. of Proceedings at 28-33, 48; Notice of Supplemental Auth. [Doc. No. 447] at 1.  Plaintiffs were not required to also cross-move for a protective order.  Fed. R. Civ. P. 37(a)(5)(C).  Moreover, a Court may enter a protective order sua sponte where a court determines to grant or deny a motion to compel.  See Lesal Interiors, Inc. v. Resolution Trust Corp., 153 F.R.D. 552, 558 n. 4 (D.N.J. 1994) (determining that failure of two defendants to file motions for protective orders in response to plaintiff's motion to compel was not of major significance so long as the court was able to determine their basis for objecting to the plaintiff's discovery requests); Nestle Foods Corp. v. Aetna Cas. and Sur. Co., 129 F.R.D. (D.N.J. 1990) (court in its discretion can enter protective order upon showing of good cause); Seminara v. City of Long Beach, 68 F.3d 481 (9th Cir. 1995) (district court does not abuse its discretion in sua sponte imposing a protective order).

Plaintiffs properly requested entry of a protective order limiting use to this litigation of any immigration status that may be obtained from third parties:

> [S]hould this Court compel Plaintiffs to disclose any of the information
> sought in Interrogatories 3(a), 3(b), 3(c), and 21, Plaintiffs request that this
> Court enter a protective order forbidding the use of any such information
> in removal proceedings against any Plaintiff, whether obtained directly
> from a Plaintiff or from a nonparty identified by a Plaintiff, and further
> forbidding the use of any such information in removal proceedings against
> any nonparty identified as a result of this information.

See Pls.' Opp'n to' Mot. to Compel [Doc. No. 345] at 8.  Under Rule 37, no separate cross-motion was required.  Fed. R. Civ. P. 37(a)(5)(C).[10]  At the February 24, 2010 oral argument on the Federal Defendants' Motion to Compel, Plaintiffs repeated their request for a protective order if the Magistrate was inclined to grant the Motion to Compel:

> Absent [usage limits], we have no choice but to simply oppose the motion
> in total.  However, we think this Court can reasonabl[y] fashion an order
> under Rule 26 and 37 that would direct the release of those names, but that
> information [that may be obtained from third parties regarding
> immigration status or alienage] …be used only in this case.

Tr. of Proceedings at 29.  Plaintiffs also explicitly repeated this request in a post-argument notice of supplemental authority. Notice of Supplemental Auth. [Doc. No. 447] at 1.  Despite clearly presenting this issue to the Court for its considering, the Court indicated that, as far as it was concerned, the request Plaintiffs presented as an alternative to their motion for a stay was the first request for a protective order.  Nurhussein Aff. ¶ 7. The Court stated that, although Plaintiffs had "breezily mentioned it," there had never been a "motion" for a protective order.  Id.

The record reflects that when ruling upon the Federal Defendants' motion, however, the Magistrate believed she lacked the discretion to enter of a protective order to limit the usage of information gathered from third parties whose names the Federal Defendants moved to compel. The Supreme Court and the Second Circuit have held that a failure to exercise discretion, where a judge mistakenly believes that he lacks the authority to exercise discretion, warrants a remand.

---

[10]   Courts routinely construe motions seeking protection from discovery requests as motions for protective orders.  See, e.g., Thule, Inc. v. Yakima Products, Inc., No. 303-1730, 2003 WL 22909821 (D.Conn. Dec. 8, 2003) (construing oral requests and written briefs as a motion to quash and for a protective order) (Ex. K); Cole v. Fischer, No. 08-512, 2009 WL 3049728, at *4 (W.D.N.Y. Sept. 18, 2009) (Ex. L) (construing plaintiff's filings seeking restricted use of medical and mental health records as motion for a protective order where plaintiff had not formally moved for a protective order).

See INS v. St. Cyr, 533 U.S. 289 (2001) (where immigration judge mistakenly believed he lacked discretion to grant relief, vacating and remanding with instructions to exercise discretion); United States v. Ventrilla, 233 F.3d 166, 169 (2d Cir.2000); United States v. Thorpe, 191 F.3d 339, 342-43 (2d Cir.1999).  Outside of the sentencing context, the Second Circuit has also held that it is prejudicial error to fail to exercise discretion when the judge holds the mistaken belief that he lacked the authority to exercise this discretion.  Drax v. Reno, 338 F.3d 98 (2d Cir. 2003).  A court has discretion to impose conditions on any discovery it orders, even when the discovery sought has some relevance value, and a failure to recognize this discretion is clear error.  Capitol Records, Inc. v. MP3tunes, 261 F.R.D. 44, 52 (S.D.N.Y. 2009).

C.   **The District Court should vacate and remand with instructions to enter a protective order limiting _to this litigation_ use of any immigration status or alienage information that Defendants may obtain from third parties whose names are disclosed by Plaintiffs.**

Plaintiffs and non-parties to this litigation require a protective order to protect them from harm that will result if the Defendants seek to use information obtained through discovery in this litigation to arrest, deport, or criminally prosecute them. [11]  This Court should vacate and remand the March 9 Ruling with instructions to fashion a protective order that addresses the Plaintiffs' and non-parties' concerns.  A protective order that forbids any use of immigration status information outside the present litigation would be appropriate because it would reduce the possible harm without inhibiting the Defendants' ability to defend their case. [12]

---

[11]   In earlier motions, Plaintiffs requested a protective order forbidding discovery of immigration status information during the course of discovery.  See supra note 3.  However, the Magistrate Judge declined to enter a "prophylactic protective order," instead ordering the Plaintiffs to object to questions that would elicit immigration status information and present the specific discovery requests for adjudication.  Plaintiffs have complied, bringing each dispute over immigration status information separately to the court. The instant dispute is ripe for resolution on this appeal.

[12]   Plaintiffs note the Federal Defendants moved for a similar protective order on June 30, 2009 [Doc. No. 234], which was entered on August 1, 2009 [Doc. No. 262].  Plaintiffs stipulated to that protective order, which prevents Plaintiffs from using materials the Federal Defendants designate as "sensitive and confidential law enforcement materials" outside the present litigation. In addition to the restriction on use to the present litigation, that protective order forbids counsel for the Plaintiffs from permitting their clients to see the materials or disseminating the [Footnote continued on next page]

1.      **Plaintiffs have demonstrated good cause for a protective order, and limiting use of immigration-related information to this litigation would be appropriate under Rule 26(c).**

"A court is given broad discretion regarding whether to issue a protective order." Wells Fargo Bank, N.A. v. Konover, No. 05-1924, 2009 WL 585433, at *5 (D.Conn. Mar. 4, 2009) (Ex. M).  A court may issue a protective order, however, only after the moving party demonstrates good cause.  Id.  "To establish good cause under Rule 26(c), courts require a particularized demonstration of fact, as distinguished from stereotyped and conclusory statements."  Id.

Plaintiffs easily meet this standard.  Plaintiffs are and long have been willing to disclose the names of third parties, subject only to a protective order limiting to this litigation use of any immigration status or alienage information that may be obtained.  But the Federal Defendants have insisted on their right to obtain the names and addresses of these third parties, and to use any such information acquired for purposes *unrelated* to the defense of this action.  Information about the Plaintiffs' and non-parties' immigration status is sensitive, private information that is not generally relevant to the claims or defenses in this action, Barrera, 2010 U.S. Dist. LEXIS 26081, at *13, and even if relevant, would be so prejudicial its possible relevance is outweighed. Id. at 17.  Unless a protective order is issued, Defendants can obtain such information from the third parties and then attempt to use it outside this litigation to harm the Plaintiffs, their friends, and family members, as explained in Sec. IV.A, supra.  The threat that Defendants may use immigration status information obtained here as evidence for deportation or criminal prosecution could impose a substantial barrier to court access for similarly situated individuals.  Since

---

[Footnote continued from previous page]
information in any way.  Should the court find similar additional relief appropriate, given that the Federal Defendants are ICE agents authorized to make immigration arrests and initiate deportation proceedings, Plaintiffs hereby request such relief be entered.  See Wolters Kluwer Financial Services, Inc. v. Scivantage, 564 F.3d 110 (2d Cir. 2009) (upholding sanctions on counsel for using materials obtained through discovery in one proceeding in another proceeding in violation of an "Attorney's Eyes Only" Agreement the trial court had imposed); Uniroyal Chemical Co. Inc. v. Syngenta Crop Protection, 224 F.R.D. 53 (D. Conn. 2004) (restricting disclosure of confidential business information to outside counsel and outside experts).

immigration status information is not needed for this litigation, it would be oppressive for this Court to compel discovery that could expose Plaintiffs and third parties to this risk.

A protective order limiting use of immigration-related information obtained from third parties to this litigation would be appropriate in this case. Trial courts are vested with broad discretion to craft a protective order tailored to the particular concerns at issue. Fed. R. Civ. P. 26(c). The list of various types of protective orders under Rule 26(c) is not exhaustive, however, and the court may issue any type of protective order required by justice. Mitchell, 227 F.R.D. at 254. See also Pearson v. Miller, 211 F.3d 57, 65 (3d Cir. 2000) (Rule 26(c) authorizes court "to fashion a set of limitations that allows as much relevant material to be discovered as possible, while preventing unnecessary intrusions into the legitimate interests – including privacy and other confidentiality interests – that might be harmed by the release of the material sought").[13] Here, a protective order limiting the use of any immigration status information obtained through discovery to the present litigation is an appropriate balance that respects the legitimate need of Defendants for fact discovery while guarding against the illegitimate use of any such information obtained for purposes unrelated to this lawsuit.

> **2.   Courts routinely limit access to or dissemination of sensitive information in other proceedings.**

Courts routinely grant protective orders or otherwise limit dissemination of confidential information when disclosure would raise privacy concerns or result in harm. Such protective orders or agreements are commonplace in cases involving, *inter alia*, trade secrets, health information and other forms of sensitive information. See, e.g. Donald v. Rast, 927 F.2d 379

---

[13]   Even before the current provisions of Rule 26(c) were adopted, courts limited or prohibited discovery that was sought in abuse of the liberal discovery rules. For instance, the Second Circuit upheld the issuance of an injunction to prevent a party from seeking discovery in a federal case for the apparent purpose of using in a state proceeding. Sperry Rand Corporation v. Rothlein, 288 F.2d 245, 249-50 (2d. Cir. 1961). Finding that the plaintiff appeared to want to "use immediately in a state court the fruits of federal discovery proceedings," the injunction was a "fully justified" exercise of its discretion under the Rule 30(b) authority to make "any other order which justice requires to protect the party or witness from annoyance, embarrassment, or oppression."

(8th Cir. 1991) (holding that information contained in personnel files was confidential and that court did not abuse its discretion when it allowed portions of relevant documents be read to counsel rather than inspected); <u>Burka v. New York City Transit Auth.</u>, 110 F.R.D. 660, 667 (S.D.N.Y. 1986) (imposing various restrictions on use of information contained in personnel records, including, inter alia, that the information contained in the files be used solely for the purposes of that litigation); <u>ABC Rug & Carpet Cleaning Serv. Inc., v. ABC Rug Cleaners, Inc.</u>, , 2009 WL 105503, at *2 (S.D.N.Y. Jan. 14, 2009) (Ex. N) (ordering parties to submit stipulated protective order for confidential business information that limits access to documents to plaintiffs' counsel on "Attorney's Eyes Only" basis, limits number of copies that may be circulated among plaintiffs' counsel, and limits use of information for purposes of instant litigation only); <u>Firmode International Company Limited v. International Watch Group</u>, No. 2008-4890, 2009 WL 3698137, *2-3 (E.D.N.Y. Nov. 2, 2009) (Ex. O) (upholding protective order forbidding dissemination of confidential business information outside present litigation); <u>Brookdale Univ. Hospital and Med. Ctr., Inc. v. Health Ins. Plan of Greater New York</u>, No. 07-1471, 2008 WL 4541014 (E.D.N.Y. Oct. 7, 2008) (Ex. P) (preventing disclosure of confidential business documents outside present litigation). <u>Pearson</u>, 211 F.3d at 62-64 (preventing disclosure of medical and psychiatric records); <u>Krause v. Rhodes</u>, 671 F.2d 212, 216 (6th Cir. 1982) (preventing disclosure of federal grand jury testimony); <u>Hasbrouck v. BankAmerica Housing Servs.</u>, 187 F.R.D. 453, 458 (N.D.N.Y. 1999) (protecting confidential settlement agreements).

In determining whether a protective order limiting use of sensitive information would be appropriate, courts balance the harm that would ensue from disclosure against the need for discovery.  The court may limit discovery if the need for the information is "insufficient to outweigh the specific harms that . . . would arise [from disclosure]."  <u>See, e.g.</u>, <u>Mitchell</u>, 227 F.R.D. at 246, 248  (granting protective order allowing defendant to withhold identities of judges and lawyers who commented on plaintiff's job performance, where dissemination of information

"would have a chilling effect on the willingness of such individuals to candidly evaluate future applicants").

Here, a protective order limiting use of immigration status information is appropriate because the demonstrated harm to Plaintiffs and non-parties outweighs any need the Defendants have to use such information.  Just as corporations are routinely granted protective orders to protect commercial information, Plaintiffs and non-parties have a legitimate interest in the confidentiality of their immigration status information.  In fact, whereas the privacy or confidentiality interest held by the corporation is purely economic, the confidentiality interest of the Plaintiffs and non-parties goes to their very liberty and constitutional right against self-incrimination, and to their rights of court access to vindicate their constitutional and civil rights.  Allowing dissemination of their immigration status information could enable the government to render them from their homes, criminally prosecute them, or deport them.

In this case, Magistrate Judge Martinez has already ruled that the Danbury Defendants do not need immigration status information to defend the litigation.  See Barrera, 2010 U.S. Dist. LEXIS 26081, at *13.  Even were the Federal Defendants able to articulate a basis that this information is relevant to the separate claims against them, they nevertheless have no interest related to the defense of this action in using immigration status or alienage information *outside* the litigation.  Accordingly, this Court should vacate so much of the March 9 Ruling as compels Plaintiffs to disclose names and addresses of third parties, and remand with instructions to enter a protective order prohibiting use of any immigration status or alienage information that may be obtained from the third parties outside of this litigation.

      **3.**      **Protective orders are routinely granted forbidding inquiry into immigration status during civil discovery, and the reasoning similarly supports a protective order limiting use of immigration status information to the present litigation.**

Courts in the Second Circuit and across the country have overwhelmingly forbidden inquiry into immigration status information, holding that any relevance as to damages or credibility is outweighed by the *in terrorem* effect of such discovery.  In fact, the relief typically

granted – a protective order forbidding inquiry into status –  is broader than the relief Plaintiffs seek here, which is merely a restriction on use of immigration status information that may be discovered.  The reasoning that has consistently led courts to forbid discovery into immigration status equally supports a protective order that restricts use of any such information to the present litigation.

In Topo v. Dhir, 210 F.R.D. 76, 78 (S.D.N.Y. 2002), Magistrate Judge Ellis entered a protective order regarding immigration status even where Plaintiff's alienage was an element of proof of one of her claims.  He explained that the plaintiff's "fears of her immigration status deterring further prosecution of her claims are well-founded," and noted that "[c]ourts have generally recognized the *in terrorem* effect of inquiring into a party's immigration status when irrelevant to any material claim." Id.  The court recognized that earlier cases primarily addressed discovery of immigration status in cases arising under the Fair Labor Standards Act, but reasoned that the underlying principle applies to other cases as well.  Id.  "When the potential for abuse of procedure is high, the Court can and should act within its discretion to limit the discovery process, even if relevancy is determined."  Id.

Again balancing the burden of production against the need for immigration status information, a court in the Eastern District of New York overturned its earlier ruling permitting discovery and forbid the defendants from asking the plaintiffs whether they had green cards or working papers in a case under the Fair Labor Standards Act.  Trejos v. Edita's Bar & Rest., No. 08-1477, 2009 WL 749891, *2 (E.D.N.Y. Mar. 17, 2009) (Ex. Q).  The court held that "even if the information sought were somehow relevant, the *in terrorem* effect of the questions defendants seek to press outweighs the need for disclosure."  See also Zeng Liu v. Donna Karan Int'l, Inc., 207 F. Supp. 2d 191, 192-93 (S.D.N.Y. 2002) (denying request for discovery of immigration status information, even under a confidentiality agreement restricting the disclosure of such discovery, because "there would still remain 'the danger of intimidation, the danger of destroying the cause of action' and would inhibit plaintiffs in pursuing their rights." (quoting Ansoumana v. Gristede's Operating Corp., 201 F.R.D. 81 (S.D.N.Y. 2001)); Flores v. Amignon,

233 F.Supp. 2d 462, 465 (E.D.N.Y. 2002) (granting protective order that forbids discovery into immigration status because "[i]f forced to disclose their immigration status, most undocumented aliens would withdraw their claims or refrain from bringing an action such as this in the first instance."); E.E.O.C. v. First Wireless Group, Inc. , 225 F.R.D. 404 (E.D.N.Y. 2004) (upholding protective order that forbid discovery of immigration status and tax returns and holding that "discovery of the Charging Parties' immigration status would cause them embarrassment and if their status is found to be illegal would subject them to criminal charges and, possibly, deportation"); Centeno-Bernuy v. Becker Farms, 219 F.R.D. 59 (W.D.N.Y. 2003) (upholding issuance of protective order forbidding discovery of current residences and places of employment because of *in terrorem* effect when plaintiffs feared former employer would report addresses to INS). Many courts outside this Circuit have applied the same principles in fashioning protective orders that balance the legitimate needs of defendants in obtaining discovery relevant to claims or defenses at issue with the undisputed chilling effect inquiry into immigration status may have on plaintiffs in employment and civil rights actions.[14]

---

[14]    Rivera v. NIBCO, 364 F.3d 1057, 1065(9th Cir. 2005) (barring discovery of immigration status); Incalza v. Fendi N. Am., Inc., 479 F.3d 1005, 1009 (9th Cir. 2006) (same); United States v. Arias-Izquierdo, 449 F.3d 1168, 1189 (11th Cir. 2006) (same); Calderon v. Witvoet, 999 F.2d 1101, 1107 (7th Cir. 1993) (same); In re Reyes, 814 F.2d 168, 170 (5th Cir. 1987) (same); Pacheco v. Boar's Head Provisions Co., Inc., No. 09-298, 2009 U.S. Dist. LEXIS 73685 (W.D. Mich., Aug. 3, 2009) (Ex. R) ("questions directly involving a party's immigration status sought irrelevant or marginally relevant information and… their utility was outweighed by the probability of witness intimidation"); Sandoval v. Rizzuti Farms, Ltd., 656 F.Supp.2d 1265 (E.D. Wash. 2009) ("Accordingly, in order to prevent manifest injustice and the chilling of Plaintiffs' private right of action under the Act, discovery regarding immigration status is barred."); Baca v. Brother's Fried Chicken, No. 09-3134, 2009 U.S. Dist. LEXIS 42306 (E.D. La. May 13, 2009) (Ex. S) ("plaintiffs' motion for a protective order limiting inquiries with in *in terrorem* effect [sic] is GRANTED in that plaintiffs are not required to provide defendants with the following information: (a) immigration status; (b) Social Security numbers; and (c) addresses."); David v. Signal Int'l, LLC, 257 F.R.D. 114 (E.D. La. April 2, 2009) ("[T]his court can only conclude that any inquiry into plaintiffs' current immigration status, current residence and/or post-termination employment history will most assuredly strike paralyzing fear in the plaintiffs sufficient to chill any inclination they may have had to prosecute their pending claims."); Sandoval v. Am. Bldg. Maint. Indus., No. 06-1772, 2007 U.S. Dist. LEXIS 97773, at *57 (D. Minn. Oct. 23, 2007) (Ex. T) ("Defendant employers may not use the discovery process to delve into a plaintiff's immigration status."); Vanek v. I.I., Inc., No. 06-3223, 2007 U.S. Dist. LEXIS 59311, at *5-6 (D. Neb. Aug. 14, 2007) (Ex. U) ("I fail to see how evidence concerning Mr. Ruffin's [Footnote continued on next page]

The Second Circuit has recognized the possible criminal and immigration consequences of compelling an individual to produce immigration status information.  In Rajah, 544 F.3d at 441, the Second Circuit noted that compelling production of a foreign passport or statement regarding immigration status "at least arguably forces the alien to admit alienage and thus provide possible evidence of one or more crimes involving immigration violations."  The court

---

[Footnote continued from previous page]
immigration status might assist in the development of a reasonable inference of discrimination within the context of [this] case's . . . facts."); EEOC v. Rest. Co., No. 05-1656, 2007 WL 424323, at *1 (D. Minn. Feb. 2, 2007) (Ex. V) ("[T]he discovery sought [into the plaintiffs' immigration status] is not sufficiently relevant to justify its potential chilling effect on victims of discrimination."); Lozano v. City of Hazleton, 239 F.R.D. 397, 400 (M.D. Pa. 2006) ("This case is not an action to enforce United States immigration laws. Plaintiffs' interest in keeping this information confidential outweighs the defendant's need for it, and the request for a protective order will be granted."); De La O v. Arnold-Williams, No. 04-0192, 2006 U.S. Dist. LEXIS 76816, at *11 (E.D. Wash. Oct. 20, 2006) (Ex. W) ("Defendants also argue they need to know the immigration status of Plaintiffs in order to show that the investigation into Plaintiffs was based on legitimate police concerns of criminal conduct and to challenge Plaintiffs' credibility. The Court concludes Plaintiffs' immigration status has little, if any, relevance to either of these issues."); EEOC v. City of Joliet, 239 F.R.D. 490, 493 (N.D. Ill. 2006) ("[C]ourts have found that the *in terrorem* effect of inquiring into the immigration status of employees suing their employer for unfair labor practices is devastating. Not only does an undocumented alien face the reality of possible retaliatory adverse work place actions by the employer, but he or she also faces the very real possibility of being reported to the Department of Homeland Security and subsequent deportation or even criminal prosecution.") (internal citation omitted); Galaviz-Zamora v. Brady Farms, Inc., 230 F.R.D. 499, 502 (W.D. Mich. 2005) ("[T]he effect upon the . . . witnesses of this wholly irrelevant probe into their immigration status which I observed at the hearing ranged from unsettling to devastating and certainly affected their ability to testify."); Garcia-Andrade v. Madra's Cafe Corp., No. 04-71024, 2005 U.S. Dist. LEXIS 22122, at *5 (W.D. Mich., Aug. 3, 2005) (Ex. X) ("[T]here is sufficient case law to support the assertion that immigration status is irrelevant in this matter and what little relevance the other information sought by the Defendants in this matter [has] is outweighed by the Fifth Amendment concerns expressed by the Plaintiffs."); EEOC v. Bice of Chicago, 229 F.R.D. 581, 583 (N.D. Ill. 2005) ("[W]e find good cause exists to enter this protective order because questions about immigration status are oppressive, they constitute a substantial burden on the parties and on the public interest and they would have a chilling effect on victims of employment discrimination from coming forward to assert discrimination claims."); Flores v. Albertsons, Inc., No. 01-00515, 2002 U.S. Dist. LEXIS 6171, at *21 (C.D. Cal., Apr. 9, 2002) (Ex. Y) ("It is entirely likely that any undocumented [litigant] forced to produce documents related to his or her immigration status will withdraw from the suit rather than produce such documents and face . . . potential deportation."). See also Comm. for Immigrant Rights v. County of Sonoma, 3:08-CV-04220-PJH (N.D. Cal. Apr. 24, 2009) (Ex. Z); Montoya v. S.C.C.P. Painting Contractors, Inc., No. 07-455, 2008 U.S. Dist. LEXIS 16354 (D. Md. Feb. 26, 2008) (Ex. AA); Garcia v. Monument Mgmt. Group, No. 05-3139, 2006 U.S. Dist. LEXIS 48532 (D. Neb. July 17, 2006) (Ex. BB); Recinos-Recinos v. Express Forestry, Inc., No. 05-1355, 2006 U.S. Dist. LEXIS 2510 (E.D. La. Jan. 23, 2006) (Ex. CC); Librado v. M.S. Carriers, Inc., No. 02-2095, 2004 U.S. Dist. LEXIS 10817 (N.D. Tex. Mar. 23, 2004) (Ex. DD); Collins v. New York City Health and Hosps. Corp., 201 A.D.2d 447 (N.Y. App. Div. 1994).

listed crimes including 8 U.S.C. § 1306 (willful failure to register) and 8 U.S.C. § 1325 (evading inspection). Id. A protective order limiting use of that information outside the present litigation can reduce the Fifth Amendment concerns about discovery into immigration status, which are particularly acute for unrepresented non-parties. The relief Plaintiffs request would prevent information obtained from discovery from being used to these ends.

While most courts in the Second Circuit that have been faced with the issue have prevented discovery of immigration status information, others have limited further use of that information or imposed other restrictions. Even in the case most heavily relied upon by the Federal and Danbury Defendants before Magistrate Judge Martinez, Aguilar v. ICE, No. 07-8224, 2009 WL 1789336 (S.D.N.Y. June 23, 2009) (Ex. EE), Magistrate Judge Maas entered a protective order forbidding use of immigration status or alienage information outside the instant litigation. See also Avila-Blum v. Casa de Cambio Delgado, Inc., 236 F.R.D. 190, 191-92 (S.D.N.Y. 2006) (precluding discovery "directly or indirectly into Avila-Blum's immigration status during the liability phase of the litigation" and reserving decision whether discovery appropriate in relation to damages).

Consistent with these principles, this Court should vacate the March 9 Ruling of Magistrate Judge Martinez compelling disclosure of third party names and remand with instructions to enter a protective order that would limit to this litigation use of any immigration status or alienage information regarding Plaintiffs or the third parties that Defendants may obtain from the third parties.

   D.   **In the alternative, this Court should vacate the March 9 Ruling and remand for consideration of entry of a Protective Order in the first instance.**

Magistrate Judge Martinez erred in failing to adjudicate the Plaintiffs' request for entry of a protective order upon disclosure of third party names and addresses. This Court should reverse and direct entry of an appropriate order. In the alternative, this Court should vacate the March 9 Ruling and remand to Magistrate Judge Martinez for consideration of Plaintiffs' application for a protective order in the first instance.

## V.      Conclusion

For the foregoing reasons, Plaintiffs respectfully request this Court vacate so much of the Magistrate Judge's March 9 Ruling as compelled disclosure of third party names and addresses without any protective order, and remand with instructions to enter an order that prevents the Defendants from using any immigration status information obtained from non-parties in this lawsuit for any purpose outside the present litigation.  In the alternative, Plaintiffs respectfully request that this Court vacate the same portion of the March 9 Ruling, and remand with instructions to consider entry of an appropriate protective order in the first instance.


Dated:  March 30, 2010

                                        Respectfully Submitted,

                                        *Counsel for Plaintiffs:*
                                        _____/s/_____
                                        Joel M. Cohen, Esq., phv03297
                                        Siham Nurhussein, Esq., phv 03298
                                        Elizabeth Goergen, Esq., phv03300
                                        Mary Elizabeth Morales Singh, Esq., phv 03836

                                        GIBSON, DUNN & CRUTCHER LLP
                                        200 Park Avenue, 47th Floor
                                        New York, New York 10166
                                        Telephone: (212) 351-4000
                                        Facsimile: (212) 351-4035

                                        Michael J. Wishnie, Esq., ct27221
                                        Susan Hazeldean, Esq., ct28093
                                        Rebecca Heller, Law Student Intern
                                        Helen O'Reilly, Law Student Intern
                                        Lindsay Nash, Law Student Intern
                                        Sophie Hood, Law Student Intern

                                        Jerome N. Frank Legal Services Organization
                                        YALE LAW SCHOOL
                                        127 Wall Street
                                        New Haven, CT 06511
                                        Telephone: (203) 432-4800

Facsimile: (203) 432-1426
michael.wishnie@yale.edu

**CERTIFICATE OF SERVICE**


     I hereby certify that on March 30, 2010, a copy of the foregoing was filed electronically. Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


Dated: March 30, 2010                    _____/s/_____

                                     Siham Nurhussein, phv 03298